**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KATIE PHANG,<br><br>      Plaintiff,<br><br>  v.<br><br>TODD BLANCHE,<br>in his official capacity as Acting Attorney<br>General of the United States,<br>950 Pennsylvania Avenue, N.W.<br>Washington D.C. 20530,<br><br>      Defendant. | Case No. _____ |

## COMPLAINT

### I.    Introduction

1.     This case is about Defendant Todd Blanche's brazen, shocking, and ongoing violation of the Epstein Files Transparency Act.

2.     Since Jeffrey Epstein first pled guilty to sex crimes in 2008, and especially since his death in 2019, public interest in his actions and network—the "Epstein Elite"—has been extraordinarily high. A wide swath of the American public continues to suspect that Epstein and his co-conspirators committed crimes that were never adequately investigated, prosecuted, or punished.

3.     In November 2025, in the face of extraordinary and sustained public pressure, Congress passed, and the President signed into law, the "Epstein Files Transparency Act" (the "Epstein Act" or "Act").

4.     The Act required the Attorney General to produce—with limited and precisely enumerated exceptions—all documents held by the Department of Justice or the Federal Bureau of Investigation concerning Epstein, his alleged co-conspirator Ghislaine Maxwell, any

1

other individuals named in connection with Epstein's activities, and any entities with known or alleged ties to Epstein's activities, among other things.

5. The Act further required the government to produce these documents within 30 days of its enactment—not later than December 19, 2025.

6. That required production never occurred. Put simply, Defendant Blanche—the former Deputy Attorney General and current Acting Attorney General of the United States— has failed to comply with the law.

7. Under Blanche's and former Attorney General Pam Bondi's leadership, the Department of Justice has failed to produce the required documents within the time required. It has improperly redacted documents and failed to adequately explain those redactions. And it has either retracted, or failed to produce entirely, documents that should have been produced. All of this facially violates the law.

8. Defendant's failure to follow the law has harmed Plaintiff, Katie Phang ("Phang"), a journalist, lawyer, and legal analyst who has extensively reported on Jeffrey Epstein and his network. Phang's inability to report with substance on all of the documents she should be able to access has hurt her ability to do her job, and made it harder to fulfill her mission as a journalist and legal analyst.

9. Phang brings this case to compel Defendant to produce all of the documents covered by the law, with impermissible redactions removed, and with permissible redactions adequately explained. The Epstein Files Transparency Act demands nothing less.

## II.    Parties

10. Plaintiff, Katie Phang, is a lawyer and journalist based in Miami, Florida. She has covered the abuses of Jeffrey Epstein, Ghislaine Maxwell, and others in Epstein's orbit, and the related investigations, for many years, and has filed dozens of stories on the subject.

11.    Defendant, Todd Blanche, is the Acting United States Attorney General, and is sued in his official capacity. Along with his predecessor, Pam Bondi, Acting Attorney General Blanche has failed and is failing to comply with the Epstein Files Transparency Act, as detailed below.

### III.    Jurisdiction and Venue

12.    This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 2201(a), because Plaintiff seeks declaratory relief.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1), because a substantial part of the events and omissions giving rise to the claim occurred in Washington, D.C.

### IV.    Statement of Facts

#### a.    Congress Passes the Epstein Files Transparency Act

14.    Jeffrey Epstein was a convicted sex offender who, in 2019, was charged by the United States Attorney for the Southern District of New York with sex trafficking and conspiracy to commit sex trafficking. Investigative reporting by a range of news outlets revealed that dozens of powerful men (and women) socialized with Epstein, raising the possibility that other people had committed crimes too.

15.    Epstein was found dead in his jail cell while awaiting trial. His death ended the chance of a trial that could have shed light on his actions and his network of co-conspirators. But his death did not end the public's desire for answers, and in the years that followed, both citizens and politicians demanded the release of the so-called "Epstein Files": the investigative documents that the government possessed concerning Epstein, his co-conspirator Ghislaine Maxwell, and other members of the so-called Epstein Elite.

16.     In November 2025, after months of mounting public pressure, Congress passed, and the President signed into law, the Epstein Files Transparency Act.

17.     The Act required the Attorney General to publicly produce all materials possessed by the Department of Justice and Federal Bureau of Investigation relating to Jeffrey Epstein, Ghislaine Maxwell, and a series of adjacent topics on "individuals, including government officials, named or referenced in connection with Epstein's criminal activities, civil settlements, immunity or plea agreements, or investigatory proceedings." Epstein Files Transparency Act, Pub. L. 119-38 § 2(a), 139 Stat. 656 (2025). The Attorney General was required to produce these materials within 30 days after the law was enacted.

