UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KATIE PHANG,<br><br>      Plaintiff,<br><br>  v.<br><br>TODD BLANCHE, in his official capacity as<br>Acting Attorney General of the United States,<br><br>      Defendant. | Civil Action No. 26-1417 (EGS) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Background ......................................................................................................................... 2

          A.     The Epstein Files Transparency Act ............................................................. 2

          B.     Plaintiff's Lawsuit ...................................................................................... 3

Legal Standards .................................................................................................................. 3

Argument ............................................................................................................................ 6

     I.     The Court Lacks Jurisdiction Over Plaintiff's Claims ............................................ 6

          A.     Plaintiff Has No Private Right of Action Under the Epstein Act ............... 6

          B.     Plaintiff Lacks Standing Because the Epstein Act Does Not Create a Personal Right to the Information She Seeks ............................................. 8

          C.     There Is No Waiver of Sovereign Immunity ........................................... 10

     II.     Plaintiff Fails to Meet Her Burden for Extraordinary Relief .............................. 13

          A.     Plaintiff Is Unlikely to Succeed on the Merits ........................................ 14

          B.     Plaintiff Has Not Shown Irreparable Harm .............................................. 16

          C.     The Balance of Equities and Public Interest Do Not Support an Injunction ................................................................................................. 20

     III.     Any Preliminary Injunction Should be Accompanied by Security and be Stayed. ................................................................................................................ 21

Conclusion ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*,

   840 F. Supp. 2d 327 (D.D.C. 2012) .................................................................................. 18, 19

*Alexander v. Sandoval*,

   532 U.S. 275 (2001) ........................................................................................................... 6, 7

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*,

   No. 25-339, 2025 WL 1783899 (D.D.C. June 27, 2025) ....................................................... 5

*Am. Oversight v. Hegseth*,

   788 F. Supp. 3d 14 ....................................................................................................... 16, 20, 21

*American Psychiatric Ass'n v. Anthem Health Plans, Inc.*,

   821 F.3d 352 (2d Cir. 2016) .................................................................................................... 7

*Arbaugh v. Y&H Corp.*,

   546 U.S. 500 (2006) ................................................................................................................. 4

*Aviles-Wynkoop v. Neal*,

   978 F. Supp. 2d 15 (D.D.C. 2013) ........................................................................................ 16

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,

   502 U.S. 32 (1991) ..................................................................................................... 15, 17, 18

*Benisek v. Lamone*,

   585 U.S. 155 (2018) ............................................................................................................. 4, 5

*Bowen v. Massachusetts*,

   487 U.S. 879 (1988) .............................................................................................................. 11

*Braxton v. U.S. Parole Comm.*,

Civ. A. No. 25-3534 (SLS), 2025 WL 3063036 (D.D.C. Nov. 3, 2025) ........................................ 5

*Carney v. Adams*,

    592 U.S. 53 (2020) ................................................................................. 9, 10

*Cause of Action Inst. v. Eggleston*,

    224 F. Supp. 3d 63 (D.D.C. 2016) ..................................................... 12

*Chaplaincy of Full Gospel Churches v. England*,

    454 F.3d 290 (D.C. Cir. 2006) ...................................................... passim

*Chaverra v. Immigr. & Customs Enf't*,

    Civ. A. No. 18-289 (JEB), 2018 WL 4762259 (D.D.C. Oct. 2, 2018) .................................. 12

*CityFed Fin. Corp. v. Office of Thrift Supervision*,

    58 F.3d 738 (D.C. Cir. 1995) ............................................................ 5

*Clevinger v. Advoc. Holdings, Inc.*,

    134 F.4th 1230 (D.C. Cir. 2025) ................................................. 16, 20

*Clinton v. Jones*,

    520 U.S. 681 (1997) ...................................................................... 21

*Cooper v. U.S. Postal Serv.*,

    577 F.3d 479 (2d Cir. 2009) ............................................................. 9

*Cornish v. Dudas*,

    540 F. Supp. 2d 61 (D.D.C. 2008) .................................................... 16

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,

    77 F.4th 679 (D.C. Cir. 2023) .......................................................... 9

*DCH Reg'l Med. Ctr. v. Azar*,

    925 F.3d 503 (D.C. Cir. 2019) ........................................................ 15

*FedEx v. Dep't of Comm.*,

    39 F.4th 756 (D.C. Cir. 2022) ................................................................................... 15

*DSE, Inc. v. United States*,

    169 F.3d 21 (D.C. Cir. 1999) ..................................................................................... 21

*Egbert v. Boule*,

    596 U.S. 482 (2022) ..................................................................................................... 7

*Farris v. Rice*,

    453 F. Supp. 2d 76 (D.D.C. 2006) .............................................................................. 6

*Fed. Election Comm'n v. Cruz*,

    596 U.S. 289 (2022) ..................................................................................................... 8

*Franklin v. Gwinnett Cnty. Pub. Schs.*,

    503 U.S. 60 (1992) ....................................................................................................... 7

