**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KATIE PHANG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TODD BLANCHE,<br>*in his official capacity as Acting Attorney*<br>*General of the United States*,<br><br>　　　　　Defendant. | Civil Action No. 26-1417 (EGS) |

**PLAINTIFF'S REPLY IN SUPPORT OF
APPLICATION FOR A PRELIMINARY INJUNCTION**

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................................................. 2

TABLE OF AUTHORITIES ...................................................................................................... 3

INTRODUCTION ...................................................................................................................... 6

ARGUMENT............................................................................................................................... 7

    I.       Phang has established a likelihood of success on the merits. ................................ 7

           A.      Phang has established a likelihood of standing............................................ 7

           B.      Blanche has conceded his substantive failure to comply with the Epstein Act.................................................................................................................... 9

           C.      Phang has a private right of action under the APA................................... 10

           D.      Phang does not have an adequate remedy under FOIA. ........................... 10

           E.      Sovereign immunity does not apply. ......................................................... 14

    II.     Phang has established that she will suffer irreparable harm absent preliminary relief. ...................................................................................................................... 14

    III.    Phang has established that the balance of equities and public interest favor preliminary relief. ............................................................................................... 18

    IV.    Blanche has not justified imposing more than a nominal a surety bond. ............. 19

    V.     There is no basis for a stay................................................................................... 21

CONCLUSION.......................................................................................................................... 22

CERTIFICATE OF SERVICE ................................................................................................. 23

**TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014)......................................................................... 5

*Accountability NOW USA v. Griess*, No. 26-cv-1385 (RDM), 2026 WL 1533402 (D.D.C. June 1,

    2026) ........................................................................................................................................... 19

*Beatty v. Trump*, No. 25-cv-4480 (CRC), 2026 WL 1505646 (D.D.C. May 29, 2026) ................ 19

*Bennet v. Spear*, 520 U.S. 154 (1997)............................................................................................. 9

*Byrd v. EPA*, 174 F.3d 239 (D.C. Cir. 1999)................................................................................. 14

*Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63 (D.D.C. 2016) ........................................ 13

*Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321 (D.D.C. 2015) ....................................... 17

*Cent. for Biological Diversity v. IDFC*, 77 F.4th 679 (D.C. Cir. 2023) ......................................... 7

*Chaverra v. ICE*, No. CV 18-289 (JEB), 2018 WL 4762259 (D.D.C. Oct. 2, 2018) ................... 12

*Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101 (D.D.C. 2022)......................... 15

*CREW v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017)............................................................................ 12

*CREW v. FEC*, 904 F.3d 1014 (D.C. Cir. 2018)............................................................................ 20

*\*CREW v. OMB*, 791 F. Supp. 3d 29 (D.D.C. 2025) ................................................................. 7, 20

*Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp. 3d 266 (D.D.C. 2022).......................................... 11

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999) ............................................................. 18

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021)............................................. 15

*Energy Future Coal. v. EPA*, 793 F.3d 141 (D.C. Cir. 2015) .......................................................... 8

*EPIC v. DOJ*, 416 F.Supp.2d 30 (D.D.C. 2006) ........................................................................... 14

*EPIC v. IRS*, 910 F.3d 1232 (D.C. Cir. 2018) .............................................................................. 12

*EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C.) .... 14

*FEC v. Akins*, 524 U.S. 11 (1998) ................................................................................... 6

*Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C.Cir.1975)........................................... 17

*Gordon v. Holder*, 632 F.3d 722 (D.C. Cir. 2011)......................................................... 16

*Greenpeace, Inc. v. DHS*, 311 F. Supp. 3d 110 (D.D.C. 2018) ...................................... 12

*Harvey v. Lynch*, 123 F. Supp. 3d 3 (D.D.C. 2015) ....................................................... 12

*Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83 (D.D.C. 2007) ........... 17

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022) ........................................................... 16

*League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ..................................................................................................... 18, 19

*\*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016).......................... 17, 18

*Mathis v. United States Parole Comm'n*, 749 F. Supp. 3d 8 (D.D.C. 2024)................. 18

*McDermott ex rel. NLRB v. Ampersand Pub.*, LLC, 593 F.3d 950 (9th Cir.2010) ....... 16

*N. Am.'s Bldg. Trades Unions v. DOD*, 783 F. Supp. 3d 290 (D.D.C. 2025)................ 19

*NAACP v. USPS*, 496 F. Supp. 3d 1 (D.D.C. 2020)......................................................... 6

*Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13 (D.D.C. 2025) .................... 21

*Nat'l Endowment for Democracy v. United States*, 795 F. Supp. 3d 63 (D.D.C. 2025) .............. 19

*Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011) ................................ 15

*Nat'l Sec. Couns. v. CIA*, 969 F.3d 406 (D.C. Cir. 2020)................................................ 11

*Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) .................................................................................................................. 19

*Nken v. Holder*, 556 U.S. 418 (2009)............................................................................ 20

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ........................... 14

*Public Citizen v. Carlin*, 2 F. Supp. 2d 1 (D.D.C. 1997).................................................. 6

*Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245 (D.D.C. 2011) ............................................. 12

*Rio Santa Cruz Neighborhood Health Ctr., Inc. v. DHS*, 396 F.3d 1265 (D.C. Cir. 2005) ........... 10

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009) ....................................................... 16

*Se. Fisheries Ass'n, Inc., v. Lutnik*, No. 26-cv-1533 (RC), 2026 WL 1430499 (D.D.C. May 21,

   2026) ....................................................................................................................................... 19

*\*Seife v. HHS*, 440 F. Supp. 3d 254 (S.D.N.Y. 2020) ..................................................................... 6

*States v. W. Elec. Co.*, 46 F.3d 1198 (D.C. Cir. 1995) ................................................................... 18

*Texas v. United States*, 798 F.3d 1108 (D.C. Cir. 2015) ................................................................. 9

*Washington Post v. DHS*, 459 F.Supp.2d 61 (D.D.C. 2006) ......................................................... 14

**Statutes**

5 U.S.C. § 552 ............................................................................................................................ 10, 11

5 U.S.C. § 702 ................................................................................................................................. 15

5 U.S.C. § 704 ................................................................................................................................... 9

5 U.S.C. § 706 ................................................................................................................................... 9

Epstein Files Transparency Act, Pub. L. No. 119–38 ........................................................... *passim*

**INTRODUCTION**

Acting Attorney General Blanche's opposition brief, ECF No. 12 ("Blanch Br."), runs 22 pages. Yet Blanche does not defend his efforts to comply with the Epstein Files Transparency Act on a single one. Blanche does not defend redacting the names of Epstein's associates in salacious emails. Blanche does not defend redacting the names of potential co-conspirators in Department of Justice documents. Blanche does not defend withholding documents containing allegations against President Trump. Blanche does not defend his decision to grant himself an exemption from reviewing and producing foreign-language documents. And Blanche does not defend his failure to publish a redaction log, now more than six months overdue and counting.

Blanche does not defend these actions because he cannot. Each of the five violations of the Act that Phang has targeted in her preliminary injunction motion is beyond credible dispute. Likelihood of success on the merits is "the first and most important factor" courts consider when determining whether to issue a preliminary injunction. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). By his silence, Blanche has already conceded Phang's likelihood of success on the ultimate merits.

The arguments Blanche does advance all fail. Phang has established that she has standing and will suffer irreparable harm absent immediate relief; Blanche's contrary arguments are conclusory. Phang has a valid cause of action that overcomes sovereign immunity under the Administrative Procedure Act; Blanche's contrary argument, that the Freedom of Information Act ("FOIA") renders the Administrative Procedure Act ("APA") unavailable, is wrong. Similarly, the balance of equities tilt towards Phang: she is not asking anything close to full relief on the merits, and Blanche's arguments otherwise ignore the many unchallenged deficiencies in his compliance with the law. And Blanche's alternative requests for a bond and lengthy stay are farfetched in the

context of this case. The Court should grant the motion for a preliminary injunction promptly, without staying it or ordering Phang to provide any surety.

**ARGUMENT**

**I.       Phang has established a likelihood of success on the merits.**

Phang is likely to prevail on the merits. She has established that she likely has standing and will likely prove Blanche's substantive noncompliance with many provisions of the Epstein Files Transparency Act, Pub. L. No. 119–38 (the "Epstein Act" or "Act"). And contrary to Blanche's arguments, Phang has applicable private rights of action that overcome sovereign immunity.

**A.       Phang has established a likelihood of standing.**

Phang has met her burden for purposes of preliminary relief to show that she "likely has standing." *NAACP v. USPS*, 496 F. Supp. 3d 1, 12 (D.D.C. 2020). Phang is suffering two cognizable injuries, an informational one and an economic one. Phang substantiated both injuries in detail in her opening brief, ECF No. 9-1 ("Phang Br.) at 17–22, and through a sworn declaration, ECF No. 9-2 ("Phang Decl.") ¶¶ 13–43. As Blanche does not dispute the substance of Phang's factual submissions, Phang will not restate them here.

