**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KATIE PHANG,<br><br>        Plaintiff,<br><br>        v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,<br><br>        Defendant. | Civil Action No. 26-1417 (EGS) |

**MEMORANDUM OPINION**

Responding to public demands for information, Congress with near unanimity passed the Epstein Files Transparency Act (the "Epstein Act"), Pub. L. No. 119-38 on November 18 and 19, 2025, which President Trump signed into law on November 19, 2025. The Epstein Act is an unprecedented disclosure law requiring the Attorney General, with few exceptions, to make publicly available in a searchable and downloadable database all unclassified Department of Justice ("Department") files related to its investigation of the notorious sexual predator and child sex trafficker Jeffrey Epstein, the child sex trafficker Ghislaine Maxwell, and their associates. The Epstein Act required extremely timely compliance: the Attorney General was required to make the information publicly available by December

1

19, 2025. The Attorney General made productions on December 19, 20, 22, and 23, 2025, and January 30, 2026. Following the production of approximately 3.5 million pages of documents, the Attorney General announced that the Department had complied with its production obligations under the Epstein Act on January 30, 2026.

Katie Phang ("Ms. Phang") brings this action against Todd Blanche in his official capacity as Acting Attorney General of the United States (the "Attorney General"), claiming that he has improperly withheld information and failed to comply with other requirements in violation of the Epstein Act. Pending before the Court is Ms. Phang's Motion for Preliminary Injunction in which she seeks relief for a limited list of violations of the Epstein Act. *See* Application for Prelim. Inj., ECF No. 9; and Mem. of Points and Auths. in Support of Application for a Prelim. Inj. (collectively "Mot."), ECF No. 9-1. Upon careful consideration of Ms. Phang's motion, the Attorney General's opposition, the reply, the applicable law; and for the reasons discussed below, the Court **GRANTS** Ms. Phang's motion.

## I.   Background

### A.   Statutory and Factual Background

#### 1.   The Epstein Act

The Epstein Act was passed with near unanimity by the House of Representatives on November 18, 2025; by unanimous consent in

the Senate on November 19, 2025; and signed into law by President Trump on the same day. *See* Clerk, United States House of Representatives, *Roll Call 289 | Bill Number: H.R. 4405*, https://clerk.house.gov/Votes/2025289 (last accessed June 22, 2026) (reporting that the roll call vote in the House of Representatives was 427 ayes, 1 no, and 5 not voting); 171 119 Cong. Rec. S8211 (daily ed. Nov. 19, 2025) (reporting passage in the Senate by unanimous consent). It requires the release of documents relating to Mr. Epstein, subject to five permitted grounds for withholding, requires any redactions to be accompanied by a written justification published in the Federal Register, and a report to Congress upon the completion of the release of records.

Section 2(a) of the Act requires the Attorney General, within 30 days after enactment, and subject to the prohibited and permitted grounds for withholding, to "make publicly available in a searchable and downloadable format all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices, that relate to[:]"

> (1) Jeffrey Epstein including all investigations, prosecutions, or custodial matters.

> (2) Ghislaine Maxwell.

3

(3)   Flight logs or travel records, including but not limited to manifests, itineraries, pilot records, and customs or immigration documentation, for any aircraft, vessel, or vehicle owned, operated, or used by Jeffrey Epstein or any related entity.

(4)   Individuals, including government officials, named or referenced in connection with Epstein's criminal activities, civil settlements, immunity or plea agreements, or investigatory proceedings.

(5)   Entities (corporate, nonprofit, academic, or governmental) with known or alleged ties to Epstein's trafficking or financial networks.

(6)   Any immunity deals, non-prosecution agreements, plea bargains, or sealed settlements involving Epstein or his associates.

(7)   Internal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates.

(8)   All communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files.

(9)   Documentation of Epstein's detention or death, including incident reports, witness interviews, medical examiner files, autopsy reports, and written records detailing the circumstances and cause of death.

Epstein Act § 2(a)(1)-(9).

Section 2(b), entitled "Prohibited Grounds for Withholding" provides that "[n]o record shall be withheld, delayed or redacted on the basis of embarrassment, reputational harm, or political sensitivity, including to any government official, public figure, or foreign dignitary." Epstein Act § 2(a)(1)-(9).

Section 2(c), entitled "Permitted Withholdings" identifies five categories of records for which the Attorney General "may withhold or redact the segregable portions," and requires all redactions to "be accompanied by a written justification published in the Federal Register and submitted to Congress." Epstein Act § 2(c)(1), (2). The five categories of permitted withholdings are records that:

> (A) contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> (B) depict or contain child sexual abuse materials (CSAM) as defined under 18 U.S.C. 2256 and prohibited under 18 U.S.C. 2252-2252A;
>
> (C) would jeopardize an active federal investigation or ongoing prosecution, provided that such withholding is narrowly tailored and temporary;
>
> (D) depict or contain images of death, physical abuse, or injury of any person; or

5

> > (E) contain information specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.

Epstein Act § 2(c)(1)(A)-(E).

Section 2(c) also addresses classified information and requires the Attorney General to declassify such information "to the maximum extent possible." Epstein Act § 2(c)(3). For information that cannot be declassified, the Attorney General is required to "release an unclassified summary for each of the redacted or withheld classified information." Epstein Act § 2(c)(3)(A). Decisions to classify information covered by the Epstein Act after July 1, 2025 "shall be published in the Federal Register and submitted to Congress, including the date of classification, the identity of the classifying authority, and an unclassified summary of the justification." Epstein Act § 2(c)(4).

Section 3, entitled "Report to Congress," provides that within fifteen days of the public release of the materials required by the Act, "the Attorney General shall submit to the House and Senate Committees on the Judiciary a report listing:"

> > (1) All categories of records released and withheld.

> > (2) A summary of redactions made, including legal basis.

> (3)   A list of all government officials and politically exposed persons named or referenced in the released materials, with no redactions permitted under subsection (b)(1).

Epstein Act § 3.

