UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATIE PHANG,<br><br>       Plaintiff,<br><br>  v.<br><br>TODD BLANCHE, in his official capacity as<br>Acting Attorney General of the United States,<br><br>       Defendant. | Civil Action No. 26-1417 (EGS) |

**DEFENDANT'S RESPONSE TO**
**ORDER TO SHOW CAUSE**

## PRELIMINARY STATEMENT

Defendant Todd Blanche, in his official capacity as Acting Attorney General of the United States (the "Government" or "Department"), through counsel, respectfully submits this response to the Court's order styled as granting Plaintiff's motion for a preliminary injunction ("Order") (ECF No. 15). As both the Order and the Court's memorandum opinion ("Op.") (ECF No. 16) make clear, the Court has not ordered "the immediate production of documents," but rather has ordered the Department to "show cause if [it] declines to do so." Op. 48; *see also* Order 1-2. The Government thus treats this as a response to a show cause order.

As discussed in more detail below, the Department has devoted incredible time and resources to complying with the Epstein Files Transparency Act ("EFTA"). The EFTA required the Department to review over six million documents for responsiveness and potential withholding and redactions to protect victims and other sensitive or privileged information. It did so without providing resources or appropriations, such that the Department pulled attorneys away from their important duties to complete this work.

Although the Government strongly disagrees with the Court's ruling that the EFTA is enforceable by private parties through the Administrative Procedure Act, the Government welcomes this opportunity to resolve any confusion regarding the records at issue in this case.[1] To be clear, the Department is committed to transparency and compliance with the EFTA. Although the Court stated that the Department "conceded that [it] is in violation of the Act," the Court elsewhere recognized that the Department did not expressly concede anything of the sort; rather, because the Government raised only "jurisdictional arguments," the Court "treat[ed] the unaddressed arguments as conceded" under this Court's local rule 7(b). Op. 36, 46. The

---

[1] Pub. L. No. 119-38.

Government relied on those jurisdictional arguments because it was (and still is) confident they were correct—not because the Department believes it has violated the EFTA. Indeed, the Department has not knowingly violated, nor has it ever acknowledged violating, the EFTA as it continues working to comply with statutory requirements.

As will become apparent, it would contravene the settled application of the EFTA for the Department to produce unredacted versions of many of the records at issue, and nothing requires that result. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties," and "where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 396 (1981). It follows that "a party addressing only issues of preliminary relief should not ordinarily be bound by its abbreviated and only partially informed presentation of the merits." 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2950 n.14 (3d ed. Apr. 2026 update). In other words, while raising only threshold arguments may have impacted the court's consideration of the merits on the then-"pending motion," Op. 36, it does not amount to a concession that binds the Government through the remainder of litigation. Any other approach would undermine the distinction between a preliminary injunction and a final judgment on the merits. *See Camenisch*, 451 U.S. at 395 ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.").

Below, the Government shows cause why the Court should not order it to take any mandatory action requested by Plaintiff.

## BACKGROUND

President Donald J. Trump signed the EFTA into law on November 19, 2025, the same day the Senate passed it. Order, ECF No. 16 at 2–3 (citation omitted). The EFTA "requires the release of documents relating to Mr. Epstein, subject to five permitted grounds for withholding, requires any redactions to be accompanied by a written justification published in the Federal Register, and a report to Congress upon the completion of the release of records." *Id.* at 3.

Section 2(a) of the EFTA requires the Attorney General to "make publicly available in a searchable and downloadable format all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices, that relate to" nine distinct categories relating to the Mr. Epstein, Ghislaine Maxwell, and the Department of Justice's investigations of them. EFTA § 2(a). Section 2(a) did not require the release of materials that are subject to the EFTA's permitted grounds for withholding. *Id.*

Section 2(b) provides that "[n]o record shall be withheld, delayed or redacted on the basis of embarrassment, reputational harm, or political sensitivity, including to any governmental official, public figure, or foreign dignitary." EFTA § 2(a)(1)–(9).

Section 2(c) identifies five categories of materials for which the Attorney General "may withhold or redact the segregable portions" and requires redactions to "be accompanied by a written justification in the Federal Register and submitted to Congress." EFTA § 2(c)(1), (2). These five categories are materials that:

> (A)    contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(B)     depict or contain child sexual abuse materials (CSAM) as defined under 18 U.S.C. 2256 and prohibited under 18 U.S.C. 2252–2252A;

(C)     would jeopardize an active federal investigation or ongoing prosecution, provided that such withholding is narrowly tailored and temporary;

(D)     depict or contain images of death, physical abuse, or injury of any person; or

(E)     contain information specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.

