**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KATIE PHANG,

          Plaintiff,

    v.

TODD BLANCHE,
in his official capacity as Acting Attorney
General of the United States,

          Defendant.

Civil Action No. 26-1417 (EGS)

**PLAINTIFF'S RESPONSE TO COURT ORDER AND MOTION TO ENFORCE**

Plaintiff, Katie Phang – an independent journalist who has reported on the crimes of Jeffrey Epstein and his network – brought this suit to compel Acting Attorney General Todd Blanche to comply with the Epstein Files Transparency Act (the "Epstein Act" or "Act"). On May 28, 2026, Phang moved for a preliminary injunction to compel the Attorney General to cease some of his most obvious and harmful violations of the Epstein Act. As this Court noted in its Order dated June 25, 2026, the Attorney General did not even contest that Phang was likely to succeed on the merits of her claims. Instead the Attorney General made only baseless jurisdictional arguments that the Court rightly rejected. The Court therefore issued an order granting Phang's motion for a preliminary injunction in full. ECF No. 15, Order Granting Preliminary Injunction. A week later, the Attorney General filed what he styled as a "Response" to the Court's "Order to Show Cause." ECF No. 17, Def's Response to Order at 14.

Notably, in his response, the Attorney General makes clear that whatever the federal statute requires him to do, he will not comply. He refuses to review foreign-language documents. He refuses to produce an explanation for his redactions. And he refuses to produce

1

documents he concedes contain no victim information.  Stated differently, the Attorney General refuses to provide the transparency that the Epstein Act demands.

Because of the brazenness of Defendant's repeated violations, and because this brazenness fits a pattern of dishonesty, delay, and obfuscation in this matter, this Court should fine the Attorney General $1,000 a day until he complies with this Court's order, order an expedited production of the administrative record in this matter, and direct an *in camera* review of those documents Defendant claims contain victim information.

## I.    The Attorney General Refuses To Follow This Court's Order

### A.  The Attorney General Refused to Review Foreign Language Documents

The Court directed the Attorney General to "initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act, and provide notice to the Court and all parties that such review is underway."  ECF No. 15, Order at 2.  The Court gave no option for the Attorney General to show cause why the government could not comply with this direction.  Yet still, Defendant intentionally ignored this Court's order and failed to comply.

Instead, the Attorney General made an incredible argument.  He claimed that because the government told Congress that it was impracticable to comply with this part of the Epstein Act, and because Congress took no action in response, the Attorney General had no obligation to follow the law.  ECF No. 17, Def's Response to Order at 14. ("As the Department advised Congress on January 30, 2026, it was not practicable for a first-level reviewer to determine the responsiveness of a foreign language document.  The Court should not supplant Congress's acceptance of this explanation." (cleaned up)).

This isn't how the law—any law—works. After Congress passed and President Donald Trump signed the Epstein Act into law, Defendant was bound to comply with the Act.  Whether

Congress subsequently objected to the Attorney General's violation of the law is utterly irrelevant to whether the Attorney General must, in fact, follow the law.  *See Train v. City of New York*, 420 U.S. 35, 45 (1975) ("legislative intention, without more, is not legislation.").  To permit Defendant to pick and choose which parts of the Epstein Act to follow would, in essence, give the government a line item veto, which is, of course, unconstitutional.  *Clinton v. City of New York*, 524 U.S. 417 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.").

To the extent the Attorney General wants to argue that he never had an obligation to produce foreign-language documents, the time to do so was in his opposition to the motion for preliminary injunction, which he did not do.  Moreover, even now, Defendant does not appear to make this argument.  Rather, he simply asserts that such production is not "practicable."  ECF No. 17, Def's Response to Order at 14.  This is irrelevant to whether Defendant must follow the law. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 325 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms.").  In short, the Attorney General has obviously and arrogantly ignored this Court's order here, while openly admitting that he has failed to comply with this provision of the Act.

### B.  The Attorney General Misled The Court on Defendant's Redaction Obligations

In its order, the Court required the Attorney General to "either publish in the Federal Register the redaction log required under Epstein Files Transparency Act § 2(c)(2) . . . or show cause why he cannot do so." ECF No. 15, Order at 2.  Here too, the Attorney General defied the Court.  He neither published the redaction log, nor said why he could not.  Rather, Defendant dissembled, arguing he has already provided to Congress a "summary of redactions made," which he would submit to the Federal Register.  ECF No. 17, Def's Response to Order at 14-15.

But while providing that summary may have satisfied one of Defendant's obligations under Section 3 the Act, it does not discharge Defendant's *entirely separate* obligation under the Section 2(c)(2) of the Act to produce a non-summarized redaction log.