18.     Under the Act, the government was allowed to redact or withhold documents under only very limited circumstances. Specifically, documents could be withheld in whole or in part if they:

   a.  Contained personally identifiable information of victims or information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy;

   b.  Showed child sexual abuse materials;

   c.  Would jeopardize an active federal investigation or prosecution, and in such a case, only if such withholding was "narrowly tailored" and "temporary;"

   d.  Showed images of injury, death, or physical abuse; or

   e.  Contained information specifically authorized under criteria established by an executive order to be kept secret in the interest of national defense or foreign policy. *Id.* at § 2(c)(1), 139 Stat. 656.

19.     Further cabining these limited restrictions, the Act directed that no documents were to be withheld because of their political sensitivity, or because of the embarrassment or reputational harm that their release may cause government officials, public figures, or foreign dignitaries. *Id.* at § 2(b)(1), 139 Stat. 656.

4

20.    The Act also required the Attorney General to make two separate and specific disclosures.

21.    First, the Act directed that "[a]ll redactions must be accompanied by a written justification published in the Federal Register and submitted to Congress." *Id.* at § 2(c)(2), 139 Stat. 656.

22.    Second, the Act directed that within 15 days of the completion of the release of documents, the Attorney General would submit to Congress a report listing (1) all categories of records released and withheld, (2) a summary of redactions made and the legal basis for doing so, and (3) a list of all government officials and politically exposed persons named or referenced in the released materials. *Id.* at § 3, 139 Stat. 657-58.

### b.  The Department of Justice Fails to Comply with the Act.

23.    The Department of Justice failed to comply with the law. It did so by ignoring the Act's deadlines, by failing to redact sensitive information, by redacting information it should have disclosed, by failing to explain its redactions, and by redacting, retracting, or withholding entirely materials about Donald Trump and others.

24.    **Delays.** The Department failed to comply with the baseline requirement to produce the required documents within the timeline required by the statute. Specifically, the Act required that the full set of materials be produced within 30 days of its enactment. President Trump signed the bill on November 19, 2025, putting the deadline for production at December 19, 2025. On that date, the Justice Department released a mere 3,965 files. Then-Deputy Attorney Todd Blanche conceded that the government had failed to follow the law, saying in a December 19 interview that "today, several hundred thousand [files], and then over the next couple weeks, I expect several hundred thousand more" were or would be released. The actual number of files released was several orders of magnitude less than Blanche promised.

25.    The Department published additional materials on December 20, December 22, and December 23, 2025, and on January 30, 2026, all past the statutory deadline. Concurrent with its alleged "final" production, on February 2, 2026, the government released a six-page letter purporting to summarize the categories of records withheld and the legal basis for redactions made. In the letter, Blanche wrote that "[t]oday's production marks the Department's compliance with its production obligations under the Act."

26.    **Incomplete redactions.** In its productions, the Department failed to make many necessary redactions, with devastating consequences. Among other things, the Department released dozens of photos of nude young women or girls. "It's hard to imagine a more egregious way of not protecting victims than having full nude images of them available for the world to download," one of Epstein's victims said. Elsewhere, at least 43 victims' names were revealed, including more than two dozen victims who had been abused as minors. Some victims' names appeared over 100 times. Lawyers representing victims said that the government's release of materials was "the single most egregious violation of victim privacy in one day in United States history." Ultimately the Department removed several thousand files in response to victim demands.

27.    **Unexplained redactions.** In its productions, the Department redacted thousands of documents, some in their entirety. The government's first production, for instance, included a 119-page grand jury transcript, the contents of which were completely redacted, as were over 400 pages of other documents in that initial production. None of the redactions was "accompanied by a written justification published in the Federal Register and submitted to Congress," as required by law. Epstein Act § 2(c)(2), 139 Stat. 657. Importantly, this requirement is separate from, and in addition to, the government's obligation to produce a report summarizing the categories of records released, the redactions made, and the legal basis for those redactions. *Id.* § 3, 139 Stat. 657-58.