*Fulton v. Fulton Cnty. Bd. of Commissioners*,

    148 F.4th 1224 (11th Cir. 2025) ................................................................................. 7

*Fund for Animals v. Frizzell*,

    530 F.2d 982 (D.C. Cir. 1975) ............................................................................ 19, 20

*Garcia v. Vilsack*,

    563 F.3d 519 (D.C. Cir. 2009) ................................................................................... 12

*Greenpeace, Inc. v. Dep't of Homeland Sec.*,

    311 F. Supp. 3d 110 (D.D.C. 2018) .......................................................................... 12

*Griffith v. FLRA*,

    842 F.2d 487 (D.C. Cir. 1988) ............................................................................ 14, 15

*Guthrie v. Rainbow Fencing Inc.*,

    113 F.4th 300 (2d Cir. 2024) ................................................................................................ 9

*Harvey v. Lynch*,

    123 F. Supp. 3d 3 (D.D.C. 2015) ........................................................................................ 11

*Hein v. Freedom From Religion Found., Inc.*,

    551 U.S. 587 (2007) .............................................................................................................. 8

*Hubbard v. United States*,

    496 F. Supp. 2d 194 (D.D.C. 2007) ..................................................................................... 5

*Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232,

    910 F.3d 1232 (D.C. Cir. 2018) ......................................................................................... 11

*Johnson v. Exec. Off. for U.S. Att'ys*,

    310 F.3d 771 (D.C. Cir. 2002) ........................................................................................... 12

*Kim v. FINRA*,

    698 F. Supp. 3d 147 (D.D.C. 2023) ................................................................................... 20

*Klayman v. District of Columbia Court of Appeals*,

    Civ. A. No. 24-2997 (RBW), 2025 WL 1517247 (D.D.C. May 28, 2025) .............................. 4

*Lane v. Pena*,

    518 U.S. 187 (1996) ............................................................................................................ 10

*Larson v. Domestic & Foreign Com. Corp.*,

    337 U.S. 682 (1949) ...................................................................................................... 10, 14

*League of Women Voters of U.S. v. Newby*,

    838 F.3d 1 (D.C. Cir. 2016) ................................................................................................. 6

*Leedom v. Kyne*,

    358 U.S. 184 (1958).................................................................................................. 14

*Nken v. Holder*,

    556 U.S. 418 (2009)........................................................................................ 5, 13, 20

*Nyunt v. Chairman, Broad. Bd. of Governors*,

    589 F.3d 445, 449 (D.C. Cir. 2009)…………………………………………………………15

*Pantoja v. Martinez*,

    No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022)...................................................... 6

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,

    831 F.3d 500 (D.C. Cir. 2016)................................................................................ 20

*Ray v. Fed. Bureau of Prisons*,

    811 F. Supp. 2d 245 (D.D.C. 2011) .................................................................. 12, 15

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.*,

    678 F. Supp. 3d 88 (D.D.C. 2023) .......................................................................... 5

*Spokeo, Inc. v. Robins*,

    578 U.S. 330 (2016)................................................................................................. 9

*Starbucks Corp. v. McKinney*,

    602 U.S. 339 (2024)................................................................................................. 4

*Steel Co. v. Citizens for a Better Env't*,

    523 U.S. 83 (1998).................................................................................................. 4

*Tax Analysts v. Internal Revenue Serv.*,

    214 F.3d 179 (D.C. Cir. 2000)................................................................................. 7

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,

    444 U.S. 11 (1979) ........................................................................................... 7, 8

*TransUnion LLC v. Ramirez*,

    594 U.S. 413 (2021) ........................................................................................... 9

*U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*,

    852 F.3d 1131 (D.C. Cir. 2017) ........................................................................ 5

*United States v. James Daniel Good Real Prop.*,

    510 U.S. 43 (1993) ............................................................................................. 8

*United States v. Testan*,

    424 U.S. 392 (1976) ........................................................................................... 10

*Univ. of Colo. Health at Mem'l Hosp. v. Burwell*,

    233 F. Supp. 3d 69 (D.D.C. 2017) .................................................................... 22

*Univ. of Texas v. Camenisch*,

    451 U.S. 390 (1981) ........................................................................................... 5

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,

    259 F.2d 921 (D.C. Cir. 1958) .......................................................................... 16

*Citizens for Responsibility and Ethics in Washington v. Dep't of Just.*,

    846 F.3d 1235 (D.C. Cir. 2017) ........................................................................ 11, 13

*\*Winter v. Nat. Res. Def. Council, Inc.*,

    555 U.S. 7 (2008) ............................................................................................... 4

*Wis. Gas Co. v. FERC*,

    758 F.2d 669 (D.C. Cir. 1985) .......................................................................... 16, 18

*Ziglar v. Abbasi*,

    582 U.S. 120 (2017).................................................................................................................. 7

*Zukerberg v. D.C. Bd. of Elections & Ethics*,

    999 F. Supp. 2d 79 (D.D.C. 2013) ........................................................................................ 4

**Statutes**

*5 U.S.C. § 552(a)(4)(B) ........................................................................................................... 8

*5 U.S.C. § 702...................................................................................................................... 6, 10, 11

5 U.S.C. § 704........................................................................................................................ 6, 11

Pub. L. No. 119-38................................................................................................................. 2, 7

**Rules**

Fed. R. Civ. P. 65(c) .............................................................................................................. 21

Defendant Todd Blanche, in his official capacity as Acting Attorney General of the United States (the "Government" or "Department"), through counsel, respectfully submits this opposition to Plaintiff's Motion for Preliminary Injunction ("Pl's. Mot.") (ECF No. 9) under Federal Rule of Civil Procedure ("Rule 65") and Local Civil Rule 65.1.