Blanche advances three arguments against Phang's informational-injury-based standing. Notably, none of those arguments engages with the on-point precedents Phang cited in her opening brief. Blanche never discusses, never mind distinguishes, *Seife v. HHS*, 440 F. Supp. 3d 254, 268, 272–73 (S.D.N.Y. 2020), though it is on all fours with this case, *see* Phang Br. 20. Blanch likewise never addresses *Public Citizen v. Carlin*, 2 F. Supp. 2d 1, 5–6 (D.D.C. 1997), though it, too, confirms that Phang has informational standing, *see* Phang Br. 20–21. And Blanche never even mentions *FEC v. Akins*, 524 U.S. 11, 21 (1998), in which the Supreme Court confirmed that a plaintiff suffers a cognizable injury when the government fails to disclose information to which she is entitled. Phang Br. 18.

7

In any case, all three of Blanche's informational-injury arguments fail.

First, Blanche argues that Phang suffers no informational injury because the Epstein Act "requires broad public disclosure, as opposed to disclosure to her." Blanche Br. 12. But this Court considered and rejected the same argument in *CREW v. OMB*, 791 F. Supp. 3d 29 (D.D.C. 2025), holding that "individualized entitlement to disclosure is not required," *id.* at 46. Phang quoted *CREW* in her opening brief, Phang Br. 19, yet Blanche does not even cite it, let alone explain why the Court should reach a diametrically opposite conclusion here. More generally, Phang has established that journalists in general, and she in particular, have suffered the type of harm the Epstein Act was meant to prevent. Phang Br. 18–22.

Second, Blanche argues that Phang suffered no informational injury because the Epstein Act "is directed at the government rather than conferring personal entitlements." Blanche Br. 9. This is an odd suggestion to make in an APA case; much of APA litigation arises from individuals invoking the "personal entitlements" created by the APA to seek relief under statutes substantively "directed at the government." All private-plaintiff National Environmental Policy Act litigation, for instance, fits that description, and there is no question that many NEPA plaintiffs have standing. And the case Blanche cites to support his novel theory, *Center for Biological Diversity v. IDFC*, 77 F.4th 679 (D.C. Cir. 2023), turns out to provide no support at all. To the contrary, it holds that a plaintiff may establish informational-injury-based standing by alleging violations of a provision of the Sunshine Act requiring agencies to publicly notice meetings—*i.e.*, a statute "directed at the government."

Third, Blanche argues that any informational injury to Phang cannot ground standing because she has not demonstrated "downstream harm." Blanch Br. 9–10. But she has; Phang has identified half a dozen stories she is currently unable to report because of Blanche's unlawful acts,

Phang Decl. ¶¶ 14–31, and has identified harms yet further downstream to victims and the public at large, who are being denied the benefits of Phang's reporting, Phang Br. 19–20. Phang has also tied those harms to Congress's express purposes for enacting the Act (another point Blanche never addresses). *See* Phang Br. 19–20 (collecting legislative history). For that reason, and those set forth in the opening brief, Phang has suffered a cognizable informational injury sufficient to ground standing.

Blanche makes only one argument against Phang's alternative, economic-injury-based standing theory, that her otherwise-uncontroverted injury is not "redressable" because the APA does not provide for monetary relief. Blanch Br. 10. This argument makes a quite basic category error. To establish that an economic injury is redressable, a plaintiff need not prove that *damages* are available to offset the economic loss *directly*. Instead, a plaintiff need only show that the relief sought will remove a "hurdle" or "impediment" to eliminating the economic injury. *Energy Future Coal. v. EPA*, 793 F.3d 141, 144 (D.C. Cir. 2015). Businesses, for instance, routinely base challenges to regulations on economic injuries that will be redressed by the regulations' invalidation through injunctive relief. *See, e.g., id.* Here, Phang's economic injury is redressable by judicial relief because such relief would grant her access to information that she would distill into new YouTube episodes, which would in turn earn her revenue that, absent relief, she will lose out on.

All told, Blanche's arguments on standing are flimsy and fail to engage with on-point cases entirely. Phang has established a likelihood of proving standing based on both her informational injuries and her economic ones.