### 2. The Attorney General's Efforts to Comply with the Epstein Act

The Epstein Act required the government to comply with its requirements by December 19, 2025. *See* Epstein Act § 2(a). On that date, the Attorney General issued a letter to Congress stating that the Department was "producing hundreds of thousands of pages of responsive materials in compliance with the [Epstein Act]." Letter from Todd Blanche, Deputy U.S. Att'y Gen., to Members of Congress at 1 (Dec. 19, 2025), Exhibit D to Ward-Packard Decl., ECF No. 9-3.[1] The letter stated that "the Department is continuing to review additional documents and other items for potential responsiveness," noting that responsive documents are being provided to the Department by the Department's components on an ongoing basis. *Id*. The letter

---

[1] Except for citations to the Attorney General's letters of December 19, 2025; January 30, 2026; February 2, 2026; and February 14, 2026; and the Department's letters of April 23, 2026, and May 8, 2026; where the citation to the original page number of the respective letter is provided, the Court cites to the ECF header page number of electronic filings throughout this Memorandum Opinion, not the original page number of the filed document.

stated that in addition to withholdings and redactions permitted under section 2(c) of the Epstein Act, the Department "withheld and redacted a limited amount of information otherwise covered by various privileges, including deliberative-process privilege, work-product privilege, and attorney-client privilege." *Id.* at 2. The letter stated that "[a] privilege log will be produced in due course," and that "the Department will provide an explanation for any redacted and withheld materials as part of this production" as required by section 2(c)(2) of the Epstein Act. *Id.* at 3, 4. The letter acknowledged that the Department did not publicly produce all responsive material by the deadline, stating that "the volume of materials to be reviewed— many of which continue to be produced to [the Justice Management Division]—means that the Department must publicly produce responsive documents on a rolling basis." *Id.* at 5.

The Attorney General made further productions on December 20, 22, and 23, 2025, and on January 30, 2026. Mot., ECF No. 9-1 at 14. No production was accompanied by a privilege log. *Id.*

On January 30, 2026, the Attorney General issued a second letter, stating that that day's production "mark[ed] the Department's compliance with its production obligations under the [Epstein] Act." Letter from Todd Blanche, Deputy U.S. Att'y Gen., Re: Epstein Files Transparency Act – Production of Department Materials at 1 (Jan. 30, 2026), Exhibit E to Ward-

Packard Decl., ECF No. 9-3 ("January 30, 2026 Letter"). The letter stated that "approximately 200,000 pages have been redacted or withheld based on various privileges" and that a "formal report with a summary of redactions made and list of all government officials and politically exposed persons named or referenced in the released materials will be submitted to the House and Senate Committees on the Judiciary within 15 days of today's release." *Id*. at 4. The letter stated that foreign language materials had not been reviewed or produced "[b]ecause it was not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document." *Id.* at 5. The letter also stated that some documents were not produced because of technical issues with the files. *Id*. The letter concluded that "[a]fter submitting the formal report to Congress required under the [Epstein] Act and publishing the written justifications in the Federal Register, the Department's obligations under the [Epstein] Act will be completed." *Id*. at 6.

On February 2, 2026, the Attorney General acknowledged that "several thousands of documents and media that may [sic] have inadvertently included victim-identifying information" were disclosed in the January 30, 2026 production and were therefore subsequently removed. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to the Hon. Richard M. Berman & the Hon. Paul A.

Engelmayer, *United States v. Maxwell*, ECF No. 848, 1:20-cr-00330-PAE (S.D.N.Y. Feb. 2, 2026). Attorneys representing Mr. Epstein's victims informed the *Maxwell* court that the Attorney General's disclosure of victim-identifying information began with the December 20, 2025 production, that the impact to Mr. Epstein's victims from the disclosure had "escalated from concern to suffering and fear for personal safety," and that the harm was "irreversible." *United States v. Maxwell*, 20 Cr. 330, 2026 WL 279487, at *4, *5 (S.D.N.Y. Feb. 3, 2026). On April 23, 2026, the Department's Inspector General announced that it had initiated an audit of the Attorney General's compliance with the Epstein Act. U.S. DEPARTMENT OF JUSTICE, *DOJ OIG Announces Initiation of Audit* (April 23, 2026), https://oig.justice.gov/news/doj-oig-announces-initiation-audit.[2]

On February 14, 2026, the Attorney General issued the report required in section 3 of the Epstein Act in the form of a letter to the Chairmen and Ranking Members of the Senate Judiciary Committee and House Judiciary Committee. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to Chairman Chuck Grassley, Ranking Member Dick Durbin, Chairman Jim Jordan, Ranking Member Jamie Raskin (Feb. 14, 2026), Exhibit F to Ward-

---

[2] The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

Packard Decl., ECF No. 9-3. With regard to withheld records, the letter stated that "[t]he only category of records withheld were those records where permitted withholdings under section 2(c) and privileged materials were not segregable from material responsive under section 2(a)," and that "the privileges that applied to the withheld records were deliberative-process privilege, work-product privilege, and attorney-client privilege." *Id*. at 2. The letter stated that "[no] records were withheld or redacted 'on the basis of embarrassment, reputational harm, or political sensitivity, including to any government official, public figure, or foreign dignitary'" pursuant to section 2(b)(l) of the Epstein Act. *Id*.

The letter included a four-paragraph "Summary of Redactions Made and Legal Basis." *Id*. at 2-3. The first category in the summary was the withholdings permitted under section 2(c) of the Epstein Act. *Id*. at 2. For the second category, the letter stated that "[a]lthough permitted by [section 2(c)(1)(E) of] the [Epstein] Act, no materials were redacted or withheld on th[e] basis that a record 'contain[ed] information specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.'" *Id*. at 3. The third category were redactions based on "various privileges, including deliberative-process

11

privilege, work-product privilege, and attorney-client privilege." *Id*. The letter cited Supreme Court precedent for these withholdings. *Id*.

The letter concluded with a "List of All Government Officials and Politically Exposed Persons" named or referenced in the released materials. *Id.* at 3-6.

### 3.    Plaintiff Katie Phang

Plaintiff Katie Phang is an "attorney and independent journalist based in Miami, Florida." Mot., ECF No. 9-1 at 15; *see also* Phang Decl., ECF No. 9-2 ¶ 2. She has worked as a legal analyst for a variety of media outlets, including hosting "The Katie Phang Show" on MSNOW (then MSNBC). Phang Decl., ECF No. 9-2 ¶¶ 5, 6. Since April 2025, she has reported on "major domestic and international events, with a focus on legal and political news" on her YouTube channel and other platforms. *Id.* ¶ 7. She has "extensively covered the crimes of Jeffrey Epstein, Ghislaine Maxwell, and others in the 'Epstein elite,'" including publishing seventy-two videos about the subject in the last year. *Id.* ¶¶ 8, 9. Her reporting on the Epstein files has "realized more than 9.7 million views on [her] YouTube channel." *Id.* ¶ 10.