EFTA § 2(c)(1)(A)–E.

Section 2(c) also requires the Attorney General to declassify covered classified information "to the maximum extent possible," EFTA § 2(c)(3), and, for information that cannot be declassified, "release an unclassified summary for each of the redacted or withheld classified information." EFTA § 2(c)(3)(A).  It also requires that decisions to declassify covered information be "published in the Federal Register and submitted to Congress, including the date of classification, the identity of the classifying authority, and an unclassified summary of the justification."  EFTA § 2(c)(4).

Section 3 provides that within fifteen days of the public release of materials covered by the EFTA, "the Attorney General shall submit to the House and Senate Committees on the Judiciary a report listing:"

(A)     All categories of records released and withheld.

(B)     A summary of redactions made, including legal basis.

(C)     A list of all government officials and politically exposed persons named or referenced in the released materials, with no redactions permitted under subsection (b)(1).

EFTA § 3.

The EFTA did not provide any resources or appropriations to the Department of Justice to enable compliance with these mandates.

**The Department's Compliance with the EFTA**

The day that Congress passed the EFTA and President Trump signed it into law, Deputy Attorney General Todd Blanche issued a letter to Congress stating that the Department was "producing hundreds of thousands of pages of responsive materials in compliance with" the EFTA. Letter from Todd Blanche, Deputy U.S. Att'y Gen., to Members of Congress at 1 (Dec. 19, 2025), Exhibit D to Ward-Packard Decl., ECF No. 9-3. The letter explained that "the Department is continuing to review additional documents and other items for responsiveness" and would make withholdings and redactions consistent with section 2(c) of EFTA and applicable privileges, which EFTA did not abrogate. *Id.* at 2–3 (explaining that it is a "long-held principle that Congress speaks clearly when it intends to abrogate a common law principle or privilege" (citing *Bassett v. United States*, 137 U.S. 496, 505–06 (1890)). The letter also explained that "[a] privilege log will be produced in due course as required under the Act." *Id.* at 3.

In the same letter, Deputy Attorney General Blanche made clear that "[p]rotecting victims is of the highest priority for President Trump, the Attorney General, the Federal Bureau of Investigation, and the Department of Justice." *Id.* To protect victims, "the Department solicited counsel for any victims of Jeffrey Epstein and invited counsel to provide [the Department] with names of victims, whether previously identified or not." *Id.* This resulted in "over 1,200 names being identified as victims or their relatives," which the Department redacted. *Id.*

The Department immediately made disclosures on the day the EFTA was enacted. *See* Compl., ECF No. 1, ¶ 24–25. It also made disclosures on December 20, 22, and 23, 2025, and on January 30, 2026. ECF No. 16 at 8 (citing Mot., ECF No. 9-1, at 14). And on February 2, 2026,

the Department issued a summary identifying the records that were withheld and the legal bases for any redactions.  Compl. ¶ 25.  Then, on February 14, 2026, the Department sent a letter to the Chairmen and Ranking Members of the Senate Judiciary Committee and House Judiciary Committee embodying the report required by section 3 of the EFTA.  *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to Chairman Chuck Grassley, Ranking Member Dick Durbin, Chairman Jim Jordan, Ranking Member Jamie Raskin (Feb. 14, 2026), Exhibit F to Ward-Packard Decl., ECF No. 9-3.  This letter included a "Summary of Redactions Made and Legal Basis" and a "List of All Government Officials and Politically Exposed Persons" named or referenced in the released materials.  *Id.* at 2–6.

In addition to complying with the EFTA, the Department has gone beyond the EFTA's requirements by inviting Members of Congress to view unredacted versions of the more than three million files released by the Department of Justice.[2]  Multiple Members of Congress have done so.

## JURISDICTION

This Court concluded that private litigants may enforce the provisions of the EFTA through the Administrative Procedure Act ("APA").  Op. 29-35.  The Government must reiterate its strong disagreement with that conclusion, which threatens to disrupt the "interdependence" and "reciprocity" that has characterized the relationship between Congress and the Executive Branch as the Department implements the EFTA.  *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).  Any disputes about the production of documents are best "hashed out in the 'hurly-burly, the give-and-take of the political process between the

---

[2] *See* Stephen Groves, *Lawmakers will have access to unredacted versions of released Epstein files*, Associated Press, Feb. 6, 2026, available at https://apnews.com/article/epstein-files-congress-unredacted-justice-department-5219f89459e80a141b84e1aa2551b0d2.

legislative and the executive.'"  *Trump v. Mazars USA, LLP*, 591 U.S. 848, 859 (2020) (quoting Hearings on S. 2170 et al. before the Subcommittee on Intergovernmental Relations of the Senate Committee on Government Operations, 94th Cong., 1st Sess., 87 (1975) (A. Scalia, Assistant Attorney General, Office of Legal Counsel)).