As the Attorney General well knows (because he cites both sections), the Epstein Act has two separate disclosure requirements. *First*, the Act requires the Attorney General to submit to Congress and publish in the Federal Register a "written justification" for "all redactions" he makes, as well as for any decision to classify material made after July 1, 2025. Epstein Act § 2(c)(2), (4). *Second*, the Act requires the Attorney General to submit to the House and Senate Judiciary Committees a report listing (i) records released and withheld; (ii) a "summary of redactions," including legal basis; and (iii) a list of all "government officials and politically exposed persons named or referenced in the released materials." *Id.* § 3. This report must be issued within 15 days of the release of the covered materials. *Id.*

The Attorney General claims that he has satisfied his obligation to explain his redactions by providing  Congress only a "summary" of redactions pursuant to Section 3. But that position misleadingly reads Section 2(c)(2) out of the statute entirely. *See Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion of Scalia, J.) ("the cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant."). The Epstein Act requirement for a summary report in Section 3 is plainly separate from the requirement to publish a redaction log justifying each individual redaction in Section 2(c)(2).

There is nothing in the structure or text of the Act suggesting that submission of the "summary of redactions" required by Section 3 also satisfies the requirement to submit a "written justification" for "all redactions" required by Section 2(c)(2). Congress could have used the word "summary" in Section 2(c)(2)—as it did in Section 3—but conspicuously chose not to. *See*

*Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). The law clearly requires more than a summary: it also requires a written justification for each redaction made, submitted to Congress and the Federal Register—which the Attorney General has neither done, nor explained why he cannot do it. Once again, the Defendant has intentionally defied the Court.

### C. The Attorney General Refuses, Without Cause, To Disclose Documents This Court Ordered Be Published

This Court directed the Attorney General to produce a range of documents in unredacted form, or explain why he could not. Again and again, the Attorney General dissembled.

*First*, the Court ordered Defendant to produce, or explain why he could not produce, handwritten interview notes that formed the basis of FD-302 reports that directly relate to President Trump. ECF No. 15, Order at 2. In his Response, the Attorney General refused to produce such documents, saying that, as a general matter, handwritten notes for FD-302 interview reports were "substantially similar to the ultimate reports." ECF No. 17, Def's Response to Order at 14. The Attorney General added, again, as a general matter, that handwritten notes "complicate[] the redaction process" and increase the chances that victim personal information is inadvertently disclosed.[1] *Id.*

---

[1]    The Attorney General's stated concern about protecting victim identities rings somewhat hollow, given that he already reportedly disclosed documents revealing nearly 100 victims' identities. *Government says it's fixing thousands of documents in Epstein-related files that may have had victim information*, PBS News (Feb. 3, 2026), https://www.pbs.org/newshour/politics/government-says-its-fixing-thousands-of-documents-in-epstein-related-files-that-may-have-had-victim-information.

While the Attorney General asserts (without evidence) that FBI handwritten interview notes are similar to subsequent FD-302s as a general matter, he has not argued—let alone provided any evidence—that the specific handwritten notes at issue here are substantially similar to the FD-302s that have been produced.  The Epstein Act does not exempt from production documents that are "substantially similar" to those that have been produced.  Nor does the Epstein Act provide exceptions for documents that are "complicate[d]" to review.  Even if it did, the Attorney General doesn't even bother to argue that the specific interview notes at issue here are so voluminous or complicated that they cannot be carefully reviewed for victim information. Once again, Defendant impermissibly seeks to write exceptions into the Epstein Act that don't exist. *See Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 525 (1838) ("To contend that the obligations imposed on the President to see the laws faithfully executed, implies a power to forbid their execution; is a novel construction of the constitution, and is entirely inadmissible.").

*Second*, the Attorney General argues that despite what the Court has ordered him to do, he will not un-redact the name or email address of a person who emailed Jeffrey Epstein "where are you? are you ok I loved the torture video" because a member of Congress allegedly revealed the name elsewhere.  ECF No. 17, Def's Response to Order at 11-12 (citing EFTA00749245). The mere fact that this information may be available elsewhere does not exempt Defendant from his own disclosure obligations.  *See U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136, 152-53 (1989) (holding that government must produce documents even when available elsewhere).  The Epstein Act spells out a list of specific exceptions for when information need not be disclosed. Epstein Act § 2(c)(1).  Information being available from a different source is not one of those exceptions, and if Congress had intended to offer such an exception, it could have.  Its refusal to do so should be considered intentional, and instructive. *See Russello v.*

*United States*, 464 U.S. 16, 23 (1983) ("it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" of statutory language).