28. **Inappropriate redactions.** Many of the redactions the Defendant made facially conflicted with the requirements of the law. For instance, the Department redacted:

a. The identities, in a draft indictment, of people who allegedly conspired with Epstein to "persuade, induce, and entice individuals who had not attained the age of 18 years to engage in prostitution."

b. The identity of the person who wrote to Epstein in 2014, "Thank you for a fun night… Your littlest girl was a little naughty."

c. The identity of the person who wrote to Epstein in 2017 that, "I met [REDACTED] today. She is like Lolita from Nabokov , femme miniature . . . So now I should send you her type of candidates only?"

d. The identity of the person who wrote to Epstein in 2018 that "I found at least 3 very good young poor but we was so tired" and that "Meet this one, not the beauty queen but we both likes her a lot."

e. The identity of the person who wrote to Epstein in 2013 that "New Brazilian just arrived, sexy and cute, 19yo."

f. The identity of the person to whom Epstein wrote in 2009 that "where are you? are you ok I loved the torture video."

29. The Act does not authorize Defendant's redaction of these names. Context makes very clear that the redactions are names of potential co-conspirators, not "personally identifiable information from the personal or medical file of a victim or child witness," Epstein Act § 2(c)(1)(A); child pornography, *id.* § 2(c)(1)(B); or depictions of injury, death, or physical abuse, *id.* § 2(c)(1)(D). Nor were the redactions necessary to protect sensitive national security or foreign policy information, *id.* § 2(c)(1)(E). To the contrary, the government has conceded that nothing was redacted on the basis of national security.

30. This leaves only materials that would jeopardize an active federal investigation or prosecution. *See id.* § 2(c)(1)(C). But after the Department's final production, Deputy Attorney General Todd Blanche announced that the information released was insufficient to bring further prosecutions, and that the Department's investigation into Epstein and Maxwell's sex trafficking operation "is over."

31. **Withheld, retracted, or redacted, documents referring to President Trump.** The Department failed to produce required documents referring to Donald Trump, retracted previously produced materials that showed or referred to Trump, and improperly redacted documents that referred to him.

32. The Department failed to produce documents relating to Trump that other sources confirm exist.

33. For instance, in one document, a woman accused Trump of forcing her to perform oral sex when she was a minor. The FBI found this accusation sufficiently credible that it interviewed the alleged victim four times.

34. According to logs, the Department of Justice previously produced *fifteen* documents about this alleged victim to attorneys for Ghislaine Maxwell in preparation for her own defense. But only *seven* such documents were produced under the Epstein Act. Contemporary reporting suggests that the withheld materials include 53 pages of interview documents and notes. These remain unproduced.

35. In another set of documents, a woman alleged that when she was 13 years old, Epstein introduced her to Trump at the latter's estate, Mar-a-Lago. There, Epstein told Trump "this is a good one, huh." Both men allegedly laughed, and the then-girl said that she felt uncomfortable, but didn't know why at the time.

36. An interview with the woman was initially published on the Department website, but then taken down, before being restored on February 19, 2026. But multiple files

cite other documents concerning the woman, which were produced to Maxwell but never made public under the Epstein Act.

37.    The Department also retracted previously produced documents relating to Trump. Sometimes it restored those documents to its productions after public outcry; other times it did not.

38.    For example, the Department's first production of documents included an image of what appears to be Jeffrey Epstein's desk with two photographs of Donald Trump on it: one with Epstein and Maxwell, and another with several women in revealing swimsuits. The Department removed the image from its website, and restored it only after a public outcry.

39.    Another document in the Department's production included purported notes of interviews with victims and witnesses, one of whom (as mentioned above) alleged that Trump had forced her to perform oral sex when she was in her early teens. She further alleged that Epstein introduced her to Trump. This file too was taken down from the Justice Department website. Unlike the photograph mentioned above, it has not been restored to the Department's website.

40.    In another document, Epstein wrote in an email that Trump said that, while Epstein had never been a member of Mar-a-Lago, he'd never been asked to leave, contradicting later statements by Trump to the contrary. Congressman Jamie Raskin, who as a member of Congress was able to review the full, unredacted document, reported that this document had been needlessly redacted.

### c.    The Department's Violations Have Made it Harder for Plaintiff to Do Her Job

41.    The Department's violations of the Act have made it harder for Plaintiff to do her job.

42.    Katie Phang is an attorney and independent journalist. She graduated from Yale University and the University of Miami School of Law, and has worked as a trial lawyer,

including serving as an Assistant State Attorney in both Miami-Dade and Broward Counties. She has extensive experience in civil litigation, as well.  While practicing law, she also began to work as a legal analyst for a variety of media outlets, including the local CBS Miami affiliate, Fox News, Fox Business, and then for NBC and MSNBC.  From March 2022 through April 2025, she hosted The Katie Phang Show on MSNBC.

43.     As an independent journalist, Phang currently reports on legal news through her online YouTube news channel, Katie Phang News, and on a variety of other media platforms such as Substack.