Plaintiff's motion is procedurally deficient at the outset for two main reasons. First, Plaintiff lacks standing because she has not demonstrated a concrete, particularized, redressable injury, nor has she identified any legally cognizable right of action to sue. Second, Plaintiff's motion for preliminary injunction impermissibly seeks to shortcut to the merits. The primary purpose of a preliminary injunction is to preserve the status quo during the pendency of litigation, however. Yet, rather than maintain the status quo, Plaintiff's motion effectively asks this Court to resolve the merits of the case at the outset under the pretext of injunctive relief—contrary to both tradition and precedent. Each defect alone is a sufficient reason to deny the motion.

Plaintiff fares no better on the substance. Plaintiff has not come close to satisfying the stringent burden required for injunctive relief, and the Court should deny the motion on two independent grounds.

First, the Court lacks jurisdiction because Plaintiff cannot invoke the Administrative Procedure Act ("APA"). Where an adequate remedy at law exists, the APA's waiver of sovereign immunity does not apply—and the Freedom of Information Act ("FOIA") provides exactly that remedy here. The Epstein Files Transparency Act (the "Epstein Act") is, in essence, a disclosure statute. Read in *pari materia*, the Epstein Act supplements FOIA. It does not create a freestanding jurisdictional hook outside of FOIA's remedial framework.

Second, even if the Court reached the merits, Plaintiff cannot establish irreparable harm. Plaintiff's purported "information injury"—that withholding these materials deprives victims of

the complete truth, frustrates Congress's transparency goals, and may affect the midterm elections—are generalized grievances that rests entirely on speculation and conjecture. Nor can she repackage that injury as economic loss: economic harm alone does not constitute irreparable injury, and, in any event, Plaintiff has acknowledged that she continues to publish on her channel; the Epstein files are one topic among many she covers. She cannot show the purported harm is certain, actual, or imminent. These generalized claims are hardly enough to warrant such an extraordinary and drastic remedy. Accordingly, the Court should deny the motion.

## BACKGROUND

Plaintiff devotes considerable pages in her motion to recounting the history and circumstances surrounding Jeffrey Epstein—matters that are not relevant to whether Plaintiff has met her burden to establish entitlement to extraordinary relief. The Court and the public are well aware of the gravity of Epstein's alleged crimes and the public interest in transparency. That is not in dispute. The government therefore confines its factual background to matters relevant to this proceeding.

### A.     The Epstein Files Transparency Act

On November 19, 2025, Congress enacted the "Epstein Act," Pub. L. No. 119-38, with bipartisan support. The Epstein Act directs the Attorney General to make all unclassified records, documents, communications, and investigative materials in the Department's possession publicly available. *See* Pub. L. No. 119-38 § 2(a). The Attorney General has the discretion to withhold or redact certain categories of information, *id*. § 2(c)(1)(A)-(E), subject to written justification, *id*. § (2)(c)(2). The Epstein Act also mandates certain reporting requirements. *Id*. § (3).

The Department made multiple disclosures on December 19 and December 23, 2025, followed by its most recent release on January 30, 2026. *See* Compl. (ECF No. 1) ¶¶ 24-25. On

February 2, 2026, the government issued a summary identifying the records that were withheld and explaining the legal bases for any redactions. *See id*. ¶ 25.

**B.      Plaintiff's Lawsuit**

Plaintiff is a self-described independent journalist reporting on domestic and international events through her YouTube channel and a variety of other platforms. *See generally* Katie Phang Declaration ("Phang Decl."), Pl.'s Mot, Ex. 1 (ECF No. 9-2). According to Plaintiff, she focuses on legal and political news, including coverage of Jeffrey Epstein and the Epstein files, which draws substantial internet traffic. *Id*. ¶¶ 7-8, 38. Plaintiff's income derives, in part, from the viewership of each video she publishes. *Id*. ¶¶ 11, 36-38. On April 27, 2026, Plaintiff initiated an action under the APA, alleging, in relevant part, that the Department's public disclosures violated the law by failing to produce required records, improperly withholding information, and neglecting to provide adequate justification for any redactions applied. *See generally* Compl. Plaintiff seeks mandamus and declaratory relief. *Id*. at 12-15.

A month later, on May 28, 2026, Plaintiff moved for preliminary injunction. *See generally* Pl.'s Mot. In the motion, Plaintiff asks the Court to order the Department to: (1) show cause why certain documents were withheld and certain information redacted; (2) immediately initiate review and production of foreign-language materials that may be subject to production; and (3) immediately publish a redaction index. Pl's. Mot., Prayer for Relief at 35-36.