### B.    Blanche has conceded his substantive failure to comply with the Epstein Act.

Turning from standing to the substantive merits, Phang is likely to prove that Blanche has violated the Epstein Act in many respects. Phang's opening brief devoted twelve pages to showing

9

those violations. Phang Br. 22–34. Blanche devotes not one word to responding. Accordingly, for purposes of the instant motion Blanche has conceded that he is violating the Act. *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015). And for purposes of any appeal, Blanche has likewise forfeited the issue. *Id.*

### C.      Phang has a private right of action under the APA.

Blanche's (uncontested) violations of the Epstein Act are actionable under the APA. Phang's opening brief explained that DOJ's production was a final agency action because Blanche himself stated as much in his January 30, 2026, letter. Phang Br. 22. The APA judicial review provision, 5 U.S.C. § 704, furnishes Phang with a well-settled private right of action to obtain review of such final agency action. *Bennet v. Spear*, 520 U.S. 154, 175 (1997).  And Phang has cognized the Epstein Act violations she alleges in the terms required by 5 U.S.C. § 706: as arbitrary and capricious, not in accordance with law, in excess of statutory jurisdiction, and so on. Blanche contests none of this, so he concedes it all. *Texas*, 798 F.3d at 1110.[1]

### D.      Phang does not have an adequate remedy under FOIA.

Blanche does, however, dispute the availability of the APA cause of action on one basis. In the course of his sovereign immunity argument, Blanch Br. 10–13, Blanche reasons as follows: (i) the section 704 cause of action is available only insofar as Phang has "no other adequate remedy" under other statutes, Blanch Br. 11 (quoting 5 U.S.C. § 704); and (ii) the federal Freedom of

---

[1] Blanche inexplicably starts his discussion of causes of action with an *Alexander v. Sandoval*–based argument that the Epstein Act does not itself imply a private right of action. Blanche Br. 6–8.  That may be, but the Court need not reach the issue; Phang has never suggested otherwise.

The Court likewise need not reach Phang's likelihood of success on her *ultra vires* claim, an alternative claim pleaded to backstop that APA claims that Phang's opening brief never touched on. *But see* Blanche's Br. 14–16 (providing a lengthy discussion of ultra vires claims).

Information Act, 5 U.S.C. § 552, provides Phang with an adequate remedy for all her claims (Blanche Br. 11–12); thus (iii) APA review is unavailable (Blanch Br. 12).

The fatal defect in this chain of reasoning comes at its second step: FOIA does not provide Phang with an adequate remedy for *any*, never mind *all*, of her claims. A remedy must be something more than "doubtful" to be adequate for purposes of the section 704 cause of action. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. DHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). Phang's odds of success in obtaining the remedies she seeks in this case via FOIA request would range from doubtful to (in almost all cases) nil. The relief sought by the instant motion illustrates the point.

First, under FOIA, Phang would be very unlikely to obtain the unredacted Epstein associate emails, which could be redacted under FOIA exemption 6 (personal privacy) and 7 (law enforcement records). Under the Epstein Act, by contrast, her entitlement to have the emails unredacted is so clear that Blanche has not bothered contested it.

Second, under FOIA, Phang would certainly not be able not obtain unredacted DOJ internal charging documents or the Trump accuser interview notes, which would be subject to both exemptions above, and would likely be further exempted as grand jury records under 5 U.S.C. § 552(b)(3) and Federal Rule of Criminal Procedure 6(e). But under the Epstein Act, which reflects Congress's express intent to mandate disclosure of law enforcement and grand jury records, Phang's entitlement is so clear that Blanche again has not challenged it

Third, under FOIA, Phang would be not likely be able to compel DOJ to conduct systematic responsiveness review of all foreign-language Epstein-related files—such a request would be denied out of hand as "unduly burdensome." *See, e.g.*, *Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp.

11

3d 266, 271 (D.D.C. 2022). Under the Epstein Act, by contrast, review of all materials potentially covered by the Act is mandatory, so Phang's path to relief is clear.

Fourth, under FOIA, Phang would have no right to a log of all of DOJ's Epstein Act redactions because FOIA does not require agencies "to create new records" that do not yet exist. *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 409 (D.C. Cir. 2020). Under the Epstein Act, Phang has a plain right to that log, which should have been created and produced to Phang and the rest of the public over six months ago. *See* Act § 2(b)(2).

Finally, Phang could not obtain adequate relief via FOIA for a more prosaic reason: requesting tens of thousands of Epstein records via FOIA would be prohibitively expensive (not to mention time-consuming). The Epstein Library, by contrast, is required to be made available without charge.