To conduct her reporting, Ms. Phang has "personally reviewed many of the documents produced . . . pursuant to the [Epstein Act]," and she has "relied and continue[s] to rely on

materials disclosed under the [Epstein] Act to develop [her] reporting and to prepare and execute [her] reporting." *Id.* ¶ 12. Ms. Phang argues that "[the Attorney General's] violations of the [Epstein] Act have interfered with [her] ability to perform [her] job as an investigative journalist." *Id.* ¶ 13. Specifically, the relief she seeks in her motion are "particularly time-sensitive[] because they are preventing [her] from moving forward with reporting [she] would otherwise conduct over the coming weeks and months." *Id.* ¶ 14.

Ms. Phang seeks the information that she claims has been illegally withheld "because, as a journalist covering the Epstein story, [she owes her] audience, the public, and the victims of Epstein, Maxwell, and others the most accurate and comprehensive reporting possible." *Id.* ¶¶ 32, 33. "[The Attorney General's] illegal conduct has injured and continues to injure [her] by preventing [her] from conducting the comprehensive reporting [she] would otherwise conduct" about the specific information she seeks to obtain through her motion. *Id.* ¶ 34. Additionally, she states that "[the Attorney General's] illegal conduct has [] caused and continues to cause [her] to suffer direct financial losses," by "constraining [her] ability to report" on the Epstein files. *Id.* ¶¶ 35, 42.

### B.    Procedural Background

Ms. Phang filed the Complaint on April 27, 2026, alleging four claims: (1) Violation of the Administrative Procedure Act - Contrary to Law and in Excess of Statutory Authority; (2) Violation of the Administrative Procedure Act - Arbitrary, Capricious, and an Abuse of Agency Discretion; (3) Ultra Vires Agency Action;[3] and (4) Declaratory Judgment Act. *See* Compl., ECF No. 1 at 12-14. She asks the Court to provide the following relief: (1) declare that the Attorney General has failed to comply with the Act; (2) enjoin the Attorney General's ongoing violations of the Epstein Act and require him to: (a) remove all unlawful redactions, (b) explain the bases for any remaining lawful redactions, (c) re-produce all materials that were produced but unlawfully redacted, and (d) produce all materials that have not been produced but should be; (3) appoint a special master to oversee the Attorney General's compliance with the law; (4) award attorneys' fees and costs; and (5) grant any other relief the Court deems just and proper. *Id.* at 14-15.

On May 28, 2026, Ms. Phang filed a motion for preliminary injunction, seeking relief for a specific list of violations of

---

[3]    The Court does not address Ms. Phang's likelihood of success on her *ultra vires* claim in this Memorandum Opinion because she does not invoke *ultra vires* in the pending motion.

the Epstein Act and requesting that the Court enter an order requiring the Attorney General to:

(1)     show cause why the redactions of sender and recipient names in the emails bearing Bates numbers EFTA00749245, EFTA01187999, EFTA01930501, ETFA01928255, EFTA00628112, EFTA02648868, EFTA02504630, and EFTA01022356 should not be removed;

(2)     show cause why the redactions of potential co-conspirator names in the DOJ documents bearing Bates numbers EFTA01703108 and EFTA00038227 should not be removed;

(3)     show cause why the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495 should not be produced (with appropriate redactions to protect victims' information);

(4)     immediately initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act; and

(5)     immediately publish in the Federal Register the redaction log required under Epstein Files Transparency Act § 2(C)(2), and update it concurrently with each future release of redacted materials.

Mot., ECF No. 9-1 at 35-36. The Attorney General filed his opposition to the motion on June 5, 2026, *see* Opp'n, ECF No. 12; and Ms. Phang filed her reply on June 8, 2026. *See* Reply, ECF No. 13. The motion is ripe and ready for the Court's adjudication.

15

## II.    Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right," and only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council Inc.*, 555 U.S. 7, 22, 24 (2008). The moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "[T]he first and most important factor" is likelihood of success on the merits. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). In the wake of the Supreme Court's decision in *Winter,* 555 U.S. at 7; "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley v. Sebelius,* 644

16

F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, freestanding requirement for a preliminary injunction." (quotation marks omitted)). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014); *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) ("In the past, we have . . . reserved the question whether the sliding-scale approach remains valid. We follow the same approach here because, even under the sliding-scale approach, the movant must raise at least a serious legal question on the merits." (internal quotations and citations omitted)); *cf. Hanson v. District of Columbia*, 120 F.4th 223, 243 (D.C. Cir. 2024) (citations omitted).

For the reasons explained below, all factors weigh in Ms. Phang's favor.

### III. Analysis

#### A.   The Court Likely Has Jurisdiction Over Ms. Phang's Claims

The Attorney General argues that the Court lacks jurisdiction over Ms. Phang's claims because: (1) the Epstein Act does not provide for a private right of action; (2) Ms.

17

Phang lacks Article III standing; and (3) the Administrative Procedure Act's ("APA")[4] waiver of sovereign immunity does not apply here because Ms. Phang has an adequate remedy under the Freedom of Information Act ("FOIA")[5]. Opp'n, ECF No. 12 at 15. For the reasons explained below, each of the Attorney General's arguments is without merit.

### 1.    The APA Provides Ms. Phang With a Right of Action

The Attorney General argues that "[b]y its own terms, nowhere does [the Epstein Act] expressly authorize private individuals to sue for alleged violations, nor does the statutory scheme indicate that Congress intended to create an implied right of action," and therefore "any claim premised on an alleged violation of the Epstein Act fails as a matter of law." Opp'n, ECF No. 12 at 16–17.

However, Ms. Phang sues under the APA, not under the Epstein Act. "The APA, by its terms, provides a right to judicial review of all final agency action for which there is no other adequate remedy in a court, § 704, and applies universally except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law, § 701(a)." *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (citation

---

[4] 5 U.S.C. § 706(2).
[5] 5 U.S.C. § 552.

modified). The Attorney General has conceded that the production of documents was final agency action. Opp'n, ECF No. 12 at 23.

Ms. Phang alleges that the Attorney General's violations of the Act are "not in accordance with law" pursuant to 5 U.S.C. § 706(2)(A) because they are contrary to the requirements of the Epstein Act. Compl., ECF No. 1 ¶¶ 48-51. Ms. Phang also alleges that the Attorney General's violations of the Act are arbitrary and capricious under 5 U.S.C. § 706(2)(A) because the Attorney General's production of materials "lacks a lawful basis and because [the Attorney General] has not articulated an adequate, reasoned, or lawful basis for redacting documents in whole or in part, retracting documents, and failing to produce others." *Id*. ¶¶ 52-55. For all these reasons, the Court rejects the Attorney General's argument that Ms. Phang's claims fail because the Epstein Act does not provide a private right of action. Ms. Phang has a right of action under the APA.