After all, "creating a cause of action is a legislative endeavor," *Egbert v. Boule*, 596 U.S. 482, 491 (2022).  But Congress did not create one in the EFTA, *see* Pub. L. No. 119-38.  Nor can private parties enforce the EFTA by way of the APA.  Under 5 U.S.C. § 704, judicial review is available only as to "final agency action for which there is no other adequate remedy in a court." This limitation "reflects Congress' judgment that 'the general grant of review in the APA' ought not [to] 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Just.*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).

Here, the Freedom of Information Act ("FOIA") provides an adequate remedy (as Congress was well aware when it omitted a right of action from the EFTA).  *See Elec. Priv. Info. Ctr. V. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (concluding in a variety of circumstances that "FOIA offers an 'adequate remedy' within the meaning of [the APA]").  Indeed, courts have held time and time again that "FOIA is the exclusive remedy for obtaining [purportedly] improperly withheld agency records." *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)).[3]

---

[3] *See also CREW*, 846 F.3d at 1245-46 (concluding that FOIA provides an adequate remedy such that review under the APA is barred); *Harvey v. Lynch*, 123 F. Supp. 3d 3, 7–8 (D.D.C. 2015) ("[C]ourts in this Circuit have uniformly concluded that they lack jurisdiction over APA claims that seek remedies available under FOIA." (cleaned up)); *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (internal citations and

This Court held otherwise based on its conclusion that Plaintiff "likely would not be able to obtain" the unredacted documents she seeks because "they would likely be subject to [FOIA] exemptions" on disclosure.  Op. 30.  According to the Court, the EFTA "mandates broad disclosures that would be exempted under FOIA," *id.* at 32, so FOIA is not an adequate remedy.

Respectfully, the Court's reasoning misunderstands what counts as an adequate remedy. Indeed, Chief Judge Boasberg has rejected this exact sort of reasoning.  *See Chaberra*, 2018 WL 4762259, at *4.  It does not matter that FOIA "exemptions might apply," because "[i]t is well settled that the alternate remedy must be only of the 'same genre'; it need not be identical."  *Id.* (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the same genre")). "The relevant 'genre' here is easy to identify: the disclosure of documents[.]"  *Id.*  "That is what Plaintiff seeks, and that is what FOIA provides."  *Id.*  Simply put, "the possibility that a plaintiff 'might fare worse' under FOIA does not entitle her to bring a claim under the APA."  *Id.* (quoting *Greenpeace*, 311 F. Supp. 3d at 126.  The fact that EFTA is a disclosure law makes no difference. Because the EFTA lacks a cause of action, Plaintiff must find one somewhere.  She cannot do so in the APA, because "FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired."  *CREW*, 846 F.3d at 1245.

Ignoring that Congressional choice would have problematic consequences.  If other courts took the same erroneous approach, they would soon be flooded with piecemeal litigation over

quotations omitted) ("There is 'little doubt that FOIA offers an adequate remedy within the meaning of section 704,' . . . when litigants seek[]to 'gain access to . . . records.'" (alterations in original)); *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018) (dismissing APA claim for failure to state a claim because "FOIA offers an 'adequate remedy'"); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 75 (D.D.C. 2016) ("Courts in this circuit have [ ] uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA.") (internal quotation marks and citations omitted).

every file in the library while disincentivizing Congress from acting to address any lingering concerns.  As in other instances, the better approach is for members of Congress to view the unredacted materials and engage with the Department, which would respond accordingly.  That productive exchange would better serve the interests of transparency and (where appropriate) privacy than scattershot judicial enforcement.

That said, the Government understands the Court has ruled on this issue.  Because the Government views the Court's Order as more in the nature of an (unappealable) show cause order, the Government has not had occasion to consider appellate review.  But the Government's following discussion of the categories of records at issue should underscore the burdens, on private parties, the Department, and courts, that this Court's reasoning would impose.

**DISCUSSION**

The Court's Order lists five required actions.  The Government addresses each in turn.