*Third*, the Attorney General argues that he need not produce various documents, including the above-mentioned "torture" email, because doing so would reveal private email addresses. ECF No. 17, Def's Response to Order at 11-12 (citing EFTA00749245, EFTA00628112). The Attorney General's argument appears to be that producing such information would violate the Privacy Act. The Privacy Act directs agencies to maintain a "system of records" for maintaining "records" about people, and sets certain conditions for releasing those records. 5 U.S.C. § 552a.

To the extent the Privacy Act and the Epstein Act conflict—and Defendant makes no argument as to why they do—the Epstein Act clearly trumps, as it was the more recently enacted law, and sets out its specific criteria for which documents must be disclosed. Epstein Act § 2(c). The Epstein Act is explicit that the only personally identifiable information Defendant may withhold is personally identifiable information related to victims. Epstein Act § 2(c)(1)(A). The Epstein Act also explicitly disclaims many of the considerations that the Privacy Act upholds for withholding records, explaining that "No record shall be withheld, delayed, or redacted on the basis of embarrassment, reputational harm, or political sensitivity." *Id.* § 2(b)(1). Even if the Attorney General were correct that private email addresses may be withheld, the non-victim names associated with such email addresses cannot properly be withheld, and should either be unredacted or disclosed in Defendants' redaction log.

7

*Finally*, the Attorney General alleges that various documents subject to the Court's preliminary injunction contain information about victims.[2]  That may well be true, and Plaintiff agrees that any victim information should not be disclosed (which, unfortunately, Defendant has repeatedly done).  But the Attorney General has established a pattern of dissembling and dishonestly in this matter that make it necessary to verify his claims:

- In his Opposition to Plaintiff's motion for preliminary injunction, the Attorney General never once argued that any of the specific documents that were requested by the Plaintiff would reveal victim information. Then, hours after the Court granted the motion, the government issued a public statement attacking the Court: "Judge Sullivan's perverse interpretation appears to be focused on driving misleading headlines. This judge is suggesting DOJ violate the law by un-redacting victim names, who as the Department has always explained, sadly became co-conspirators."  Josh Gerstein and Kyle Cheney, *Todd Blanche 'conceded' violating law on Epstein files, judge finds*, Politico (June 25, 2026), https://www.politico.com/news/2026/06/25/todd-blanche-conceded-epstein-files-00977481.  It does a disservice to this Court, and to the victims in this matter, by making this argument in the press and not in briefing until the Attorney General had already lost.

- In his Opposition to Plaintiff's motion for preliminary injunction, the Attorney General argued that Plaintiff could not demand documents through the Epstein Act, but rather had to request them through FOIA.  But when requesting documents through FOIA, the

---

[2]    The Attorney General appears to argue that the following documents contain victim information: EFTA01187999, EFTA01930501, ETFA01928255, EFTA02648868, EFTA02504630, EFTA01022356, and EFTA00194840 (the latter, Defendant claims, is substantially similar to EFTA01703108, which Defendant says has redactions in its original form).

government said the opposite: that documents would only be disclosed through the Epstein Act. ECF No. 14, Plaintiff's Notice of Supplemental Material.

- More generally, and as explained in Plaintiff's Complaint, Defendant has needlessly delayed following the law, made incomplete and inappropriate redactions, and withheld entirely documents concerning President Trump.  ECF No. 1, Complaint ¶ 23-40.

Given the Attorney General's track record in this matter, this Court should direct the Attorney General to produce the documents at issue for *in camera* review with both parties present.

**II.     The Court Should Find the Attorney General in Contempt and Order an *In Camera* Inspection of Documents**

### A.  Legal Standard

"An order granting injunctive relief is enforceable by the district court's power of contempt." *Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012) (Sullivan, J.) (citing *Gunn v. Univ. Comm. to End War in Viet Nam,* 399 U.S. 383, 389 (1970)).  "A contempt finding is proper where 'the putative contemnor has violated an order that is clear and unambiguous' and the violation of an order is 'proved by clear and convincing evidence.'" *Id.* (quoting *Armstrong v. Executive Office of the President, Office of Admin.,* 1 F.3d 1274, 1289 (D.C.Cir.1993)) "'In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred.'"  *Id.*  (quoting *Breen v. Tucker,* 821 F.Supp.2d 375, 383 (D.D.C.2011)).