44.     Phang has covered the crimes of Jeffrey Epstein, Ghislaine Maxwell, and others for years, in part because of the connections to her hometown of Miami. In just the past year, she has published dozens of videos, interviews, and reports about the Epstein Files, Epstein's actions, his network, the government investigation into both, and the government's failure to fully comply with the Epstein Files Transparency Act.[1] Phang has also interviewed people connected to the Epstein tragedy, including at least one survivor of Epstein's abuse, and has

---

[1] For instance, Phang's YouTube channel has a Jeffrey Epstein playlist that currently includes 59 videos published over the past nine months. *See* Katie Phang, *Jeffery Epstein* (Playlist), YouTube, https://www.youtube.com/playlist?list=PL02Fni75KmnIIQHDhANRHKk7w5hmSbgC7 (last accessed April 21, 2026); *see also, e.g.*, Katie Phang, *Epstein Class Accountability*, Substack (Feb. 19., 2026), https://katiephang.substack.com/p/epstein-class-accountability; Katie Phang, *Congress Reviews 'Unredacted' Epstein Files*, Substack (Feb. 10, 2026), https://katiephang.substack.com/p/congress-reviews-unredacted-epstein; Katie Phang, *DOJ Defends Partying With Epstein*, Substack (Feb. 3, 2026), https://katiephang.substack.com/p/doj-defends-partying-with-epstein; Katie Phang, *Quick Epstein Live*, Substack (Dec. 19, 2025), https://katiephang.substack.com/p/quick-epstein-live; Katie Phang, *The Epstein/Maxwell Grand Jury Records*, Substack (Dec. 9, 2025), https://katiephang.substack.com/p/the-epsteinmaxwell-grand-jury-records; Katie Phang, *Rick Wilson & Katie Phang Live on the Epstein Latest*, Substack (Nov. 12, 2025), https://katiephang.substack.com/p/rick-wilson-and-katie-phang-live; Katie Phang, *Breaking Epstein News With Katie Phang And Jim Acosta*, Substack (Nov. 12, 2025), https://katiephang.substack.com/p/breaking-epstein-news-with-katie; Katie Phang, *Epstein Birthday New Bombshells*, Substack (Sept. 9, 2026), https://katiephang.substack.com/p/epstein-birthday-new-bombshells-and; Katie Phang, *Katie Phang x Mike Popok For A Quick Legal Briefing On The Latest In Epstein And E. Jean Carroll*, Substack (Aug. 14, 2025), https://katiephang.substack.com/p/katie-phang-x-mike-popok-for-a-quick; Katie Phang, *Sami Sage & Katie Phang: Epstein and Ghislaine Legal Updates*, Substack (July 30, 2026), https://katiephang.substack.com/p/sami-sage-and-katie-phang-epstein; Katie Phang, *Breaking News: Kilmar Abrego Garcia & the Epstein Files*, Substack (July 23, 2026), https://katiephang.substack.com/p/breaking-news-kilmar-abrego-garcia; Katie Phang, *Epstein Coverup Analysis w/ Katie Phang & Sami Sage*, Substack (July 23, 2026), https://katiephang.substack.com/p/epstein-coverup-analysis-w-katie; Katie Phang, *Ghislaine Maxwell's Exit Ramp off of her Prison Journey*, Substack (July 27, 2026), https://katiephang.substack.com/p/ghislaine-maxwells-exit-ramp-off.

personally reviewed many documents produced pursuant to the Epstein Files Transparency Act.

45.     The government's failure to comply with the Act has made it harder for Phang to do her job. With key documents redacted, and with redactions entirely unexplained, it is difficult for Phang to understand and report about the meaning of the documents that have been produced. And with some documents retracted or never produced in the first place, it is impossible for her to understand and report about the full scope of the government's investigation.

46.     The Epstein Act was passed, in part, to help journalists like Phang do their jobs and expose those involved in Jeffrey Epstein's crimes. *See, e.g.*, 171 Cong. Rec. 194 (Nov. 18, 2025) (stating that a purpose of the bill is to provide "transparency for America." (statement of Rep. Thomas Massie)); 171 Cong. Rec. 194 (Nov. 18, 2025) ("This isn't about Democrats versus Republicans or about Congress versus the President. This is about giving the American people the transparency they have been crying for." (statement of Sen. Chuck Schumer)); 171 Cong. Rec. 194 (Nov. 18, 2025) ("The victims and the American people demand not just justice but transparency." (statement of Sen. Jeff Merkley)); 171 Cong. Rec. 144 (Sept. 3, 2025) (saying that the Act will provide a "critical step forward in providing transparency into the Epstein files and will give the public all the necessary information." (statement of Rep. Morgan Griffith)).