**LEGAL STANDARDS**

As a threshold matter, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" and if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (stating a court may not "resolve contested questions of

law when its jurisdiction is in doubt").  Thus, the Court must address the question of subject matter jurisdiction before turning to the merits of a preliminary injunction.  *Steel Co.*, 523 U.S. at 101-102; *see also Zukerberg v. D.C. Bd. of Elections & Ethics*, 999 F. Supp. 2d 79, 82 (D.D.C. 2013) ("Before the Court may consider [preliminary injunction] factors, it must first determine whether it has jurisdiction to hear the case because [] jurisdiction is always an antecedent question." (internal quotation marks and citation omitted)); *Klayman v. District of Columbia Court of Appeals*, Civ. A. No. 24-2997 (RBW), 2025 WL 1517247 at *1 (D.D.C. May 28, 2025) (denying plaintiff's motion for a preliminary injunction because the plaintiff failed to establish a likelihood of subject matter jurisdiction).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The Supreme Court repeatedly reaffirmed that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20).  The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Because preliminary injunctions are not "awarded as of right," but rather "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."  *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).  Even if the movant can show a strong likelihood of success on the merits but fails to make a sufficient showing of irreparable injury or public interest, the Court must deny the request

- 4 -

for preliminary injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

Importantly, a "movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy*, 454 F.3d at 297. Moreover, "[a]bsent a 'substantial indication' of likely success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Hubbard v. United States*, 496 F. Supp. 2d 194, 198 (D.D.C. 2007). If a court concludes that a claim fails as a matter of law, a point of jurisdiction or on the merits, then a preliminary injunction is inappropriate. *See U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017).

"The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Preliminary injunctions are not "awarded as of right," and "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek*, 585 U.S. at 158. "Rather, a court must be persuaded as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023). A preliminary judgment's purpose "'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Braxton v. U.S. Parole Comm.*, Civ. A. No. 25-3534 (SLS), 2025 WL 3063036, at *8 (D.D.C. Nov. 3, 2025) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)); *see also Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, No. 25-339, 2025 WL 1783899, at *15 (D.D.C. June 27, 2025) (collecting authorities supporting that an injunction is a stopgap measure intended to preserve the status quo).

And where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction . . . requir[ing] a higher standard than an ordinary preliminary injunction"); *but see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

## ARGUMENT

As a threshold matter, Plaintiff's claims fail for want of jurisdiction.  First, Plaintiff has failed to establish any private right of action under the Epstein Act and she lacks standing to bring her claims.  Second, the APA's waiver of sovereign immunity is expressly conditioned: it does not apply where "any other statute . . . expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702, and—most relevant here—where there is an "other adequate remedy," 5 U.S.C. § 704.  FOIA provides exactly that remedy.

Even if the Court had jurisdiction—and to be clear, it does not—Plaintiff's motion still fails because she cannot satisfy the demanding standards required for preliminary relief.  *See Chaplaincy*, 454 F.3d at 297.

I.    **The Court Lacks Jurisdiction Over Plaintiff's Claims**

A.    **Plaintiff Has No Private Right of Action Under the Epstein Act**

It is a bedrock principle that "like substantive law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  For this reason, "violation of a federal statute alone is inadequate to support a private cause of action."

*Tax Analysts v. Internal Revenue Serv.*, 214 F.3d 179, 185 (D.C. Cir. 2000).  Rather, the Court must "interpret the statute Congress has passed to determine whether it displays an intent to create . . . a private remedy."  *Alexander*, 532 U.S. at 286.  Without clear indication of such statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id*. at 286-87 (citations omitted).

Here, nothing in the text of the Epstein Act creates a private cause of action.  *See* Pub. L. No. 119-38.  By its own terms, nowhere does the statute expressly authorize private individuals to sue for alleged violations, nor does the statutory scheme indicate that Congress intended to create an implied right of action.  Rather, the Epstein Act simply establishes disclosure and reporting obligations on the Department.  When "the Constitution or laws of the United States do not support a cause of action," a federal court "cannot reach out to award remedies."  *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74 (1992); *see also, e.g.*, *American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("[A] plaintiff must have a cause of action under the applicable statute."); *Fulton v. Fulton Cnty. Bd. of Commissioners*, 148 F.4th 1224, 1239 (11th Cir. 2025) ("[T]o get any form of legal relief in the federal courtroom, a litigant must have a cause of action.").  Because "the statute does not evince Congress' intent to create the private cause of action asserted," this Court may not "create[]" that "action … through judicial mandate."  *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017); *see also, e.g., id.* at 133 ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate."); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979) ("[T]he mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf."); *Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("[C]reating a

- 7 -

cause of action is a legislative endeavor."); *cf. United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) ("We have held that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.").

Where Congress intends to permit private enforcement, it knows how to do so and typically does so in clear and unmistakable terms. *Cf.* 5 U.S.C. § 552(a)(4)(B). The absence of any such language here is both telling and dispositive. Accordingly, any claim premised on an alleged violation of the Epstein Act fails as a matter of law.

> **B.     Plaintiff Lacks Standing Because the Epstein Act Does Not Create a Personal Right to the Information She Seeks**

As the Epstein Act is a general public disclosure law, Plaintiff cannot, and does not, allege any harm or individualized interests separate from "the interests of the public at large." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 600 (2007). Plaintiff's own arguments make this point. *See* Pl.'s Mot. at 19 (arguing that Congress enacted the law for "complete truth for survivors" and to "achieve the maximum possible level of transparency"). In doing so, Plaintiff concedes that the law requires broad public disclosure, as opposed to disclosure to her. But, according to the Plaintiff, "journalists *must* serve as the intermediaries" if Congress's intention is to be realized. *Id.* at 20 (emphasis added). Without more, Plaintiff's entire theory of standing boils down to the idea that the victims of crime and the public at large are incapable and "lack the … capacity to sort through and make sense of the millions of … records." *Id.* Such bold assertions are entirely insufficient to establish that Plaintiff herself has standing to bring this action.