As the above exercise illustrates, the difference between the Epstein Act and FOIA are legion. To name a few more: The Epstein Act mandates disclosure to the public at large, *see* Act § 2(a); FOIA generally mandates disclosure only to requestors, *see* 5 U.S.C. § 552(a)(3)(A); The Epstein Act mandates production of all material satisfying any of nine express criteria, *see* Act § 2(a)(1)–(9); FOIA generally mandates production of material only upon request, *see* 5 U.S.C. § 552(a)(3)(A). The Epstein Act mandates that production conclude by a date certain (December 19, 2025), *see* Act § 2(a); FOIA establishes a variety of rolling deadlines tied to the date of the request, *see* 5 U.S.C. § 552(a)(6)(a). The Epstein Act has only five exemptions, *see* Act § 2(c)(1)(A)–(E); FOIA has nine, *see* 5 U.S.C. § 552(b)(1)–(9). And so on. Quite simply, FOIA is not an "adequate remedy," Blanche Br. 11, as Defendant claims, because Phang could *never* get the full range of documents through FOIA that should can under the Epstein Act.

These differences refute Blanche's assertion that the Epstein Act merely "supplements FOIA." Blanche Br. 13. Both are disclosure statutes, certainly. But nothing about the Epstein Act suggests that it intended to supplement FOIA. As described, FOIA entitles Phang to just a sliver of the documents she is entitled to under the Epstein Act. Moreover, the Act was passed by Congress as standalone piece of legislation; it did not modify the section of the United States Code that governs FOIA (5 U.S.C. § 552 *et seq.*). Nor does the Act mention any of FOIA's government obligations or request procedures. Had Congress wanted to integrate the Epstein Act into FOIA, or even make the relief available under both laws coterminous, it could have done so; but it did not.

Ultimately, the Epstein Act is the most uncompromising disclosure statute ever enacted in American history. It is very different in scope, structure, and kind from FOIA. And "*in pari materia*" is not a magical incantation that allows Blanche to make such differences—or their effects on Phang's available remedies—vanish in a puff of smoke.

Blanche's contrary arguments fail. He provides a lengthy string-cite to cases declining to treat the APA as a disclosure remedy where FOIA is available. Blanch Br. 12. But none of those cases involved the Epstein Act or anything remotely like it. And all involved situations where—unlike here—FOIA provided a plausible remedy. In fact, every one of the cases Blanche cites concerned plaintiffs were seeking at least in part to contest the agency defendants' compliance *with FOIA* by bringing an APA claim. *See EPIC v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018); *CREW v. DOJ*, 846 F.3d 1235, 1243–44 (D.C. Cir. 2017); *Harvey v. Lynch*, 123 F. Supp. 3d 3, 5 (D.D.C. 2015); *Chaverra v. ICE*, No. CV 18-289 (JEB), 2018 WL 4762259, at *1 (D.D.C. Oct. 2, 2018); *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011); *Greenpeace, Inc. v. DHS*, 311 F. Supp. 3d 110, 115 (D.D.C. 2018); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63,

75 (D.D.C. 2016). Such cases are easily distinguished here, where Phang has not made (and as described above, to get the information she seeks, cannot make) a FOIA request. Rather, unlike the cases Blanche cites, Phang seeks to compel compliance with a non-FOIA statute, the Epstein Act, which has disclosure mandates far broader and stricter than FOIA, as well as non-disclosure mandates (materiality review, redaction log publication, and date-certain deadlines) that FOIA lacks.

Blanche also argues that relief under FOIA need not be "identical" to be adequate. Blanche Br. 12. But Blanche's brief never actually describes how Phang could get *any* of the relief she seeks in any form under FOIA—a decisive omission—and, as shown above, she could not. Blanche suggests that Phang's invoking the APA "circumvent[s] the remedial scheme established by Congress." But Congress wrote the APA as well as FOIA, and wrote it to make actionable things like improperly withheld agency action and action in excess of jurisdiction or statutory right— claims that fit the conduct challenged here. Finally, Blanche invokes a DOJ-published Epstein Act– FOIA "crosswalk." Blanche Br. 13. That agency document can shed no light on Congress's intent, and in any case it illustrates the many stark differences between the sweeping Epstein Act and the far more accommodating FOIA.

### E. Sovereign immunity does not apply.

Sovereign immunity does not bar Phang's action. Blanche's argument that it does hinges entirely on his claim, already refuted above, that Phang has an adequate FOIA remedy that renders APA section 704 review unavailable. This argument accordingly fails for the same reasons as the adequate-remedy argument just discussed. *See supra* § 1.D.