### 2.   Ms. Phang Likely Has Article III Standing

#### a.      Legal Standard

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. CONST. art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997));

*see Lujan v. Nat'l Wildlife Fed'n*, 504 U.S. 555, 560 (1990)

(calling standing "the irreducible constitutional minimum"); *see*

*also Jibril v. Mayorkas*, No. 19-cv-2457, 2023 WL 2240271, at *4

(D.D.C. Feb. 27, 2023) ("One way a court might lack subject-

matter jurisdiction is if a plaintiff lacks Article III

standing." (citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.

Cir. 1987))).

To establish standing, "a plaintiff must show (1) an

'injury in fact,' (2) a sufficient 'causal connection between

the injury and the conduct complained of,' and (3) a

'likel[ihood]' that the injury 'will be redressed by a favorable

decision.'" *Susan B. Anthony List*, 573 U.S. at 157-58

(alteration in original) (quoting *Lujan*, 504 U.S. at 560-61).

"The party invoking federal jurisdiction bears the burden of

establishing these elements." *Lujan*, 504 U.S. at 561 (citing

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

"Since they are not mere pleading requirements but rather an

indispensable part of the plaintiff's case, each element must be

supported in the same way as any other matter on which the

plaintiff bears the burden of proof, *i.e.,* with the manner and

degree of evidence required at the successive stages of the

litigation." *Id.*

Courts have recognized that plaintiffs can establish standing based on an informational injury. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011). And an "actual economic loss" is "a classic form of concrete and particularized harm" that suffices by itself to ground Article III standing. *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 9 (D.C. Cir. 2015).

### b.   Analysis

Ms. Phang argues that she has two redressable injuries: first, she has suffered cognizable informational injuries, *see* Mot., ECF No. 9-1 at 18–21; and second, she has suffered cognizable economic injuries. *Id.* at 21. The Attorney General responds that Ms. Phang is not suffering a cognizable informational injury, and that her economic injury is not redressable. *See* Opp'n, ECF No. 12 at 18–19. For the reasons explained below, the Court concludes that Ms. Phang likely suffers from informational injuries and her economic injury Likely is redressable.

### i.   Ms. Phang Likely Has Suffered a Cognizable Informational Injury

It is well-settled that "a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the

information would help them." *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 783 (D.C. Cir. 2022). To demonstrate that they have an actionable informational injury, a plaintiff must show that: "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (citing *FEC v. Akins*, 524 U.S. 11, 21-22 (1998)).

"[T]he fact that a number of people could be similarly injured does not render the claim an impermissible generalized grievance[.]" *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). And "[t]he fact that other citizens or groups of citizens" are also deprived of the information a plaintiff seeks "does not lessen [a plaintiff's] asserted injury, any more than the fact that numerous citizens might request the same information under the [FOIA] entails that those who have been denied access do not possess a sufficient basis to sue." *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449-50 (1989). Even if the statute "entitles the public generally to the disclosure of" the information, "that does not mean that the informational injury . . . is not particular to Plaintiff." *Elec. Priv. Info. Ctr. v.*

22

*Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

Ms. Phang argues that she satisfies the first part of the test because she "reads the statute to require a host of disclosures that have not occurred" and because disclosure is owed to the "public at large." Mot., ECF No. 9-1 at 19 (quoting *Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. & Budget*, 791 F. Supp. 3d 29, 46 (D.D.C. 2025)). The Attorney General disagrees, arguing that: (1) Ms. Phang does not "allege any harm or individualized interests separate from 'the interests of the public at large,'" Opp'n, ECF No. 12 at 17 (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 600 (2007)); (2) she does not have a "personal 'statutory right to seek the information' at issue," *id*. at 18 (quoting *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023)); and (3) because the statute is directed at the government, she has no legally protected interest to assert. *Id*. (citing *Ctr. for Biological Diversity,* 77. F.4th at 686).

The Attorney General's arguments are unpersuasive. As to his first argument, his reliance on *Hein* is inapposite since it is not an informational injury case.

As to his second and third arguments, *Center for Biological Diversity* supports Ms. Phang's argument rather than his. There, plaintiffs sued the U.S. International Development Finance

Corporation ("DFC") under the APA and the Sunshine Act, a statute directed at the government, after the DFC published a rule exempting itself from the Sunshine Act. "Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view." *Common Cause v. Nuclear Reg. Comm'n,* 674 F.2d 921, 928 (D.C. Cir. 1982). It requires, among other things, a public announcement of meetings and logistical information about them, and the right to a transcript, recording, or minutes of any closed portion of a meeting. *Cnt. for Biological Diversity,* 77 F.4th at 686. The court held that Center for Biological Diversity ("CBD") had informational standing with regard to the first part of the test, because "[o]n its interpretation of the Sunshine Act, CBD claims that it was denied notice about certain meetings, preventing it from attending and engaging with DFC." *Id.* The court explained that "[g]iven Congress's clear command for any agency subject to the Sunshine Act to provide robust public information, there can be no doubt that these provisions create a right to information sufficient for [the plaintiff's] injury." *Id*. As this Court has explained, "[e]ven if the statute 'entitles the public generally to the disclosure of' the information [from the government], 'that does not mean that the informational injury ... is not particular to Plaintiff.'" *Citizens for Resp. & Ethics in Wash.,* 791 F. Supp. 3d at 46 (citing *Elec. Priv. Info. Ctr.*, 266 F.

24

Supp. 3d at 311). The Epstein Act requires "robust" disclosure of information by the government to the public.

The Court concludes that Ms. Phang satisfies the first part of the test: on her interpretation of the Epstein Act, it requires the information to be disclosed to her as part of the public at large, and the Attorney General's alleged failure to comply with the law deprives her of this information. *See e.g., Akins*, 524 U.S. at 20–25 (emphasizing that an "inability to obtain information" that Congress required to make public constitutes an injury in fact for Article III).