**1.** The Court has ordered the Department to either produce to the public the emails bearing Bates numbers (1) EFTA01187999, (2) EFTA01930501, (3) ETFA01928255, (4) EFTA02648868, (5) EFTA02504630, (6) EFTA01022356, (7) EFTA00749245, and (8) EFTA00628112, with sender and recipient names unredacted, or show cause why the redactions should not be removed.

For the first six of the eight emails listed, the redacted sender and/or recipient names are the names of victims.  One of the complicating aspects of administering the EFTA is that many communications written by victims, without context, can appear disturbing on their face.  The EFTA contemplates that the Department may withhold or redact the segregable portions of records that contain the personally identifiable information ("PII") of victims.  EFTA § 2(c).  Consistent with that statutory authority, the Department has sought to prevent victim PII from becoming

public even in instances where the victims eventually became complicit or engaged in reprehensible activity or communications. *See, e.g.*, United States Department of Justice, *Epstein Files Transparency Act – Section 3 Report to Congress* at 2 (Feb. 14, 2026) ("Section 3 Report").[4] The Government appreciates the Court's recognition that "redactions to protect victims' information" is "appropriate." Order 2.

The redacted portion of the seventh email listed does not contain a standalone name— rather, for unclear technical reasons, it contains the same email address twice (once in quotation marks ("") and once in angle brackets (< >). In administering the EFTA, consistent with the Privacy Act, the Department has left redacted individual email addresses to avoid "clearly unwarranted invasion of personal privacy." Section 3 Report at 2; *see also EFTA First Level Review Protocol* at 8 (Jan. 4, 2026) (Under "Privacy Act Redactions," "You must also redact PII that may be present in the documents [including] . . . email addresses").[5] Duplicates of the seventh email are in the Epstein Files Library and contain the same redaction.[6] Further, the individual who emailed Jeffrey Epstein that he "loved the torture video" has been repeatedly identified by Members of Congress granted access to unredacted files. Representative Thomas Massie detailed his role in the identification via X, stating:

> 2) I forced the release of every man's name that I could find in the redactions so far. This includes the [individual] (now resigned) who discussed the torture video with Epstein. I was the one who got that out there.
> …
> 6) You (or your staff) can post the EFTA# for documents that you believe contain men's names redacted, and I'll go look at those documents at DOJ to see if those documents contain men's names. If the redacted identifier is an email address not

---

[4] *Available at* https://www.justice.gov/opa/media/1434856/dl?inline.

[5] *Available at* https://www.justice.gov/media/1426281/dl?inline.

[6] *See* EFTA01827430, EFTA00881786, EFTA00749241, EFTA02524962, EFTA02441899, EFTA00774231, EFTA00663685, and EFTA01781626.

associated with a name, I can put the email address back into the DOJ computer as a search term to see if it is associated with a man's name elsewhere in the documents. This is how I discovered … who Epstein was discussing a torture video with.[7]

Given this and widespread media attention as to the purported identity of the sender of this email—information Plaintiff could have readily obtained with a simple internet search—unredacting the email address would not only be inconsistent with how other private email addresses have been treated; it would serve no purpose beyond sharing that private email address.

The redacted portion of the eighth email listed also includes only a private email address, not a person's name.  Thus, it was properly redacted.  *See* EFTA First Level Review Protocol 8.

**2.** The Court has ordered the Department to either produce to the public the DOJ documents bearing Bates numbers EFTA01703108 and EFTA00038227 with potential co-conspirator names unredacted, or show cause why the redactions should not be removed.

The redactions in the "from" and "to" email lines of EFTA00038227 are for law enforcement personnel, including both names and official email addresses.  *See* EFTA First Level Review Protocol 8 ("You must also redact . . . Names of . . . law enforcement" and "Email addresses").  Three of the four names listed under the "co-conspirator" heading belong to individuals who are, in fact, victims.  The redactions applied to the name of Leslie Groff have been removed, as she has not asserted victim status.[8]  As the Department explained in its January 30,

---

[7] Representative Thomas Massie (@RepThomasMassie), X (Feb. 22, 2026), https://x.com/RepThomasMassie/status/2025552086151139488?s=20; *see also 172 Cong. Rec. H2428 (daily ed. Mar. 5, 2026) (statement of Rep. Frost of Florida), noting: "The first one was this file that talked about a torture video.  This right here is an email. The email belongs to...").*

[8] *See Letter by USA as to Ghislaine Maxwell, United States v. Ghislaine Maxwell*, No. 20-cr-0330 (S.D.N.Y. Jan. 31, 2026) (explaining that requests for "[r]equests for additional, or corrected, redactions are submitted to an email account (EFTA@usdoj.gov) that is continuously monitored by a team of dedicated Department personnel that are working to redact and replace the documents.")