"A motion to enforce *must* be granted if a prevailing plaintiff demonstrates that a defendant has not complied with a prior judgment entered against it, and denied if a plaintiff has received all relief required by the prior judgment." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. CV 25-3417 (BAH), 2026 WL 1256234, at *8 (D.D.C. May 7, 2026) (emphasis added) (citing *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005)).  In deciding how

to implement a motion to enforce, "[i]t is well established that a court's powers to enforce its own injunction by issuing additional orders is broad." *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 812 F. Supp. 3d 86 (D.D.C. 2025) (internal quotations omitted). "Once invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies." *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235, 1241–42 (D.C. Cir. 2017) (quoting *Brown v. Plata*, 563 U.S. 493, 538 (2011)).

### B.  A Fine, Expedited Discovery, and *In Camera* Review Are Appropriate

As explained above, the Attorney General has obviously failed to comply with much of this Court's order. Most blatantly, he failed to comply with the Court's directives (1) to begin producing foreign language documents, (2) to produce a redaction log, and (3) to produce documents that the Attorney General concedes do not have victim information.  Given that the Attorney General has an apparent strategy of delaying any action related to the Epstein Files, simply reiterating this Court's order may be insufficient.  Recently a District Court judge ordered an individual government attorney to pay a $500 daily fine until the government complied with a court order.  Order, *S.J. v. Bondi et al.*, 26-cv-957 (D. Minn. Feb. 20, 2026), ECF No. 23.  A similar remedy is appropriate here, especially given that the Attorney General's response refusing to follow this Court's order—signed solely by the Associate Attorney General—is coming from the highest levels of the Justice Department.

Nor, given the Attorney General's determined delay, is it sufficient to permit Defendant to simply announce that he will begin reviewing foreign-language documents or that he will eventually produce a privilege log.  To prevent delay, Plaintiff proposes that the Attorney General be fined $1,000 per day until he completes his review of foreign language documents, publishes the required redaction log, and produces those documents that he concedes do not contain victim

information.  For the documents that the Attorney General alleges contain victim information, Plaintiff requests that the Court and Plaintiff be permitted *in camera* inspection of these documents.  Finally, to prevent further delay on the substance of this case, Plaintiff requests that the Attorney General be directed to promptly produce the administrative record in this matter.

## III.    The Court Should Reject Defendant's Attempt to Relitigate His Jurisdictional Arguments

In his response, the Attorney General attempts to make the same jurisdictional arguments that this Court has already rejected, erroneously insisting yet again that FOIA provides Plaintiff with an adequate remedy.  *See* ECF No. 17, Def's Response to Order at 7–10.  But the Attorney General only cites cases that involve Administrative Procedure Act claims based on agencies' alleged failure to disclose documents in response to Freedom of Information ("FOIA") requests. *Id.* 8–9.  As the Court found, FOIA is "a fundamentally different disclosure law" than the Act that requires broader disclosures.  ECF No. 16, Memorandum Opinion at 30–31.

The Attorney General—once again—fails to address the fact that the Department of Justice's own post-Epstein Act responses to FOIA requests state that "the [Epstein Act] directed a much broader and less redacted release of the files than would have been made under the FOIA. Certain exemptions which may have been made under FOIA were not made in the [Epstein Act] release."  ECF No. 16, Memorandum Opinion at 31.  Not one of the cases cited by Defendant stands for the proposition that FOIA is the exclusive remedy for an agency's failure to comply with a different and broader disclosure statute.

## IV.    The Court Should Not Grant a Stay

Finally, Defendant asks the Court for a sixty-day stay of any relief ordered "so that the Solicitor General has time to consider whether further appellate review is warranted," or, "at minimum," a seven-day stay "to allow the Government to determine whether to seek emergency

appellate review." ECF No. 17, Def's Response to Order at 15 (cleaned up).  For the same reasons set forth in the Court's Memorandum Opinion, a stay is not warranted here:  Defendant has yet again "conceded that he is in violation of the Act"; Plaintiff again "is not requesting the immediate production of documents" that the Attorney General claims contain victim information; and "the Act required the Attorney General to produce the [foreign language] documents and public the [redaction] log by December 19, 2025—more than six months ago." *See* ECF No. 16, Memorandum Opinion at 48.

## V.      A Fine and *In Camera* Review Are Appropriate

To compel compliance with this Court's prior order, Plaintiff requests the Court grant this motion to enforce by entering the attached order and deny the Attorney General's request for a stay.

Dated: July 13, 2026                                          Respectfully submitted,

/s/ Brendan Ballou

**PUBLIC INTEGRITY PROJECT**
Brendan Ballou
D.C. Bar No. 241592
ballou@publicintegrityproject.org
(917) 684-3900

*Attorneys for Plaintiff Katie Phang*

## Certificate of Service

I hereby certify that this document will be served on the Defendant in accordance with Federal Rule of Civil Procedure 5.

/s/ Brendan Ballou
Brendan Ballou