47.     Unless the Department of Justice complies with the Act, Phang will be unable to fully report the story of Jeffrey Epstein and the investigation into him, Ghislaine Maxwell, and their co-conspirators. She also will be unable to facilitate the transparency that is the purpose of the Epstein Act. As a journalist, Phang has a right to this information: she specifically is the beneficiary of, and conduit for, the transparency that is in the Act's very

name. The Department's failure to follow the law will hinder her mission as a journalist, and make it impossible for her to do her job.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of the Administrative Procedure Act
### (Contrary to Law and in Excess of Statutory Authority)

48.    Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

49.    Under the Administrative Procedure Act, a court "shall . . . hold unlawful and set aside agency action" found to be "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(B)-(C).

50.    Defendant's production of materials under the Epstein Files Transparency Act is a final agency action. Specifically, on January 30, 2026, Then-Deputy Attorney General Todd Blanche wrote to Congress that "[t]oday's production marks the Department's compliance with its production obligations under the Act."

51.    Defendant's production of materials under the Act is "not in accordance with law" under 5 U.S.C. § 706(2)(A) because it is contrary to the requirements of that Act. As relevant to Plaintiff:

    a.  Defendant redacted documents, in whole or in part, that should not have been redacted.

    b.  Defendant failed to explain the bases for these redactions, as required by Section (2)(C)(2) of the Act.

    c.  Defendant retracted documents referring to Donald Trump that ought to have been produced.

12

d. Defendant failed to produce documents that ought to have been produced pursuant to the Act.

## COUNT TWO
### Violation of the Administrative Procedure Act
### (Arbitrary, Capricious, and an Abuse of Agency Discretion)

52. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

53. Under the Administrative Procedure Act, a court "shall . . . hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

54. Defendant's production of materials under the Epstein Files Transparency Act is a final agency action.

55. Defendant's production of materials under the Act is arbitrary and capricious because it lacks a lawful basis and because Defendant has not articulated an adequate, reasoned, or lawful basis for redacting documents in whole or in part, retracting documents, and failing to produce others.

## COUNT THREE
### *Ultra Vires* Agency Action

56. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

57. Federal courts enjoin "violations of federal law by federal officials," *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326-27 (2015), including cases in which a federal officer has acted "beyond th[e] limitations" set by federal statute, *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

58. Plaintiff has a non-statutory right of action to ask a court to enjoin and declare unlawful official actions that are *ultra vires*. The Epstein Files Transparency Act establishes a nondiscretionary duty for Defendant to produce all covered materials possessed by the

13

Department of Justice and Federal Bureau of Investigation related to Jeffrey Epstein and Ghislaine Maxwell.

59. Defendant has failed to fulfill a statutory duty, and Plaintiff has been unable perform her job as a journalist as a result.

60. Plaintiff is entitled to equitable relief to remedy Defendant's ongoing violation of federal law.

## COUNT FOUR
## Declaratory Judgment Act

61. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

62. Defendant's failure to comply with to with the Epstein Files Transparency Act violates Plaintiff's rights under the Act.

63. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, authorizes the Court to "declare the rights . . . of any interested party seeking such a declaration," in addition to any injunctive or other available relief.

64. Plaintiff is entitled to a declaratory judgment awarding her declaratory and injunctive relief, attorneys' fees, costs, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court provide the following relief:

1. Declare that Defendant has failed to comply with the Epstein Files Transparency Act;

2. Enjoin Defendant's ongoing violation of the Epstein Files Transparency Act, and specifically direct Defendant to:

    a. Remove all unlawful redactions;

    b. Explain the bases for any remaining lawful redactions;

    c. Re-produce all materials that were produced but then unlawfully retracted;

    d. Produce all materials that have not been produced that, by law, should be;

14

3.  Oversee Defendant's compliance with the law through the appointment of a special

    master;

4.  Award Plaintiff attorneys' fees and costs; and

5.  Grant such other and further relief as the Court deems just and proper.

Plaintiff demands a jury trial.

                                    Respectfully submitted,

                                    /s/ Brendan Ballou
                                    Brendan Ballou
                                    D.C. Bar No. 241592
                                    Samuel T. Ward-Packard
                                    D.C. Bar No. 90005484
                                    brendan@publicintegrityproject.org
                                    sam@publicintegrityproject.org
                                    (917) 684-3900


                                    *Attorneys for Plaintiff Katie Phang*