To have standing, a "plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022).  Plaintiff fails to satisfy these requirements.

1.    Plaintiff Cannot Demonstrate an Injury in Fact.

An injury-in-fact requires "an invasion of a legally protected interest that is *concrete* and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (emphasis added). Plaintiff cannot satisfy this standard for two independent reasons: (1) the Epstein Act creates no legally protected individual right to the information at issue, and, even if it did, (2) Plaintiff has failed to demonstrate any cognizable harm from the alleged informational injury.

First, Plaintiff's theory rests on the Department's alleged noncompliance with the Epstein Act's production requirements.  *See* Pl.'s Mot.  But to ground standing in a statutory violation, there must first be a personal "statutory right to seek the information" at issue.  *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023).  As discussed above, the Act provides no such right.  Where, as here, a statute is directed at the government rather than conferring personal entitlements, a plaintiff who claims injury from its violation has no legally protected interest to assert.  *See Ctr. for Biological Diversity*, 77 F.4th at 686.  Plaintiff's claim therefore fails at the threshold.

Second, even assuming the Epstein Act could be read to confer some informational right— and it cannot—Plaintiff's claim would still fail because she cannot demonstrate downstream harm—some concrete consequences of not receiving the information.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("An asserted informational injury that causes no adverse effects cannot satisfy Article III."); *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 307–08 (2d Cir. 2024) (same)*.*  At best, Plaintiff asserts generalized grievances of seeking "complete truth"

- 9 -

and "transparency." *See* Pl.'s Mot. at 18-20. Put simply, such a "generalized grievance is insufficient" for Article III. *See Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009); *see also Carney v. Adams*, 592 U.S. 53, 59 (2020) (same).

Moreover, to the extent Plaintiff alleges economic injury, *see Compl.* ¶¶ 7–8, 11, 36–38, that alleged injury cannot establish standing because it is not redressable. The only economic injury Plaintiff identifies is the potential loss of revenue from not being able to publish content on this topic. *See id.* But monetary relief is unavailable under the APA. *See* 5 U.S.C. § 702. As a result, Plaintiff's asserted economic injury cannot be remedied by any relief this Court may grant in this action. An injunction or declaratory judgment would not restore the funds Plaintiff allegedly may lose, and the APA does not authorize an award of damages to compensate for that loss. Because Plaintiff's economic injury is redressable only through monetary recovery—and such recovery is unavailable here—she cannot bootstrap an otherwise non-redressable economic loss into Article III standing.

In short, Plaintiff lacks Article III standing. The Act creates no personal right to the information she seeks; she has demonstrated no concrete harm from the Department's alleged noncompliance; and her claim amounts to a generalized grievance about government noncompliance with the law. Because this Court lacks jurisdiction, Plaintiff's motion should be denied and this action dismissed.

### C.    There Is No Waiver of Sovereign Immunity

#### 1.    FOIA Provides an Adequate Remedy at Law

Even under the APA, Plaintiff's claims fare no better. The federal government enjoys sovereign immunity and may be subject to suit only when it has explicitly waived that immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). Waivers of sovereign immunity must be strictly construed to protect the prerogatives of the government and to ensure the courts stay within the

jurisdiction provided by Congress. *See Lane v. Peña*, 518 U.S. 187, 192 (1996); *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 703–05 (1949). Plaintiff brought this action in district court, invoking the APA's waiver of sovereign immunity, which applies to claims "seeking relief other than money damages." 5 U.S.C. § 702. The Act does not apply when "statutes preclude judicial review" or when "agency action is committed to agency discretion by law." *Id.* § 701(a). Judicial review is limited, further, to "[a]gency action made reviewable by statute" or "final agency action for which there is *no other adequate remedy* in a court[.]" *Id.* § 704 (emphasis added). The limitation on judicial review in "[s]ection 704 reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Jus*t., 846 F.3d 1235, 1245–46 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (alterations in original).

As indicated, Plaintiff asks the Court to order the Department to: (1) show cause why certain documents were withheld and certain information was redacted; (2) immediately initiate review and production of foreign-language materials that may be subject to production; and (3) immediately publish a redaction index. Pl's. Mot., Prayer for Relief at 35-36. In essence, Plaintiff seeks to challenge the Department's failure to disclose records related to Epstein. As previously indicated, the Epstein Act is, at bottom, a disclosure law. It directs the release of certain materials and establishes requirements and timelines for doing so—precisely the kind of remedial framework that FOIA already governs.

Undoubtedly, FOIA provides an adequate remedy. *See Elec. Priv. Info. Ctr. ("EPIC") v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (concluding under a variety of circumstances that

"FOIA offers an 'adequate remedy' within the meaning of [the APA]"); *CREW*, 846 F.3d at 1245-46 (concluding that FOIA provides an adequate remedy such that review under the APA is barred); *Harvey v. Lynch*, 123 F. Supp. 3d 3, 7–8 (D.D.C. 2015) ("[C]ourts in this Circuit have uniformly concluded that they lack jurisdiction over APA claims that seek remedies available under FOIA." (cleaned up)); *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (internal citations and quotations omitted) ("There is 'little doubt that FOIA offers an adequate remedy within the meaning of section 704,' . . . when litigants seek[]to 'gain access to . . . records.'" (alterations in original))); *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) ("As a general rule, the FOIA is the exclusive remedy for obtaining improperly withheld agency records." (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)); *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018) (dismissing APA claim for failure to state a claim because "FOIA offers an 'adequate remedy'"); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 75 (D.D.C. 2016) ("Courts in this circuit have [ ] uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA.") (internal quotation marks and citations omitted).