## II.  Phang has established that she will suffer irreparable harm absent preliminary relief.

Even if he is breaking the law, Blanche argues that he is causing Phang no irreparable harm by doing so. In fact, Phang is suffering two kinds of irreparable harm: an informational harm

(because Blanche refuses to produce time-sensitive information she is entitled to) and an economic harm (because she cannot publish time-sensitive reporting based on that information). Phang Br. 18–21, 32–34.

Blanche "does not dispute the importance of transparency or the public's interest in uncovering the truth," but nevertheless argues that Phang's injuries are not "certain or imminent *with respect to her*," and are speculative. Blanche Br. 17 (emphasis in original).

Phang's injuries are more than "speculative"—they are already occurring, and to her specifically. As a journalist, Phang is not just entitled to information under the Act (see Phang Br. 19–21), but timely information. The public's interest in the Epstein scandal is currently high, but it is not unending. If the government takes months or years to comply with the Act, it will diminish the reporting value of the information, as well as the revenue that Phang will be able to generate from it as a working journalist. Court recognize that "stale information is of little value" *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), and "the harm in delaying disclosure is not necessarily redressed even if the information is provided at some later date." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 319 (D.D.C.); *see also Byrd v. EPA*, 174 F.3d 239, 244 (D.C. Cir. 1999) ("Byrd's injury, however, resulted from EPA's failure to furnish him with the documents until long after they would have been of any use to him.").

Courts frequently recognize that an injury may be irreparable when information is not produced in a timely manner. *See, e.g.*, *EPIC v. DOJ*, 416 F.Supp.2d 30, 41 (D.D.C. 2006) ("EPIC will also be precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Washington Post v. DHS*, 459 F.Supp.2d 61, 75 (D.D.C. 2006)

("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."). The same is true here. If Blanche is allowed to circumvent the law until public interest fades, the harm to Phang, not to mention to the cause of transparent and responsive government generally, will be irreparable. Congress agreed—that is why it gave Blanche a deadline to comply with the Act that passed six months ago and counting.

Blanche similarly misunderstands the law on economic injuries, which he argues categorically cannot be irreparable. Blanche Br. 18–19. Not so. As Blanche himself argues elsewhere, the APA, under which this case is brought, gives Phang no path to recover damages. *See* 5 U.S.C. § 702 (providing for "[a]n action in a court of the United States seeking relief other than money damages"). In such circumstances, courts recognize that economic harms can be stopped by a preliminary injunction, because they cannot otherwise be remediated. *See, e.g.*, *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) ("[B]ecause [plaintiff] will not be able to seek damages under the APA for any possibly unlawful agency action once the fund has fully expired, the Court concludes that [plaintiff] is likely to suffer irreparable economic harm absent a temporary restraining order." (internal citations omitted)); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (internal quotations omitted)); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("But where parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases—economic harm can be considered

16

irreparable."); *Kentucky v. Biden*, 23 F.4th 585, 611 (6th Cir. 2022) (finding economic damages irreparable because "the APA does not waive federal sovereign immunity from money-damages claims"). Absent an injunction, Phang stands to lose money by the government's undisputed violation of the law, money which she can never recover through litigation. For this reason, the economic harms she faces are just as irreparable as the informational harms.

Finally, Blanche argues that Plaintiff unnecessarily delayed filing a motion for preliminary injunction, which he says negates any claimed irreparable harm. Blanche Br. 19–20. The only pertinent delay here was the government's. Blanche announced DOJ's purported compliance with the Epstein Act nearly two months late, on February 2, 2026. Given the scope of the production, it then took weeks for journalists, including Phang, to discover and meticulously confirm that there were large gaps in DOJ's productions. Blanche's failure to produce the required redaction log—something he *still* has not done—made the task even hard. Phang promptly filed this lawsuit after discovering and confirming the scope of Blanche's noncompliance, but she delayed motion practice in the hope that DOJ would quickly cure its most blatant errors (or at least negotiate over them). But a month into the case, the government had not even entered a notice of appearance, let alone addressed its lawbreaking. At that juncture, Phang had to file this motion to protect herself from compounding irreparable harms described above. None of Phang's conduct constitutes "delay."[2]