Ms. Phang argues that she satisfies the second part of the test because she is suffering the type of harm that Congress sought to prevent in enacting the Act. Ms. Phang argues first that "Congress enacted the Act to provide 'complete truth' for survivors;" Mot., ECF No. 9-1 at 19 (quoting 171 Cong. Rec. H4726 (daily ed. Nov. 18, 2025) (statement of Rep. Raskin)); and to "achieve 'maximum possible level of transparency when it comes to the heinous crimes of Jeffrey Epstein.'" *Id.* (quoting 171 Cong. Rec. H4727 (daily ed. Nov. 18, 2025) (statement of Rep. Kiley)); *see also id.* at 19 n.7 (listing more statements from congressional representatives noting the purpose of the Act is transparency for the American public). Ms. Phang then argues that to realize these goals, journalists "through their

25

reporting are able to mediate the contents of the Epstein Files for the general public." *Id.* at 20.

The Attorney General disagrees, arguing that Ms. Phang cannot demonstrate "downstream harm—some concrete consequences of not receiving the information," but that "[a]t best, [Ms. Phang] asserts generalized grievances of seeking 'complete truth' and 'transparency.'" Opp'n, ECF No. 12 at 18-19.

The Attorney General's arguments are unpersuasive. First, Ms. Phang *has* identified "some concrete consequences of not receiving the information." *Id.* at 18. She has identified "half a dozen stories she is currently unable to report" because the Attorney General has not disclosed the information. *See* Reply, ECF No. 13 at 8-9 (citing Phang Decl., ECF No. 9-2 ¶¶ 14-31). She has identified harms to victims and the public who are being denied the benefit of her reporting. Mot., ECF No. 9-1 at 20. She also cited authority that supports her assertion that journalists, and herself in particular, have suffered the type of harm that the Epstein Act was meant to prevent. *See* Mot., ECF No. 9-1 at 20-21 (citing *Seife v. U.S. Dep't of Health & Human Servs.*, 440 F. Supp. 254 (S.D.N.Y. 2020) and *Pub. Citizen v. Carlin*, 2 F. Supp. 2d 1 (D.D.C. 1997), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999)). The Attorney General does not address this authority. *See generally* Opp'n, ECF No. 12 at 18. Second, "the fact that a number of people could be similarly

26

injured does not render the claim an impermissible generalized grievance: 'where a harm is concrete, though widely shared, the Court has found injury in fact.'" *Pub. Citizen, Inc.*, 489 F.3d at 1292 (quoting *Akins*, 524 U.S. at 24).

The Court concludes that Ms. Phang satisfies the second part of the test: she is suffering the type of harm—lack of transparency—that Congress sought to prevent by requiring disclosure of the information and the disclosure of the information that Ms. Phang seeks would help her in her work. *See e.g., Jewell*, 828 F.3d at 992 ("[T]he existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing, generally 'need not allege any *additional* harm beyond the one Congress identified.'" (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 342 (2016))).

For all these reasons, Ms. Phang has established that she likely is suffering from an informational injury.

### ii.    Ms. Phang's Economic Injuries Are Likely Redressable

Ms. Phang also argues that she has suffered an economic injury based on the Attorney General's failure to disclose materials in violation of the Epstein Act, which has caused her "actual economic loss" because she has been unable to publish additional videos about the Epstein files and consequently has

lost revenue. Mot., ECF No. 9-1 at 21. An "actual economic loss" is "a classic form of concrete and particularized harm" that suffices by itself to ground Article III standing. *Humane Soc'y of the U.S.*, 797 F.3d at 9. The Attorney General responds that any alleged economic "injury cannot establish standing because it is not redressable" since "monetary relief is not available under the APA." Opp'n, ECF No. 12 at 19 (citing 5 U.S.C. § 702).

The Attorney General's argument is without merit. "A 'plaintiff satisfies the redressability requirement' by showing 'that a favorable decision will relieve a discrete injury' to the plaintiff," and "[t]he plaintiff 'need not show that a favorable decision will relieve' his or her '*every* injury.'" *Energy Future Coal. v. E.P.A.*, 793 F.3d 141, 145-46 (D.C. Cir. 2015) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 525 (2007)) (emphasis in original). Rather, the plaintiff needs to show that her injury would be redressed by removing a "hurdle." *Id*. at 144.

Ms. Phang is not seeking monetary damages. *See generally* Compl., ECF No. 1. Rather, she is requesting that the "hurdle"—the violations of the Act—be removed so she can continue to publish her work and so she does not experience further economic loss caused by the hurdle. Accordingly, her economy injury is redressable by the relief she requests.

28

>        **iii.    Ms. Phang Likely Has Established the**
>                 **Requisite Causal Connection, and Her**
>                 **Informational Injury Likely Is Redressable**

The Attorney General does not contest causal connection, which is easily met here. *See generally* Opp'n, ECF No. 12. Ms. Phang's injuries are directly traceable to her claims that the Attorney General has violated the Epstein Act. The Attorney General also does not dispute that Ms. Phang's informational injuries are redressable by the relief she is seeking. *See generally id*. A favorable ruling by the Court would resolve her informational injuries, as she would be able to obtain and report on the information she is seeking.

For all the reasons discussed above, the Court concludes that Ms. Phang has established Article III standing.

### 3.    FOIA Does Not Provide an Adequate Remedy

The Attorney General argues that Ms. Phang invoked the APA's waiver of sovereign immunity when she brought this action under the APA, but because FOIA provides Ms. Phang with another adequate remedy, there was no waiver of sovereign immunity and so the Court lacks jurisdiction over her claims. *See* Opp'n, ECF No. 12 at 19–21.

For a remedy to constitute an adequate remedy precluding APA review, the remedy must not be "doubtful." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. DHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). The disclosure mandate in the Epstein Act is

"strikingly broad." *United States v. Maxwell*, 811 F. Supp. 3d 667, 676 (S.D.N.Y. 2025). The Court concludes that FOIA, a fundamentally different disclosure law, does not provide Ms. Phang with an adequate remedy for the reasons explained below.

First, Ms. Phang likely would not be able to obtain the unredacted names of senders and recipients in email exchanges with Mr. Epstein because such information would likely be redacted under FOIA Exemption 6—information that, if disclosed, would invade another individual's personal privacy; and FOIA Exemption 7—information compiled for law enforcement purposes. *See Clemente v. Fed. Bureau of Investigation*, No. 1:20-cv-1527, 2022 WL 17092585, at *3-9 (D.D.C. Nov. 21, 2022) (holding that the FBI properly asserted Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E) for records withheld in response to a broad FOIA request for records related to Mr. Epstein and his alleged criminal activities). Second, she would not be able to obtain unredacted DOJ internal charging documents or the notes of the interview with the person who accused Mr. Trump of assault because they would likely be subject to the same exemptions, as well as potentially being exempted as grand jury records under 5 U.S.C. § 552(b)(3) and Federal Rule of Criminal Procedure 6(e). *See id.* Third, she likely would not be able to compel the review of foreign-language documents because such a request likely would be denied as "unduly burdensome." FOIA "protects agencies

from undue burdens." *Inst. for Just. v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019). The Attorney General stated that foreign language materials were not reviewed or produced because it was "not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document," January 30, 2026 Letter at 5; and provided no indication that there was any plan to review and produce them. *Id*. And fourth, she would not be able to obtain the redaction log because FOIA does not require agencies "to create new records" that do not yet exist. *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 409 (D.C. Cir. 2020).