2026 letter to Congress, during its review, the Department engaged extensively with counsel representing victims and other interested parties. *Epstein Files Transparency Act – Production of Department Materials* (Jan. 30, 2026).[9]  Throughout that process, and following further review of communications involving individuals initially identified as victims, the Department determined that certain "individuals whose names were initially being redacted out of an abundance of caution should no longer be redacted."   The Department acknowledged that those names "were not redacted on a go-forward basis" and that, notwithstanding "steps to minimize the inconsistencies in redacting those individuals' information, inconsistencies likely remain." *Id.*  A document with revised redactions has been made available on the DOJ's Epstein Library.

EFTA01703108 is a draft indictment from the Southern District of Florida, bearing handwritten notation on page 1 stating "OLD Draft."  The redactions appearing in this document were present in the original file; the Department has not been able to locate an unredacted version of this specific photocopy.  The Department does, however, possess unredacted versions of substantially similar documents, including EFTA00194840, which confirm that all of the redacted names are, once again, victims.[10]

**3.** The Court has ordered the Department to either produce to the public the underlying FBI interview notes that formed the basis for the FD-302 interview reports bearing Bates numbers EFTA01245620, EFTA02858481, EFTA02858491, and EFTA02858495, with appropriate redactions to protect victims' information, or show cause why the notes should not be produced.

---

[9] *Available at* https://www.justice.gov/opa/media/1426091/dl.

[10] Available at https://www.justice.gov/epstein/files/DataSet%209/EFTA00194840.pdf.

The Department has not produced underlying handwritten notes for FD-302 interview reports because, by their nature, the underlying notes are substantially similar to the ultimate reports, and have accordingly been deemed duplicative of the typewritten reports memorializing the interviews.  Their handwritten nature further complicates the redaction process and increases the risk of inadvertent disclosure of victim PII - including because of technical limitations on the Department's ability to run meaningful quality control checks for victim PII across handwritten materials.

**4.** The Court has ordered the Department to initiate review and production of foreign-language materials that may be subject to production under the EFTA, and provide notice to the Court and all parties that such review is underway.

As the Department advised Congress on January 30, 2026,  "it was not practicable for a first-level reviewer to determine the responsiveness of a foreign language document." Department of Justice, *Epstein Files Transparency Act – Production of Department Materials* at 5 (Jan. 30, 2026).[11]  The Court should not supplant Congress's acceptance of this explanation (and the Government continues to believe the Court lacks the authority to do so).

**5.** The Court has ordered the Department to either publish in the Federal Register the redaction log required under the EFTA § 2(c)(2), and update it concurrently with each future release of redacted materials, or show cause why the Department cannot do so. The Department has provided Congress information about the categories of records released and withheld and a summary of redactions made including the legal justification for those redactions, as required by

---

[11] *Available at* https://www.justice.gov/opa/media/1426091/dl.

EFTA §§ 2(c)(2), 3.  The Department will submit the notice for publication in the Federal Register as required under EFTA § 2(c)(2).[12]

## CONCLUSION

For these reasons, the Court should not order the Department to take further action as requested by Plaintiff.  As noted, the Government can share additional details regarding specific records in camera or with appropriate protections in place.

In light of the information provided above, including the need to protect victims, law enforcement personnel, and the Department's resources, should the Court order the Department to take further action, the Government respectfully requests that the Court grant a stay of sixty days so that the Solicitor General has time to consider whether further appellate review is warranted. At a minimum, any such order should be stayed for at least seven days to allow the Government to determine whether to seek emergency appellate review.  The Court's previous rationales for denying a stay would be inapplicable because the Government does *not* concede any EFTA violation and the Court *would* be ordering the Department to take action without a show cause alternative.  *See* Op. 48.

Dated: July 2, 2026

Respectfully submitted,

_____/s/ Stanley E. Woodward, Jr._____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, Northwest
Washington, District of Columbia 20530
202-514-2000 (telephone)
stanley.woodward@usdoj.gov

*Counsel for the United States of America*

---

[12] Unlike the 15-day summary report deadline set forth in § 3, the EFTA did not establish a deadline for publication in the Federal Register and submission to Congress under § 2(C)(2).

## **CERTIFICATE OF SERVICE**

On July 2, 2026, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, Northwest
Washington, District of Columbia 20530
202-514-2000 (telephone)
stanley.woodward@usdoj.gov

*Counsel for the United States of America*