While Plaintiff may strategically prefer the APA's procedural posture, that does not render FOIA an inadequate remedy. *See Chaverra*, 2018 WL 4762259, at *4 (concluding that remedies under FOIA that assertedly are not as effective may nevertheless be adequate). "Adequacy" turns on whether the alternative remedy is capable of providing the relief sought, not on whether it is more convenient or more certain. *Id*. That remains true even if the relief sought is not identical to the relief available; the relief need only be adequate. *See Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (internal citations omitted) (stating the alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the same genre.").

Read in *pari materia*, the Epstein Act and FOIA must be construed as a whole and, indeed, they operate in harmony. The Epstein Act supplements FOIA by imposing additional disclosure obligations with respect to a specific set of records; it does not supplant FOIA or create a parallel enforcement framework. Permitting Plaintiff to circumvent the remedial scheme established by Congress by recasting her claim under the APA would disrupt that harmony and run counter to established precedent.

Here, Plaintiff alleges that the Department's public disclosures violated the law by failing to produce required records, improperly withholding information, and neglecting to provide adequate justification for any redactions applied. *See generally* Compl. To that end, FOIA's remedial scheme is not merely adequate, but is substantively identical to the relief Plaintiff seeks. *See CREW*, 846 F.3d at 1245-46. Moreover, the "EFTA-FOIA" Crosswalk published by the Department's Office of Information Policy maps each withholding category under the Epstein Act directly to its corresponding FOIA exemption—further supporting that the redactions and withholding decisions Plaintiff challenges align with FOIA's exemption framework.[1]

Accordingly, any claim pursuant to the APA fails as a matter of law for lack of subject-matter jurisdiction.

## II.     **Plaintiff Fails to Meet Her Burden for Extraordinary Relief**

Plaintiff cannot meet the demanding standards required for preliminary relief. *See Chaplaincy*, 454 F.3d at 297. The first two factors—likelihood of success on the merits and irreparable harm—are the "most critical." *Nken*, 556 U.S. at 434. Plaintiff fails to establish either, and her motion should be denied on that basis alone.

---

[1]     Department of Justice, Off. Of Info. Pol'y, EFTA-FOIA Crosswalk (2026) (available at: https://www.justice.gov/oip/media/1438931/dl?inline)

**A.    Plaintiff Is Unlikely to Succeed on the Merits.**

1.    Plaintiff's APA Claims Fail as a Matter of Law

As indicated, Plaintiff initiated an action on April 27, 2026, under the APA, alleging, in relevant part, that the Department's public disclosures violated the law by failing to produce required records, improperly withholding information, and neglecting to provide adequate justification for any redactions applied.  *See generally* Compl.

As discussed above, Plaintiff's APA claims fail as a matter of law.  Therefore, they cannot establish a likelihood of success on the merits, and Plaintiff's motion for preliminary injunction should be denied.

2.    Plaintiff's Ultra Vires Claim Likely Will Likewise Fail

In her Complaint, Plaintiff also recasts her APA claims as an ultra vires claims; but that effort similarly falters.  Compl. ¶¶ 56-60.  "[S]uits for specific relief against officers of the sovereign" allegedly acting "beyond statutory authority or unconstitutionally" are not barred by sovereign immunity.  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689, 693 (1949).  That exception to sovereign immunity is based on the principle that such *ultra vires* action by a federal officer "is beyond the officer's powers and is, therefore, not the conduct of the sovereign."  *Id*. at 690.

The leading Supreme Court decision on ultra vires review is *Leedom v. Kyne*, 358 U.S. 184 (1958).  That case arose from an improper certification of a collective-bargaining unit—an interlocutory order excluded from the judicial-review provision of the National Labor Relations Act.  *See id*. at 185, 187.  Nonetheless, the Supreme Court held that district-court review was available because the order was "made in excess of [the agency's] delegated powers and contrary to a specific prohibition" in the National Labor Relations Act.  *Id*. at 188–89.  Time and again, courts have stressed, however, that *ultra vires* review has "extremely limited scope."  *Griffith v.*

- 14 -

*FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc*., 502 U.S. 32, 43 (1991) (*Kyne* does not "authoriz[e] judicial review of any agency action that is alleged to have exceeded the agency's statutory authority").  The D.C. Circuit has described a *Kyne* claim as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds."  *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).

To sufficiently allege an *ultra vires* claim, the plaintiff must aver: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."  *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (cleaned up).  The third requirement is especially demanding.  "Only error that is patently a misconstruction of the" pertinent statute, "that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief."  *FedEx v. Dep't of Comm*., 39 F.4th 756, 764 (D.C. Cir. 2022) (cleaned up).  In other words, an agency violates a "clear and mandatory" statutory command only when the error is "so extreme that one may view it as jurisdictional or nearly so."  *Griffith*, 842 F.2d at 493.  Plaintiff cannot meet that demanding standard.