---

[2] Even if Phang had delayed filing her motion for preliminary injunction, "a delay in filing is not a proper basis for denial of a preliminary injunction." *Gordon v. Holder*, 632 F.3d 722, 724–25 (D.C. Cir. 2011). Rather, "delay is but one factor in the irreparable harm analysis," *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009), and "[t]he factor of delay is only significant if the harm has occurred and the parties cannot be returned to the status quo." *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 963 (9th Cir. 2010). Delays in filing are just one of many factors in considering a preliminary injunction. *See, e.g.*, *McDermott ex rel. NLRB v. Ampersand Pub.*, LLC, 593 F.3d 950, 965 (9th Cir.2010) ("Delay by itself is not a determinative factor in whether the grant of interim relief is just and proper." (cleaned up)); *Fund for Animals v.*

17

Any alleged delay is no reason to deny a preliminary injunction here. Phang has already demonstrated the irreparable harm she faces, and how that harm grows with the passage of time. Most importantly, she has shown—and the government does not even deny—that Blanche has broken the law. Facing overwhelming evidence of harm, and undisputed evidence of lawbreaking, a preliminary injunction is warranted to deter the government's continued noncompliance.

## III. Phang has established that the balance of equities and public interest favor preliminary relief.

Though Blanche does not contest that he is violating the law, he nevertheless argues that the balance of equities and public interest turn in his favor. Blanche Br. 19–20. This is false. "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (internal quotations omitted). *See also Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015) ("Forcing federal agencies to comply with the law is undoubtedly in the public interest."). Beyond the general public interest in having the government comply with the law, there is a specific public interest—one that Blanche concedes (Blanche Br. 20)—in government transparency. *See Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 92 (D.D.C. 2007) ("[t]he public interest is, no doubt, served by a transparent government."). There is then a particular public interest in having the government follow its own transparency laws.

Blanche's argument on the public interest echoes those of his earlier assertion that Phang seeks a "mandatory" injunction requiring a higher degree of scrutiny than an ordinary injunction. Blanche Br. 6. "But the D.C. Circuit has long rejected any distinction between a mandatory and

---

*Frizzell*, 530 F.2d 982, 987 (D.C.Cir.1975) (finding a delay merely "bolstered" a conclusion to deny a motion for preliminary injunction).

prohibitory injunction." *League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (internal quotations omitted); *see also United States v. W. Elec. Co.*, 46 F.3d 1198, 1206 (D.C. Cir. 1995) (Courts in this district typically decline to distinguish "mandatory" and "prohibitory" injunctions as "[t]he 'mandatory' injunction has not yet been devised that could not be stated in 'prohibitory' terms."). As such, plaintiffs "do not face a higher burden of persuasion given the form of relief they seek." *Mathis v. United States Parole Comm'n*, 749 F. Supp. 3d 8, 26 (D.D.C. 2024) (internal quotations omitted).

Finally, Blanche briefly raises the prospect that Phang impermissibly "seeks to shortcut to the merits" of her case by bringing this preliminary injunction. Blanche Br. 1. To be clear, Phang seeks a fraction of the information to which she is entitled. Ultimately, as explained in her complaint, she seeks the appointment of a special master to oversee Defendant's compliance with the law. For now, she simply seeks the production of documents that obviously must be reviewed and produced but which the government has not reviewed or adequately produced. As those documents will answer some of the most pressing questions her readers and viewers face, Phang will suffer the irreparable harms set out above absent their swift production.

## IV.    Blanche has not justified imposing more than a nominal a surety bond.

Blanche has requested an extraordinary surety bond to which he is not entitled. Blanche Br. 21–22. Rule 65(c) vests "broad discretion in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). "[F]ederal courts typically require substantial bonds only in suits between private parties with significant monetary interests at stake." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 224 (D.D.C. 2025) (citing 11A C. Wright & A. Miller, *Federal Practice and Procedure* § 2954 nn.15–20 (3d ed. 2025) (collecting cases)). In cases enjoining agencies or officers of the federal government, courts in this District have historically waived the

19

bond requirement where there is no showing that the absence of a bond would prejudice the government. *See, e.g.*, *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 224 (D.D.C. 2025) (collecting cases); *N. Am.'s Bldg. Trades Unions v. DOD*, 783 F. Supp. 3d 290, 315 (D.D.C. 2025); *Nat'l Endowment for Democracy v. United States*, 795 F. Supp. 3d 63, 73 (D.D.C. 2025).