The Department's own post-Epstein Act responses to FOIA requests for the Mr. Epstein and Ms. Maxwell files refute the Attorney General's argument that FOIA provides an adequate remedy. In responses to two FOIA requests for the files, the Department stated that "the [Epstein Act] directed a much broader and less redacted release of the files than would have been made under the FOIA. Certain exemptions which may have been made under FOIA were not made in the [Epstein Act] release." Letter from Andrew D. Fiorillo, Chief, Initial Request Staff, U.S. Dep't of Just. Off. of Info. Pol'y, to Joseph Elfelt at 2 (Apr. 23, 2026), Exhibit H to Ballou Decl., ECF No. 14-1; Letter from Andrew D. Fiorillo, Chief, Initial Request Staff, U.S.

31

Dep't of Just. Off. of Info. Pol'y, to Joseph Elfelt at 2 (May 8, 2026), Exhibit I to Ballou Decl., ECF No. 14-1.[6]

The Attorney General relies on a string cite to assert that FOIA provides an adequate remedy here. Opp'n, ECF No. 12 at 20-21. But the Attorney General does not even attempt to explain why the cases cited are analogous to this case, where the Epstein Act mandates broad disclosures that would be exempted under FOIA and requires the publication of a redaction log that the Attorney General has not yet published.

The Attorney General argues that the Epstein Act and FOIA "must be construed as a whole and, indeed, they operate in harmony." Opp'n, ECF No. 12 at 22. But he provides no authority for these propositions. He contends that the Epstein Act "supplements FOIA by imposing additional disclosure obligations with respect to a specific set of records; it does not supplant FOIA or create a parallel enforcement framework." *Id*. He provides no authority for these propositions either. The Epstein Act is a standalone piece of legislation. It does not reference

---

[6] Ms. Phang filed a Notice of Supplemental Materials ("Notice") containing the Ballou Declaration and the letters responding to the FOIA requests at 6:45 pm on June 24, 2026. *See* Notice of Suppl. Materials, ECF No. 14. The next morning, the Court posted a Minute Order directing the government to file a response to the Notice by no later than 1:00 pm the same day—June 25, 2026. The Attorney General neither filed a response nor requested additional time to respond as of the posting of this Memorandum Opinion.

FOIA or modify the FOIA provisions of the United States Code.

When enacting the Epstein Act, Congress was well aware of FOIA

and its requirements, "thereby indicating that [it] did not view

the alternatives [to the same information] as adequate."

*Citizens for Resp. & Ethics in Wash.* 791 F. Supp. 3d at 51

(discussing that FOIA requests were not an adequate source for

the information sought by the plaintiff, as the plaintiff sought

to enforce the disclosure statute at issue through the APA).

The Attorney General asserts that since Ms. Phang "alleges

that the Department's public disclosures violated the law by

failing to produce required records, improperly withholding

information, and neglecting to provide adequate justification

for any redactions applied," which is similar to what a

plaintiff would contest under FOIA, "FOIA's remedial scheme is

not merely adequate, but is substantively identical to the

relief Plaintiff seeks." Opp'n, ECF No. 12 at 22. The Attorney

General cites *Citizens for Responsibility and Ethics in

Washington ("CREW") v. Dep't of Just.* to support this argument.

846 F.3d 1235, 1245–46 (D.C. Cir. 2017). CREW sued under section

704 of the APA to compel the Department of Justice's Office of

Legal Counsel to disclose its opinions under the "reading-room"

provision of the FOIA. *Id*. at 1238. That provision "requires

agencies to 'make [certain records] available for public

inspection in an electronic format[,]' including 'statements of

33

policy and interpretations which have been adopted by the agency and are not published in the Federal Register.'" *Id.* at 1240 (quoting 5 U.S.C. §§ 552(a)(2), (a)(2)(B)). FOIA provides for judicial review of an agency's decision to withhold records under this provision. *Id*. The court held that that FOIA offered an adequate remedy to CREW because "a plaintiff in CREW's position may bring a FOIA claim to enforce the reading-room provision" and therefore, CREW's APA claim was barred. *Id*. at 1246. The Attorney General's reliance on this case is misplaced since, as explained above, it is doubtful that Ms. Phang could obtain the information she seeks here with a FOIA claim. And FOIA's remedial scheme is clearly not "substantively identical" to the relief sought here for the reasons explained above.

The Attorney General also points to the Department's "Cross Walk" that correlates the exemptions under the Epstein Act to FOIA exemptions. Opp'n, ECF No. 12 at 22 (citing Department of Justice, Off. Of Info. Pol'y, EFTA-FOIA Crosswalk (2026), https://www.justice.gov/oip/media/1438931/dl?inline.[7] The Attorney General argues that "the redactions and withholding decisions [Ms. Phang] challenges align with FOIA's exemption framework." *Id*. at 22. What the Cross Walk in fact shows is that

---

[7] The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon*, 717 F.3d at 205 n.2.

the five very specific permitted grounds for withholding under the Epstein Act simply correlate to certain broader FOIA exemptions. There is nothing in the Epstein Act that required the Attorney General to create the Cross Walk, and the Attorney General ignores the fact that the Epstein Act requires disclosures that would be exempt under FOIA, as explained above.

For all these reasons, it is highly "doubtful" that FOIA would provide an adequate remedy. Therefore, Ms. Phang's suit under the APA is proper and is not barred by sovereign immunity.