Here, as discussed above, there is an alternative procedure for review of the statutory claim.  *See Ray*, 811 F. Supp. 2d at 249 ("As a general rule, the FOIA is the exclusive remedy for obtaining improperly withheld agency records." (internal citations omitted)).  Additionally, Plaintiff acknowledges that the Epstein Act authorized the Attorney General to withhold or redact certain portions of records.  Pl.'s Mot. at 12.  Ultimately, Plaintiff's claim amounts to nothing more than a generalized grievance with the Attorney General's exercise of that authority.  A disagreement with how the Attorney General exercised discretion granted by statute does not transform an

- 15 -

otherwise lawful act into an *ultra vires* one.  Accordingly, because Plaintiff is not likely to succeed on the merits of her *ultra vires* claim, her motion for preliminary injunction should be denied.

### B.       Plaintiff Has Not Shown Irreparable Harm

The D.C. Circuit has set a "high standard for irreparable injury."  *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2025) (quoting *Chaplaincy*, 454 F.3d at 297 ); *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 10 (explaining a basic prerequisite for injunctive relief is a showing of irreparable harm).  First, the injury "must be both certain and great; it must be actual and not theoretical."  *Chaplaincy*, 454 F.3d at 297 (internal citation omitted).  The moving party must show "the injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm."  *Id.* (citation modified).

Second, "the injury must be beyond remediation."  *Id.*  "The key word in this consideration is irreparable."  *Id.* (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."  *Clevinger*, 134 F.4th at 1234 (quoting *Va. Petroleum Jobbers*, 259 F.2d at 925).  The "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Id.*

"The movant cannot simply make 'broad conclusory statements' about the existence of harm.  Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'"  *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).  Plaintiffs must "substantiate" their claim of irreparable harm with "proof."  *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Plaintiff's various attempts to identify such an injury here fail.

Here, Plaintiff advances two theories of injury to establish irreparable harm: (1) informational injury and (2) economic injury. *See* Pl.'s Mot. at 18-21. Neither constitutes the type of imminent, irreparable harm necessary to obtain the extraordinary remedy of a preliminary injunction.

### 1.    Plaintiff's Purported Informational Injury is Speculative and Conjectural.

Plaintiff advances three overarching types of informational injury: (1) that denying her access to the materials deprives victims of the complete truth because their stories cannot be told and any delay in disclosure may damage prospects of future litigation; (2) that the failure to disclose frustrates Congress' purpose of achieving transparency; and (3) that the denial may impact the midterm elections. *See* Pl.'s Mot. at 18-21, 32-34.

The Government does not dispute the importance of transparency or the public's interest in uncovering the truth. Those interests, however, do not relieve the Plaintiff of her burden to demonstrate that irreparable harm is certain or imminent *with respect to her*. *Chaplaincy*, 454 F.3d at 297 (stating movant must show "the injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm."). Plaintiff has not done so here.

Plaintiff contends that the alleged informational injury is irreparable because the requested information is time sensitive. Pl.'s Mot. at 31-34. Yet the harms she identifies are entirely speculative. For instance, Plaintiff argues that continued delay *may* impair the search for the truth through fading memories, the loss of evidence, or the disappearance of documents. *Id*. at 32. But such possibilities are conjectural, not concrete. Plaintiff has not—because she cannot—offer any evidence that any records are presently at risk of destruction, that any relevant evidence is likely to be lost during the pendency of this litigation, or that any witness possesses information that is in imminent danger of becoming unavailable. Indeed, Plaintiff herself acknowledges that many

of the records at issue concern alleged events that occurred decades ago. Pl.'s Mot. at 32. That reality undermines, rather than supports, Plaintiff's claim of urgency. Having remained unavailable for years, Plaintiff cannot now plausibly suggest that allowing this litigation to follow the normal course will inflict a certain or immediate injury warranting the extraordinary relief requested. Plaintiff further argues that the salience of the allegations that the President or others in his orbit participated in Epstein's alleged crimes will fade swiftly after the midterms. *Id*. at 33. But, as noted above, those allegations are based entirely on Plaintiff's speculation.

Plaintiff seemingly attempts to flip the preliminary injunction standard on its head and reverse the respective burdens and positions of the parties. By seeking relief at a preliminary stage, the plaintiff seeks the disclosure of information before each party is able adequately to test the claims and frame the contours of the dispute for a decision by the Court.

At bottom, Plaintiff's asserted informational injury rests on what might happen, not what will or is likely to happen. That's precisely the type of speculation courts properly refuse to credit. *See Wis. Gas Co.*, 758 F.2d at 674. Speculation and innuendo are a far cry from the "proof" necessary to demonstrate irreparable harm. *Id*.

### 2.    Economic Injury Alone Does Not Constitute Irreparable Harm.

To the extent Plaintiff grounds her irreparable-harm theory in economic injury—that is, lost viewers and diminished revenue, *see* Pl.'s Mot. at 34—that theory likewise fails to establish irreparable harm. "It is well settled that economic loss does not, in and of itself, constitute irreparable harm." *See Wis. Gas Co.*, 758 F.2d at 674; *see also Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012) ("The first hurdle Plaintiffs face is that the harms they identify are economic in nature and therefore not generally irreparable.").