The D.C. Circuit recently broke with these cases by proclaiming that an "injunction bond" is "generally required" under Rule 65(c). *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (*per curiam*) (although Blanche notably does not cite that decision). Since that decision, rather than waiving the bond requirement altogether, judges in this district have typically required public-law plaintiffs to post only nominal bonds. *See Accountability NOW USA v. Griess*, No. 26-cv-1385 (RDM), 2026 WL 1533402, at *10 (D.D.C. June 1, 2026) (imposing $1.00 bond); *Beatty v. Trump*, No. 25-cv-4480 (CRC), 2026 WL 1505646, at *44 (D.D.C. May 29, 2026) (imposing $1.00 bond); *Se. Fisheries Ass'n, Inc., v. Lutnik*, No. 26-cv-1533, at *13 (RC), 2026 WL 1430499 (D.D.C. May 21, 2026) (imposing $100 bond). This Court should do the same, and require only a nominal bond of $1.00.

Further, Phang is a journalist seeking to obtain documents so that she can report about a matter of great public concern, and she would face substantial prejudice if the Court were to impose more than a nominal bond. Because "imposing a bond could unduly burden Plaintiffs and potentially impair their ability to seek judicial relief," courts are clear that "[w]here the risk of financial harm [to the government] is speculative at best and where a bond would have a chilling effect on access to justice, the balance of equities firmly supports" imposing a nominal bond. *N. Am.'s Bldg. Trades Unions*, 783 F. Supp. 3d at 315; *see also League of United Latin Am. Citizens*, 780 F. Supp. 3d at 225 (requiring a substantial bond "as a condition of obtaining an

injunction against unlawful executive action under the circumstances presented here would risk deterring other litigants from pursuing their right to judicial review of unlawful executive action" and "contravene the interests of justice."); *Se. Fisheries Ass'n, Inc.*, 2026 WL 1430499, at *13 ("imposing a significant bond . . . would unduly burden Plaintiffs, impair their ability to seek judicial relief, and chill access to justice.").

## V.  There is no basis for a stay.

Finally, Blanche asks for a sixty-day stay of any relief the Court issues "so that the Solicitor General has time to consider whether further appellate review is warranted." Blanche Br. 21–22. As an initial matter, the request for a stay pending appeal "is premature because at the time it was made, the Court had not yet ruled on Plaintiffs' motions." *CREW*, 791 F. Supp. 3d at 59–60. Even were it not premature, the Court should deny the request. Blanche fails to make any showing that the government is entitled to "the extraordinary relief of a stay pending appeal." *See CREW v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018). Here, Phang is likely to succeed on the merits (as Blanche has essentially conceded), and Blanche has not even attempted to show that the government would be irreparably harmed by the preliminary relief sought. *See Nken v. Holder*, 556 U.S. 418, 433–434 (2009) (likelihood of success and irreparable harm are the two "most critical" prongs of the test for a stay).

That is because the government will not be irreparably harmed by being compelled to follow the law. In order to eliminate any risk that the injunction will cause further releases of victim information, Phang has structured her request for relief such that Blanche will not be required to immediately produce new documents; rather, he must show cause if he declines to do so. As to the two requests for immediate action—review of foreign language documents and publication of the redaction log—Blanche has already granted *himself* a stay of more than six months. Both duties should have been satisfied by December 19, 2025. A further extension is entirely unwarranted.

21

The court should likewise deny Blanche's alternative request for a seven-day administrative stay. Blanche Br. 21–22. This is not a case where the Court needs to issue a brief "administrative stay" to "buy the court time to deliberate when issues are not easy to evaluate in haste." *Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13, 16–17 (D.D.C. 2025) (citation omitted). Here, Phang is clearly entitled to a preliminary injunction, and she suffers ongoing and substantial harms each day that Blanche continues to shirk his responsibilities under the Epstein Transparency Act. Blanche should not be allowed to continue inflicting those harms; he should be made to follow the law.

## CONCLUSION

For the reasons above, the Court should grant the motion for a preliminary injunction.

Dated: June 8, 2026        Respectfully submitted,

<u>/s/ Brendan Ballou</u>

**PUBLIC INTEGRITY PROJECT**
Brendan Ballou
D.C. Bar No. 241592
Samuel T. Ward-Packard
D.C. Bar No. 90005484
ballou@publicintegrityproject.org
sam@publicintegrityproject.org
(917) 684-3900 (BB)
(262) 949-0973 (SWP)

*Attorneys for Plaintiff Katie Phang*

22

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be served on the Defendant in accordance with

Federal Rule of Civil Procedure 5.

/s/ Brendan Ballou
Brendan Ballou