### B.   Ms. Phang Is Likely to Prevail on Her Administrative Procedure Act Claims Relevant to the Pending Motion

Ms. Phang argues that she is likely to succeed on the merits of her APA claims relevant to the instant motion. Mot., ECF No. 9-1 at 23-26. Ms. Phang identifies five categories of violations of the Epstein Act. First, the Attorney General has violated the Epstein Act by redacting the names of senders and recipients in at least eight email exchanges with Mr. Epstein regarding a "torture video" and sexual activity with young women, including minors. *Id*. at 23-26. Second, the Attorney General has violated the Epstein Act by redacting the names of co-defendants in a draft indictment, the names of individuals identified as "co-conspirators," and the sender and recipients in a Department briefing email. *Id*. at 26. Third, the Attorney General has violated the Epstein Act by withholding certain

materials mentioning President Trump, specifically, "notes from FBI interviews with a victim who has alleged that in the 1980s, when she was about 13 years old, Epstein introduced her to Trump, who in turn assaulted her." *Id.* at 27. Fourth, the Attorney General has violated the Epstein Act by not reviewing or producing any foreign language materials. *Id*. at 28-30. Fifth, the Attorney General has violated the Epstein Act by failing to publish any redaction logs. *Id.* at 30-31.

The Attorney General does not respond substantively to any of these arguments. Rather, he states that based on his jurisdictional arguments, "[Ms. Phang's] APA claims fail as a matter of law." *Id.* at 14. By not responding substantively, the Attorney General has conceded Ms. Phang's merits arguments in the pending motion. *Texas v. United States,* 798 F.3d 1108, 1110 (D.C. Cir. 2015) (stating that D.D.C. Local Rule 7(b) is "understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"). Accordingly, Ms. Phang is likely to succeed on the merits of her APA claims relevant to the pending motion.

### C.   Ms. Phang Likely Has Established That She Faces Irreparable Harm

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm;" thus "[a] movant's failure to

show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). The movant must show that "[t]he injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal citations, brackets, and quotation marks omitted). "Second, the injury must be beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

Ms. Phang argues that she "is suffering two kinds of irreparable harm: an informational harm (because Blanche refuses to produce time-sensitive information she is entitled to) and an economic harm (because she cannot publish time-sensitive reporting based on that information)." Reply, ECF No. 13 at 14-15; Mot., ECF No. 9-1 at 18-21, 32-34. The Attorney General argues that her purported information injury is speculative and conjectural, Opp'n, ECF No. 12 at 26-27; and that her economic injury alone does not constitute irreparable harm. *Id.* at 27-28.

The Court concludes that Ms. Phang has demonstrated irreparable injury for the reasons explained below.

### 1.    Ms. Phang's Informational Injury Is Neither Speculative Nor Conjectural

Ms. Phang argues that the information she seeks is time-sensitive because Congress has said so by requiring compliance with the Epstein Act within thirty days of its enactment. Mot., ECF No. 9-1 at 31. Ms. Phang argues that the information is time-sensitive "in fact" because if she is able to report on the names of the co-conspirators whose names have been redacted, judicial redress for victims may be possible. *Id.* at 32. Ms. Phang argues that the foreign language materials "are likely to be a fruitful source of information about the identities of those complicit in Epstein's crimes." *Id.*  Ms. Phang argues that materials related to President Trump are particularly time-sensitive "because of the ongoing midterm elections" and the fact that "[m]any candidates have highlighted the Epstein Files as part of their campaigns." *Id.* Finally, Ms. Phang argues that the "redaction log is time-sensitive as a structural matter" because without it, there is "no systematic way to evaluate the productions that have occurred to date." *Id.* at 34.

The Attorney General argues that Ms. Phang has not provided adequate evidence "that any records are presently at risk of destruction, that any relevant evidence is likely to be lost

38

during the pendency of this litigation, or that any witness possesses information that is in imminent danger of becoming unavailable." Opp'n, ECF No. 12 at 26.[8] This argument is beside the point. Ms. Phang does not argue that *she* faces irreparable harm because the records are at risk of destruction, that evidence will be lost during the litigation, or that a witness possesses information that is in imminent danger of becoming unavailable; rather she points out that these are concerns with any potential judicial redress for victims. The Attorney General also argues that the fact that many of the "records at issue concern alleged events that occurred decades ago" undermines her "claim of urgency." Opp'n, ECF No. 12 at 18. However, the urgency is based on the fact that the Epstein Act required disclosure within 30 days of enactment; not based on when the underlying events occurred.

Finally, the Attorney General argues that Ms. Phang's argument regarding public interest fading after the upcoming mid-term elections is speculative. *Id.* However, "the non-disclosure of information to which a plaintiff is entitled, under certain circumstances itself constitutes an irreparable

---

[8] The Attorney General also argues that injury from delay in obtaining these materials is speculative because Ms. Phang only states that delay "may impair" the search for truth. Opp'n, ECF No. 12 at 26 (citing Mot., ECF No. 9-1 at 32.) The Attorney General has taken this reference out of context and so the Court does not address the argument.

harm; specifically, where the information is highly relevant to an ongoing and highly public matter." *Elec. Priv. Info. Ctr.,* 266 F. Supp. 3d at 319. One example of such a circumstance is when a plaintiff was "precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance Program." *Elec. Priv. Info. Ctr. v. Dep't of Just.,* 416 F. Supp. 2d 30, 41 (D.D.C. 2006). Another example was "because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Washington Post v.*DHS, 459 F. Supp. 2d 61, 75 (D.D.C. 2006). Here, the current high level of interest in the Epstein Files combined with the upcoming mid-term elections amounts to a circumstance that itself constitutes irreparable harm, especially where the Attorney General has not disputed that he is in violation of the Epstein Act.

### 2.   Ms. Phang's Economic Injury Likely Is Irreparable

Ms. Phang argues that the information she seeks is time-sensitive to her business interests because she "derives income from each video and story she publishes," and to maximize her

revenue, her reporting needs to be "about topics that are timely and newsworthy."  Mot., ECF No. 9-1 at 34. She notes that public interest in the Epstein files is "extraordinarily high" now but will diminish over time. *Id.*

As an initial matter, the Attorney General's contention that "economic loss does not, in and of itself, constitute irreparable harm" misunderstands the applicable law. Opp'n, ECF No. 13 at 16 (quoting *Wis. Gas Co.*, 758 F.2d at 674). Rather, where, as here, Ms. Phang cannot receive damages under the APA, economic harm can be considered irreparable. *See, e.g., Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) ("[B]ecause [plaintiff] will not be able to seek damages under the APA for any possibly unlawful agency action once the fund has fully expired the Court concludes that [plaintiff] is likely to suffer irreparable economic harm absent a temporary restraining order." (internal citations omitted)); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (internal quotations omitted)); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (although "economic harm is not generally considered irreparable . . .

41

where parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases—economic harm can be considered irreparable").