According to Plaintiff, she draws substantial internet traffic from her coverage of the Epstein case. Phang Decl. ¶¶ 7-8, 38. At present, public interest in the Epstein files is

- 18 -

"extraordinarily high" but as with any story that "interest will diminish over time." Pl.'s Mot. at 34. But this is the definition of speculative harm as the Plaintiff has no way of knowing what the actions of untold millions of people will be in the future. She further argues that delay in disclosure may impede her ability to recoup lost revenue. *Id*. Any such injury, however, is speculative and fails to rise to the level of irreparable. Plaintiff's assertions depend on a series of assumptions regarding future public interest—literally the actions and interests of tens of millions of independent third parties of and potential commercial opportunities.

Moreover, by Plaintiff's own acknowledgment, she has continued to publish on her YouTube channel and has not been prevented from covering the Epstein matter generally. For example, Plaintiff released an episode just two months ago that recorded over 315,000 views to date, and another three months ago that recorded over 841,000 views to date. *Id*. ¶¶ 39-40. Plaintiff's income derives, in part, from the viewership of each video she publishes. *Id*. ¶¶ 11, 36-38. Clearly, the absence of these records has not silenced her. Rather, she continues to engage in the very activity she claims is being irreparably harmed.

### 3. Delay

Plaintiff's delay in seeking injunctive relief further undermines any claim of irreparable harm. When a plaintiff delays seeking judicial intervention, that delay is strong evidence that the alleged injury is neither immediate nor irreparable. *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding that a forty-four-day delay in seeking injunctive relief supported the denial of an injunction, particularly because the plaintiff had knowledge of the alleged irreparable harm).

Here, Plaintiff acknowledged that the Department made public disclosures on December 19 and December 23, 2025, followed by a final release on January 30, 2026. *See* Compl. ¶¶ 24–25. On February 2, 2026, the government issued a summary identifying withheld records and

- 19 -

explaining the legal basis for any redactions. *See id*. ¶ 25. Thus, by early February, Plaintiff possessed the very information that forms the basis of her claims that the Department failed to disclose required records, improperly withheld information, and inadequately justified its redactions. Yet Plaintiff waited until April 27, 2026, to file suit and then delayed another month— until May 28, 2026—to seek preliminary injunctive relief. That nearly four-month delay is fundamentally inconsistent with Plaintiff's assertion that immediate intervention is necessary to prevent irreparable harm. *See Fund for Animals*, 530 F.2d at 987.

For the reasons above, Plaintiff cannot show irreparable harm. Plaintiff's "failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors . . . merit such relief." *Clevinger*, 134 F.4th at 1236; *Am. Oversight*, 788 F. Supp. 3d at 10 (same). Accordingly, Plaintiff's motion should be denied.

### C.      The Balance of Equities and Public Interest Do Not Support an Injunction

When the government is an opposing party, the third and fourth factors merge "because the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citing *Nken*, 556 U.S. at 435). These factors tilt decisively against granting a preliminary injunction here. *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims.").

Here, the public and governmental interests weigh against injunctive relief. True, there is public interest in transparency and the disclosure of the information concerning Epstein. Those interests, however, are not served by compelling the Department to redirect personnel and resources away from competing public interest and safety priorities to address Plaintiff's preference for expedited treatment. The public equally has an interest in the orderly administration

of government.  Those interests would be undermined—not advanced—by the extraordinary relief Plaintiff seeks.

**III.    Any Preliminary Injunction Should be Accompanied by Security and be Stayed.**

Any preliminary injunction should also require Plaintiff to post security.  Under Rule 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendant if they are later found to "have been wrongfully enjoined."  Fed. R. Civ. P. 65(c).  In the event the Court issues an injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction.  *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").  The D.C. Circuit has "expressed skepticism" that district courts may decline to require an injunction bond, emphasizing the "Rule's mandatory language" and "our Circuit's recent guidance."  *Am. Oversight*, 788 F. Supp. 3d at 40 (internal citations omitted).

Finally, to the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed for a period of sixty days so that the Solicitor General has time to consider whether further appellate review is warranted.  Alternatively, at a minimum, any such relief should be stayed for a period of seven days to allow the United States to determine whether to seek emergency appellate review.  *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Woodward Health Sys., LLC v. Becerra*, Civ. A. No. 20-3098 (JEB) (D.D.C. Feb. 23, 2022), ECF No. 29 (a stay would provide for the most "efficient use of party and judicial resources," and it "would [ ] seem imprudent for this Court not to wait to hear what the D.C. Circuit has to say"); *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 88 (D.D.C. 2017) ("Because many of the applicable issues may be resolved by the D.C. Circuit, and because the D.C. Circuit

may otherwise provide instruction on the issues here, the Court finds a stay would serve the interests of judicial efficiency.").

## CONCLUSION

For these reasons, Plaintiff's motion for preliminary injunction should be denied in its entirety.

Dated: June 5, 2026
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH
Chief, Civil Division


By: */s/ SAIFUDDIN K. KALOLWALA*
    SAIFUDDIN K. KALOLWALA
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2550
    Saifuddin.Kalolwala@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATIE PHANG,

        Plaintiff,

    v.

TODD BLANCHE, in his official capacity as
Acting Attorney General of the United States,

        Defendant.

Civil Action No. 26-1417 (EGS)

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendant's opposition to Plaintiff's Motion for Preliminary Injunction, and the entire record herein, it is hereby

ORDERED that Plaintiff's Motion for Preliminary Injunction is **DENIED**.


SO ORDERED:


_____                    _____
Date                                   EMMET G. SULLIVAN
                                       United States District Judge