The Attorney General argues that Ms. Phang has acknowledged that she "has continued to publish on her YouTube channel and has not been prevented from covering the Epstein matter generally." Opp'n, ECF No. 12 at 28. He also argues that the fact that "Plaintiff released an episode just two months ago that recorded over 315,000 views to date, and another three months ago that recorded over 841,000 views to date" has shown that the absence of these records "has not silenced her." *Id*. However, that Ms. Phang has continued to work does not mean that the economic harm is irreparable for the reasons explained above and because she would do additional reporting based on the information she seeks.

### 3.   Ms. Phang Did Not Delay Seeking Preliminary Injunctive Relief

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). While "a late filing, on its own, is [not] a permissible basis for denying a preliminary injunction," "untimely filings may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong." *Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011).

The Attorney General argues that Ms. Phang's "delay in seeking injunctive relief further undermines any claim of irreparable harm." Opp'n, ECF No. 12 at 28. He argues that she had the information that forms the basis of her claims in early February 2026 but did not file suit until April 27, 2026, and then did not file her motion for preliminary injunction until May 28, 2026. *Id*. at 29. Ms. Phang responds that there was no delay because the scope of the production meant that it "took weeks" to discover the gaps in the productions and that not having the redaction log complicated that task. Reply, ECF No. 13 at 17.

On January 30, 2026, the Department announced that as of that date, it had published approximately 3.5 million pages in response to the Epstein Act. U.S. DEPARTMENT OF JUSTICE, *Department of Justice Publishes 3.5 Million Responsive Pages in Compliance with the Epstein Files Transparency Act* (Jan. 30, 2026), https://www.justice.gov/opa/pr/department-justice-publishes-35-million-responsive-pages-compliance-epstein-files.[9] Ms. Phang states that she "promptly filed this lawsuit after discovering and confirming the scope of [the Attorney General's] noncompliance, but she delayed motion practice in the hope that

---

[9] The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon,* 717 F.3d at 205 n.2.

DOJ would quickly cure its most blatant errors (or at least negotiate over them). But a month into the case, the government had not . . . entered a notice of appearance" and so she filed the motion. Reply, ECF No. 13 at 17. Ms. Phang filed suit approximately four months after the Attorney General completed the disclosure of 3.5 million pages of documents, and she filed the pending motion approximately one month later. In view of the volume of documents and the failure of the Attorney General to publish the redaction log, Ms. Phang's conduct does not constitute delay.

### D.    The Balance of the Equities and the Public Interest Favor an Injunction

"A party seeking a preliminary injunction must show that 'the balance of equities favors preliminary relief' and that 'an injunction is in the public interest.'" *Hanson*, 120 F.4th at 246 (quoting *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022)). The Court "must carefully balance the equities by weighing the harm to the moving party and the public if there is no injunction against the harm to the government and the public if there is." *Id.* The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Ms. Phang argues that because "[t]here is generally no public interest in the perpetuation of unlawful agency action,"

44

Mot., ECF No. 9-1 at 34 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); granting the relief she seeks is in the public interest. *Id*. She also argues that granting relief is in the public interest because it is the first step towards the "reckoning for America" that the Epstein Act was meant to bring about. *See* Mot., ECF No. 9-1 at 35. The Attorney General agrees that "there is public interest in transparency and the disclosure of the information concerning [Mr.] Epstein" but argues that the public interest is "not served by compelling the Department to redirect personnel and resources away from competing public interest and safety priorities to address [Ms. Phang's] preference for expedited treatment." Opp'n, ECF No. 12 at 29.

However, "there is no competing harm to the government with the issuance of preliminary relief that orders compliance with . . . statutes and the Constitution, while '[t]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 40 (D.D.C. 2025) (citing *Newby*, 838 F.3d at 12 (internal citation omitted)). The Epstein Act requires the Attorney General to publicly disclose the documents that are covered by it; complying with the law does not harm the Attorney General. Moreover, Ms. Phang is not seeking "expedited treatment." Opp'n,

ECF No. 12 at 29. The Act required the production of the covered documents and the redaction log by December 19, 2025. The Attorney General conceded that he is in violation of the Act. *See generally id.* And Ms. Phang is not seeking full relief on the merits in the pending motion. For all these reasons, the Court concludes that the balance of the equities weighs in favor of entering a preliminary injunction.

### E.   The Court Imposes a Nominal Bond on Ms. Phang

The Federal Rules of Civil Procedure provide that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts in this district have found this rule "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States,* 169 F.3d 21, 33 (D.C. Cir. 1999). "[F]ederal courts typically require substantial bonds only in suits between private parties with significant monetary interests at stake." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 224 (D.D.C. 2025). "A bond 'is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action.'" *Nat'l Council of Nonprofits v. Off. of*

*Mgmt. & Budget*, No. 25-239, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (quoting *Nat'l Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971)).

The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") recently clarified that injunction bonds are "generally required" under Rule 65(c). *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (per curiam). To ensure that the imposition of a bond does not "unduly burden [p]laintiffs, impair [the] ability to seek judicial relief, and chill access to justice," courts in this district "routinely require only nominal bonds from parties obtaining preliminary relief against the Government when the awarded relief will not impose an undue monetary burden on the enjoined parties." *Se. Fisheries Ass'n v. Lutnick*, Civil Action No. 26-1533, 2026 WL 1430499, at *13 (D.D.C. May 21, 2026).

The Court agrees that anything more than a nominal bond would prejudice Ms. Phang and potentially create a chilling effect on other public-law plaintiffs. *See* Reply, ECF No. 13 at 20. Furthermore, the Attorney General has not shown that if the Court grants preliminary relief the Department will incur any significant costs or damages. Therefore, the Court joins other judges in this district and imposes a nominal $1.00 bond. *See,*

*e.g., Beatty v. Trump*, No. 25-cv-4480, 2026 WL 1505646, at *44 (D.D.C. May 29, 2026).

### F.    The Court Will Not Issue a Stay

The Attorney General requests a stay of seven days to determine whether to seek emergency appellate review. Opp'n, ECF No. 12 at 30. The Attorney General also requests a stay of sixty days to determine whether further appellate review is warranted. *Id.* The Court will not issue a stay for the reasons stated in this Memorandum Opinion. The Attorney General has conceded that he is in violation of the Act. Ms. Phang is not requesting the immediate production of documents, but rather that the Attorney General show cause if he declines to do so. As to the requests to review of foreign language documents and publish the redaction log, the Act required the Attorney General to produce the documents and publish the log by December 19, 2025—more than six months ago.

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Ms. Phang's Motion for Preliminary Injunction, ECF No. 9-1. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **June 25, 2025**

48