**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Attorney General of the United States,<br><br>Defendant. | Case No. 1:26-cv-1417 (EGS) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR A PARTIAL STAY PENDING APPEAL OF THE COURT'S SEPTEMBER 16, 2026, ORDER**

Defendant Todd Blanche, in his official capacity as Attorney General of the U.S. Department of Justice ("Department"), respectfully moves this Court for an order partially staying its Order dated September 16, 2026. *See* ECF 43 (the "September 16 Order"). Specifically, Defendant asks the Court to stay pending appeal the portion of the September 16 Order that requires Defendant to "initiate review and production" of certain documents and to certify that Defendant has done so by September 24, 2026. *See id*. p. 19. Defendant maintains that Defendant will prevail on the merits of an appeal of the order. At a minimum, the order raises serious questions about a private litigant's ability to enforce the Epstein Files Transparency Act ("EFTA"). And if not stayed, the Court's mandatory preliminary injunction requiring review and production would severely irreparably harm Defendant by effectively destroying his right to secure meaningful appellate review. *Cf.* ECF 34 at 39 ("If people aren't satisfied with the judge's order, then you ought to appeal it."). To avoid that result and facilitate judicial review of the important legal issues presented, the Court should stay its order. In the alternative, the Court should temporarily stay its order so that Defendant can seek a stay pending appeal from the D.C. Circuit.

Defendant requests a ruling by 5 pm EST on Monday, September 21, so that it may move the D.C. Circuit for a stay before the September 24 deadline.

**BACKGROUND**

On April 27, 2026, Plaintiff filed this action under the Administrative Procedure Act ("APA"), challenging the Department's compliance with the EFTA. *See* ECF 1. On June 25, 2026, this Court entered an order styled as granting Plaintiff's motion for a preliminary injunction. ECF15. The June 25 order required Defendant to "either produce" certain documents "or show cause" why he cannot do so. *See* ECF 15 ¶¶ 1–3, 5. The June 25 order further required Defendant to "initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act, and provide notice to the Court and all parties that such review is underway[.]" *Id.* ¶ 4.

Following this order, the Court and parties engaged in a dialogue regarding Defendant's compliance with the EFTA and the order, with ongoing discussion as to all five categories of relief that Plaintiff sought. On July 2, 2026, Defendant filed a response to the Court's June 25 order. ECF 19. Defendant emphasized that he had not actually conceded any violations of the EFTA. *Id.* at 2. Defendant also emphasized that a party is not bound by the arguments it made at the preliminary-injunction stage as litigation proceeds. *Id.* at 3. Defendant reiterated that the Court lacks jurisdiction because the EFTA does not contain a right of action, and private parties cannot use the APA to enforce the EFTA because FOIA provides an adequate remedy. *Id.* at 7–8. And Defendant addressed each category of relief that Phang had sought and the Court's order had addressed. As most relevant here, as to the foreign language documents, Defendant explained that the Department had advised Congress that "it was not practicable for a first-level reviewer to determine the responsiveness of a foreign language document." *Id.* at 14 (quoting Department of

Justice, Epstein Files Transparency Act – Production of Department Materials at 5 (Jan. 30, 2026), *available at* https://www.justice.gov/opa/media/1426091/dl). And Defendant argued that the Court should not supplant Congress's acceptance of this explanation. *Id.* Phang filed a response arguing that the Court should hold Defendant in contempt for refusing to initiate review and production of the foreign language documents. ECF 20 at 3, 10. Defendant filed a reply explaining that Defendant had complied with the Court's order by providing explanations as to each category of relief. ECF 22 at 3.

At the August 13, 2026, hearing, when addressing the foreign language documents, the Court rejected Defendant's explanation that Congress had accepted the Department's decision not to engage in an impracticable process concerning such documents. ECF 34 at 29–30. At that point, the Court stated that it had "learned everything it's going to learn about the government's position vis a vis the foreign language documents." *Id.* at 32. The court also stated:

> [T]he defendant questions whether the Court's preliminary injunction [June 25] order is appealable because of the show cause aspect of it. I can resolve that issue when the Court rules on defendant's responses to the preliminary injunction order and *in camera* order and when the Court rules on the motion for stay of deadlines. So I understand your concern, and the court's going to address that.

*Id.* at 33.

On August 24, 2026, Defendant filed a "protective" notice of appeal as to the Court's June 25 order. ECF 35. The notice explained that "[i]n the view of the United States, whether the district court's . . . Order is appealable is inconclusive." *Id.* That is because the order contemplated that Defendant could show cause as to at least four categories of relief—and purported to require Defendant to initiate review and production of foreign language documents, but did not contain any deadlines. And the Court had continued to engage with Defendant on the question whether Defendant was actually required to do so, including at the August 13 hearing.

The Court then entered the September 16 Order, "address[ing] the parties' responses" to the June 25 order. *See* ECF 43. In the September 16 Order, in light of Defendant's compliance, the Court discharged portions of the June 25 order, while also ordering Defendant to produce further documents for *in camera review. See id*. The Department is currently preparing these documents for the Court's *in camera* review.

The September 16 order marked this Court's ultimate resolution of the foreign language documents issue. The Court described the parties' arguments as to whether the review and production of such documents was required. *See id.* at 5–6, 13–14. Ultimately, the Court agreed with Phang that such production was required and rejected Defendant's contrary argument. *See id.* at 16. But the Court also rejected Phang's argument that the Court should hold Defendant in civil contempt for not having already initiated review and production. The Court explained that not giving Defendant an express option to show cause in the original order "was appropriate at the time given his lack of response to Plaintiff's merits arguments." *Id.* at 14. But during the subsequent ongoing dialogue with the Court, "Defendant has now stated his rationale for not initiating the review, and so a civil contempt finding at this juncture would be premature." *Id.* at 15. The Court then "order[ed] Defendant to initiate review and production of foreign-language materials." *Id.* at 16. And unlike in its prior order, the Court required that Defendant "provide notice to the Court and all parties that such review is underway *by a date certain*" and set a deadline of September 24, 2026. *Id.* at 16, 19 (emphasis added).

**LEGAL STANDARD**

A party who moves for a stay pending appeal bears the burden of showing the balance of four factors weigh in favor of the stay: (1) the likelihood that it will prevail on the merits of the appeal; (2) the likelihood that it will be irreparably harmed absent a stay; (3) the prospect that

others will be harmed if the court grants the stay; and (4) the public interest in granting a stay. *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). "The movant is not always required, however, to demonstrate a high probability of success on the merits." *Ctr. For Int'l Env't L. v. Off. of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003). Instead, "[p]robability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or vice versa." *Cuomo*, 772 F. 2d at 974. "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). It follows that "the Court need not determine that it erred and will likely be reversed—an acknowledgment one would expect few courts to make; instead, so long as the other factors strongly favor a stay, such remedy is appropriate if 'a serious legal question is presented.'" *Loving v. I.R.S.*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013) (quoting *CREW v. Office of Admin.*, 593 F.Supp.2d 156, 160 (D.D.C. 2009)).

## ARGUMENT

Absent a stay pending appeal of the Court's September 16 order—only to the extent the order requires the immediate review and production of documents—Defendant faces severe irreparable harm. That is because once a document is produced, it cannot be *un*produced. So without a stay, Defendant will effectively lose his appeal rights. This case also raises (at least) serious questions on the merits. Whether Plaintiff lacks authority to enforce the EFTA (because she lacks both standing and a cause of action) and whether this Court applied the wrong standard (by purporting to award a *preliminary* injunction, but effectively giving Plaintiff full relief on the

merits as to the foreign language documents, without ever applying the correct standard to a claim seeking to compel agency action) are novel questions. Defendant believes it will prevail on the merits of those questions—but the D.C. Circuit should at least have a meaningful opportunity to address them. And the harm from depriving Defendant and the public of that opportunity far outweighs any countervailing interests. An expedited appeal would mitigate any harm to Plaintiff, and the public has an overwhelming interest in appellate resolution of the issues presented.

## I. <u>Defendant Will Suffer Severe Irreparable Harm Absent A Stay</u>

Defendant will suffer severe irreparable harm without a stay. The relief that the Court has awarded with respect to foreign language documents "is not merely to preserve the status quo," but is rather "affirmative injunctive relief" that requires the government to take action *altering* the status quo. *King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007) (Sullivan, J.). And when relief without a stay would have the effect of "*irreversibly* altering" the status quo, a stay may be warranted so that a party does not lose its right to a meaningful appeal. *See Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978) (emphasis added).

That is the case here, because the Court is ordering the government to initiate review and production of documents. The September 16 Order provides that "Defendant shall initiate review and production of foreign-language materials that may be subject to production under the EFTA and provide notice to the Court and all parties that such review is underway by no later than September 24, 2026." Of course, having to devote scarce resources to reviewing the documents is quintessential irreparable harm. More to the point, the "production" of these documents cannot be undone.

Accordingly, without a stay Defendant would be required "to release documents prior to having the opportunity to seek meaningful appellate review." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 173, 177 (D.D.C. 2007). The fact that disclosure" would all

but "moot" an appeal of this Court's order "create[s] an irreparable injury." *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers). "Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored," and "[f]ailure to grant a stay will entirely destroy appellants' rights to secure meaningful review." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979). That is exactly why "stays are routinely granted in FOIA cases." *Center for National Security Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) ("disclosure . . . would effectively moot any appeal"). This case is no different.

To be clear, Defendant has not delayed in seeking this stay or asserting this harm. When Defendant filed its "protective" notice of appeal of the Court's June 25 order to preserve its appellate rights, Defendant expressly noted that (in view of the ongoing dialogue with the Court) the appealability of the June 25 order was "inconclusive." ECF 35. The Court had already stated that it "understand[s] [the] concern" about appealability and would "resolve that issue" in a future order. ECF 34 at 33. The Court then did so in the September 16 Order just issued.

Regardless, Defendant had no desire to short-circuit the ongoing exchange of information with the Court. And the Court's September 16 Order makes clear that the Court continued to consider Defendant's arguments regarding the foreign language documents, but is now definitively ordering immediate review and production. Although Defendant disagrees with that outcome, Defendant appreciates both the Court's recognition "that agencies and courts together constitute a 'partnership' in furtherance of the public interest" and the Court's "collaborative spirit" in seeking to resolve the questions presented. *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851–52 (D.C. Cir. 1970) (Leventhal, J.). Such dialogue reflects the "interdependence" and "reciprocity" that is critical to "a workable government." *Youngstown Sheet & Tube Co. v. Sawyer*,

343 U.S. 579, 635 (1952) (Jackson, J., concurring). Defendant moves for a stay pending appeal now because that productive dialogue has concluded with respect to the foreign language documents, and Defendant now faces severe irreparable harm as a result.

## II. Defendant Is Likely To Succeed On The Merits (And At Least Raises Serious Questions)

Respectfully, the Court's order is legally erroneous. At a minimum, the order implicates several serious legal questions that warrant a stay—particularly given the severe irreparable harm that Defendant will suffer absent a stay. These "novel" "issues of first impression" weigh in favor of a stay. *Ctr. For Int'l Env't L.*, 240 F. Supp. 2d at 22 (citing *Holiday Tours*, 559 F.2d at 844–45).

### A. Plaintiff Lacks Authority To Enforce The EFTA

Plaintiff cannot privately enforce the EFTA. She lacks Article III standing. And she certainly lacks a cause of action. Indeed, Congress is considering amending the EFTA specifically to *add* the private right of action that is currently lacking.

#### 1. Plaintiff Lacks Article III Standing

Plaintiff has not asserted a particularized injury that differentiates her from the general public.

"The law of Art[icle] III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (quotation omitted). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes" and "do not exercise general legal oversight of the Legislative and Executive Branches." *Id.* at 423–24. "And courts may not exceed the bounds of their lawful authority simply because they may think another branch has exceeded its own." *National Park Serv. v. National Tr. for Hist. Preservation in the United States* , 609 U.S. ---, 2026 WL 2564318, at *3 (Aug. 31, 2026). Instead, to establish standing, a

plaintiff must prove (1) that it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations, footnote, citations, and quotation omitted).

Plaintiff seeks to enforce a statutory obligation to make certain information publicly available. But Congress has not provided Plaintiff with any particularized right to the information in question; instead, Congress has purported to create a general obligation to which the Executive Branch must adhere. Plaintiff's suit thus impermissibly advances a generalized grievance that the government is not complying with the law.

As the Supreme Court has explained, to satisfy Article III, a plaintiff must identify a particularized injury—as contrasted with a "generalized grievance" that is "undifferentiated and common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quotation omitted). The requirement of a particularized injury ensures that courts remain limited to carrying out their proper constitutional functions. That requirement is especially important because "[v]indicating the *public* interest (including the public interest in Government observance of the law) is the function of Congress and the Chief Executive," *Lujan*, 504 U.S. at 576—not the function of private litigants seeking recourse in the courts and thereby usurping the prerogative of the political branches to work out any disagreements in this area among themselves. Thus, the "generalized interest" in the government's following the law is "an abstract injury" that does not give rise to Article III standing. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208,

217 (1974); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (explaining that it would violate Article III if, "in the absence of any showing of concrete injury," courts "were to entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws" (quotation omitted)). Time and again, the Supreme Court has "reject[ed] the idea that generalized citizen interest is a sufficient basis for standing." *National Park Service*, 609 U.S. ---, 2026 WL 2564318, at *2.

For example, in *Richardson*, the plaintiff sought to enforce a provision of the Appropriations Clause requiring that "a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." 418 U.S. at 168 (quoting U.S. Const. art. I, § 9, cl. 7). The plaintiff contended that the Central Intelligence Agency was violating this provision by failing to provide adequate public disclosures, and that a statute authorizing the agency's more limited disclosures was unconstitutional. *See id.* at 168–69.

The Supreme Court held that the plaintiff lacked standing. At the outset, the Court held that the plaintiff's asserted injuries failed to "meet the standards for taxpayer standing set forth in" *Flast v. Cohen*, 392 U.S. 83 (1968). *Richardson*, 418 U.S. at 175. Then, and more relevant here, the Court turned to the plaintiff's contention that he had a "personal stake" in the case giving rise to standing because his inability to obtain the information impaired his efforts to "follow the actions of Congress [and] the Executive" and to "properly fulfill his obligations as a member of the electorate in voting for candidates." *Id.* at 176 (quotation omitted). As to that claimed injury, the Court concluded that the plaintiff's suit reflected "the kind of a generalized grievance" that does not satisfy Article III's requirements, because "the impact on [the plaintiff] is plainly undifferentiated and common to all members of the public." *Id.* at 176-77 (quotation omitted). And that was true, the Court concluded, even though the specific plaintiff had "a genuine interest" in

the federal government's spending, *id.* at 177—indeed, had explained how he intended to use the specific information he sought, *see id.* at 176.

In addition, in concluding that the plaintiff failed to identify a particularized injury, the Court recognized that the result of its decision might be that no plaintiff could "litigate this issue." *Richardson*, 418 U.S. at 179. But, the Court explained, "the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process." *Id.* "Any other conclusion," the Court continued, would undermine the Founders' determination that the courts are not intended as general forums to "oversee the conduct of the National Government by means of lawsuits." *Id.*; *see also TransUnion*, 594 U.S. at 423–24 ("Federal courts do not exercise general legal oversight of the Legislative and Executive Branches . . . ."). Instead, even though the Court has accepted "new categories of judicially cognizable injury," that acceptance "has not eliminated the basic principle that to invoke the judicial power the claimant must have a personal stake in the outcome" that constitutes "something more than [a] generalized grievance[]." *Richardson*, 418 U.S. at 179–80 (quotation omitted).

Thus, the Supreme Court has made clear that the asserted violation of an obligation to publicly disclose information does not, by itself, generate a particularized injury allowing any plaintiff who wishes to obtain or use that information to sue. The asserted violation of such an obligation imposed through statute can no more give rise to a particularized injury than would the violation of the constitutional obligation at issue in *Richardson*. *Cf. TransUnion*, 594 U.S. at 426 (making clear that "Article III standing requires a concrete injury even in the context of a statutory violation" (quotation omitted)).

The D.C. Circuit has thus properly applied similar principles in the statutory context when evaluating whether a particular plaintiff has standing to seek to compel an agency to disclose particular information. For example, as the D.C. Circuit has explained, some portions of FOIA reflect Congress's determination to vest members of the public who follow the statute's procedures for requesting records with an individualized right to the records requested. *See Prisology, Inc. v. Federal Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017) (explaining that FOIA "requires an agency to make nonexempt records" "available to any person upon that person's request" (quotation omitted)). That rights-creating scheme vests each individual who requests information with a particularized right to receive it, such that the requestor has Article III standing to challenge an agency's failure to provide the requested records.

By contrast, other provisions of FOIA generally direct federal agencies to make certain records "electronically available to the public." *Prisology, Inc.*, 852 F.3d at 1115. And as to those provisions, this Court has explained that the "alleged failure to publish" information that an agency is required by the statute to disclose does not—in the absence of some "particularized" "right to receive" the information—generate Article III standing. *Id.* at 1116-17; *cf. Campaign for Accountability v. U.S. Dep't of Just.*, 155 F.4th 724, 734 (D.C. Cir. 2025) (explaining that a plaintiff may have Article III standing to seek disclosure under these provisions only if "the plaintiff expressly requested (and was denied) access to the records"). Such a plaintiff does not "differentiate" herself "from the public at large"; as a result, all she may establish "is a harm common to everyone" that does "not stat[e] an Article III case or controversy." *Prisology, Inc.*, 852 F.3d at 1116–17; *see also id.* at 1116 ("[A] plaintiff alleging harm common to every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly

and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." (quotation omitted)).

In short, to satisfy the particularized injury requirement, a plaintiff seeking to compel an agency to obey an information-disclosure law must identify not merely a statute that imposes a general obligation on the agency but instead a statute that confers a particular right on the plaintiff. *Cf. Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 368 (2025) (describing the difference between statutes that "create individual rights" and those that simply "provide a benefit or protect an interest"). In the similar context of determining whether a Spending Clause statute creates enforceable individual rights, the Supreme Court has recently explained that courts should focus on whether "the law in question clearly and unambiguously uses rights-creating terms" and whether it "display[s] an unmistakable focus on individuals like the plaintiff." *Id.* (alterations and quotation omitted).

Here, Plaintiff cannot identify any particularized right to information given to her by the EFTA. Nothing in the EFTA evinces any desire by Congress to create private, enforceable rights. Indeed, the relevant section contains no rights-creating language, providing only that the Department "shall . . . make publicly available" covered documents—not that any party has a specific "right" to receive that information. EFTA § 2(a). Unlike other information-disclosure statutes, such as FOIA, the EFTA does not provide any mechanism for a private party to seek information that it believes ought to be made available. Nor does the EFTA provide a cause of action specifically permitting private parties to bring suit over any failure to provide such information.

Instead, to the extent the EFTA reflects a concern with any particular recipient of the information, the EFTA is concerned with Congress and the public writ large—not private parties.

The EFTA requires the Department to submit a report to Congress listing all categories of records released and withheld and a summary of redactions made and to publish a redaction log in the Federal Register. EFTA §§ 2(c)(2), 3. These accountability measures underscore that any dispute regarding compliance with Congress's directions is properly resolved among the political branches, rather than in Article III courts at the behest of private parties. *See Richardson*, 418 U.S. at 179. Thus, the EFTA is analogous to the constitutional provision at issue in *Richardson*: it reflects an obligation on the Executive Branch to make information available, but it does not provide plaintiffs with a right to that information. And without such a particularized right, Plaintiff cannot—like the plaintiff in *Richardson*—bring suit.

This conclusion is reinforced by Plaintiff's own descriptions of her interest in this suit, which confirm her attempt to enlist the judiciary to enforce the general public's interest in compliance with the law. Plaintiff has never claimed to have specifically sought the documents at issue for herself prior to bringing suit. Instead, Plaintiff has stated that she seeks "complete truth for survivors" and "the maximum possible level of transparency." ECF 9-1 at 13. This Court appeared to adopt Plaintiff's approach by citing "concerns with any potential judicial redress for victims" and the "high level of interest in the Epstein Files combined the upcoming midterm elections." ECF 16 at 39, 40. But standing "is not measured by the intensity of the litigant's interest." *National Park Service*, 609 U.S. ---, 2026 WL 2564318, at *3. And as all these descriptions make clear, Phang does not seek to vindicate any particularized right given to *her* by the EFTA; instead, she seeks to vindicate the public's generalized interest in the Department's compliance. That interest does not give rise to Article III standing.

Nor can Plaintiff remove this barrier to standing by asserting that she would use the information (to which she has no right) in particular ways or derive specific economic benefits

from it. In this respect, Plaintiff is no different from the plaintiff in *Richardson*, who also detailed the ways in which he would have used the information in question. 418 U.S. at 176. Indeed, setting aside the immaterial distinction between constitutional and statutory provisions, the lack of standing here follows *a fortiori* from *Richardson*: because it was a generalized grievance where an individual challenged an agency's failure to disclose its spending, it is necessarily a generalized grievance where Plaintiff challenges the Department's purported failure to disclose foreign language documents. At a minimum, there are serious questions about Plaintiff's Article III standing.

2. Plaintiff Lacks A Right Of Action To Enforce The EFTA

Regardless of any Article III issues, Congress did not provide a private right of action to enforce the EFTA—in the EFTA itself or via any other statute.

It is undisputed that the EFTA itself does not create a private right of action. And the Act's various accountability mechanisms—requiring congressional reporting and publication in the Federal Register—strongly suggest that Congress did not intend to enable every private citizen to supervise the Department's compliance. This Court nevertheless held that private citizens can enforce the EFTA through the APA. That is incorrect.

Under 5 U.S.C. § 704, judicial review under the APA is available only as to "final agency action for which there is no other adequate remedy in a court." This limitation "reflects Congress' judgment that 'the general grant of review in the APA' ought not [to] 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Just.*, 846 F.3d 1235, 1245–46 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).

Here, the Freedom of Information Act ("FOIA") provides an adequate remedy (as Congress was well aware when it omitted a right of action from the EFTA). *See Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (concluding in a variety of circumstances that "FOIA offers an 'adequate remedy' within the meaning of [the APA]"). Indeed, courts have held time and time again that "FOIA is the exclusive remedy for obtaining [purportedly] improperly withheld agency records." *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)); *see also CREW*, 846 F.3d at 1245–46 (concluding that FOIA provides an adequate remedy such that review under the APA is barred); *Harvey v. Lynch*, 123 F. Supp. 3d 3, 7–8 (D.D.C. 2015) ("[C]ourts in this Circuit have uniformly concluded that they lack jurisdiction over APA claims that seek remedies available under FOIA." (cleaned up)); *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (internal citations and quotations omitted) ("There is 'little doubt that FOIA offers an adequate remedy within the meaning of section 704,' . . . when litigants seek[]to 'gain access to . . . records.'" (alterations in original)); *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018) (dismissing APA claim for failure to state a claim because "FOIA offers an 'adequate remedy'"); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 75 (D.D.C. 2016) ("Courts in this circuit have [ ] uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA.") (internal quotation marks and citations omitted).

This Court held otherwise based on its conclusion that Plaintiff "likely would not be able to obtain" the unredacted documents she seeks because "they would likely be subject to [FOIA] exemptions" on disclosure. ECF 16 at 30. According to the Court, the EFTA "mandates broad disclosures that would be exempted under FOIA," *id.* at 32, so FOIA is not an adequate remedy.

That misunderstands what counts as an adequate remedy. Indeed, Chief Judge Boasberg has rejected this exact sort of reasoning. *See Chaberra*, 2018 WL 4762259, at *4. It does not matter that FOIA "exemptions might apply," because "[i]t is well settled that the alternate remedy must be only of the 'same genre'; it need not be identical." *Id.* (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the same genre")); *see also El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (similar). "The relevant 'genre' here is easy to identify: the disclosure of documents[.]" *Id.* "That is what Plaintiff seeks, and that is what FOIA provides," even if Plaintiff is not *entitled* to disclosure under FOIA. *Chaberra*, 2018 WL 4762259, at *4. Simply put, "the possibility that a plaintiff 'might fare worse' under FOIA does not entitle her to bring a claim under the APA." *Id.* (quoting *Greenpeace*, 311 F. Supp. 3d at 126.

The fact that the EFTA is a disclosure law makes no difference. Because the EFTA lacks a cause of action, Plaintiff must find one somewhere. She cannot do so in the APA, because "FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired." *CREW*, 846 F.3d at 1245.

That Congressional choice is especially stark here. Congress created all sorts of accountability mechanisms in the EFTA, but did not include a private right of action. Indeed, on July 15, 2026, in response to allegations that the Department has not fulfilled its obligations under the EFTA, Representatives Massie, Khanna, and Leger Fernandez introduced a proposed bill called the "Epstein Files Transparency Act II." *See* H.R. 9694. The proposed EFTA II would amend the EFTA to authorize State and local government officials and victims to "bring an action . . . against the Attorney General of the United States alleging an unlawful withholding, redaction,

delay, removal, concealment, failure to publish, failure to produce, or failure to justify a withholding or redaction of a record, document, communication, or investigative material described in section 2(a)" of the EFTA. *Id.* § 4(a)(1). "A victim alleging an unlawful withholding, redaction, delay, removal, concealment, failure to produce, failure to respond, or failure to justify a withholding or redaction of a record required to be provided . . . shall have standing to bring an action . . . in the United States District Court for the District of Columbia or in any United States district court located in the State in which the victim resides." *Id.* § 4(b)(3)(A). The press release describing EFTA II indicates that the primary purpose of the proposal is to "[c]reate[] a private right of action."[1]

In other words, Congress is considering enacting an "EFTA II" that *would* make the EFTA privately enforceable. There would be no need for such consideration if private parties could simply enforce the EFTA through the APA. And Congress has not enacted EFTA II. That strongly suggests that the EFTA is not privately enforceable.

Ignoring that Congressional choice would have problematic consequences. If other courts took the same erroneous approach, they would soon be flooded with piecemeal litigation over an untold number of files in the library while disincentivizing Congress from acting to address any lingering concerns. As in other instances, the better approach is for members of Congress to view the unredacted materials and engage with the Department, which would respond accordingly. That productive exchange would better serve the interests of transparency and (where appropriate) privacy than a flood of litigation and scattershot judicial enforcement.

---

[1] Ro Khanna, Press Release, *Khanna, Massie, Leger Fernandez, Merkley, Lujan Introduce the "Epstein Files Transparency Act II*" (Aug. 5, 2026), *available at* https://perma.cc/WL6A-QD6K.

**B. The Court Applied The Wrong Standard To Plaintiff's Claims**

Even assuming that Plaintiff's claims are reviewable, the court should not have ordered Defendant to initiate review and production of the foreign language documents. That order is effectively a final judgment. But this case is still at the preliminary-injunction stage. Such a judgment would be proper only after full merits development—during which the Court would need to apply the correct standard for claims seeking to compel agency action.

1. <u>The Court Should Not Have Granted A "Preliminary" Injunction That Gives Plaintiff Full Relief As To Foreign Language Documents</u>

It is improper for a preliminary injunction to "work to give a party essentially the full relief [s]he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969). Indeed, the Supreme Court has recently emphasized that preliminary injunctions are not supposed to "conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025).

For those reasons, "preliminary injunctions are ordinarily not awarded in FOIA cases" seeking disclosure of documents. *Ctr. for Pub. Integrity v. United States Dept of Def.*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019). As Judge McFadden has explained, such injunctions "stray[ ] from the preliminary injunction's usual role as a stopgap measure, generally limited as to time, and intended to maintain a status quo." *Org. of Am. Historians v. Off. Of Mgmt. & Budget*, 834 F. Supp. 3d 105, 110 (D.D.C. 2026). When a party purports to seek a preliminary injunction that requires the defendant to "release records," "[t]hat demand flouts the maxim that a preliminary injunction should not 'work to give a party essentially the full relief he seeks.'" *Id.* (quoting *Dorfmann*, 414 F.2d at 1173 n.13).

Here, by ordering the immediate production of the foreign language documents, with respect to those documents, the district court is giving Plaintiff "the full relief [she] seeks." *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 6-7 (D.D.C. 2015). If this Court wishes to enter what

amounts to a final judgment on that issue, it should do so only after further proceedings (such as the adjudication of cross-motions for judgment on the pleadings or for summary judgment). That independent error warrants a stay.

Indeed, if the court denies a stay pending appeal, this error will have the additional effect of preventing *any* court from addressing the full range of legal issues presented in this case. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties," and "where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981). It follows that "a party addressing only issues of preliminary relief should not ordinarily be bound by its abbreviated and only partially informed presentation of the merits." 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2950 n.14 (3d ed. Apr. 2026 update). Any other approach would undermine the distinction between a preliminary injunction and a final judgment on the merits. See *Camenisch*, 451 U.S. at 395 ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.").

Accordingly, Defendant has a right to raise additional arguments as this case proceeds past the preliminary-injunction stage. But given the mandatory, status-quo-altering nature of the preliminary injunction, Defendant faces the prospect of having to provide Plaintiff with all the relief that she seeks with respect to the foreign language documents even though the case has not proceeded beyond that stage. Defendant has not had the opportunity, for instance, to file a motion for judgment on the pleadings or motion for summary judgment raising the full panoply of arguments against Phang's claims. At a minimum, the Court should stay its order pending appeal so that Defendant has the chance to raise such arguments to the D.C. Circuit.

2. In Granting Plaintiff Full Relief, The Court Deprived Itself Of The Opportunity To Apply The Standard Governing Claims To Compel Agency Action

Relatedly, because this case has not proceeded to the merits stage, where the parties could air all pertinent arguments, the Court has not addressed the fact that Plaintiff's foreign-language arguments do not challenge any discrete agency action. Instead, Plaintiff is seeking to force the Department to do something that Plaintiff believes is required by law. But to the extent the APA contemplates actions to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), Plaintiff did not purport to assert such a claim here.

That distinction matters, because a different standard applies to actions under § 706(1). "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). This refers to "specific, unequivocal command[s] . . . about which an official ha[s] no discretion whatever." *Id.* (internal quotation marks and alterations omitted). "Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. One of the "principal purpose[s]" of this "limitation[]" is to "avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Id.* at 66. "If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Id.* at 66-67.

Here, the Court did not purport to apply these principles, because Plaintiff did not purport to assert a claim under § 706(1). But Plaintiff cannot seek to compel agency action under the guise

of a claim purporting to assert that some action is unlawful (and a correspondingly diminished standard of review). That is especially true given that the EFTA contains no specific command with respect to the review and production of foreign language documents specifically, which would require immense Department resources. Whether Congress intended the Department to engage in that effort is essentially a policy question best left to the political branches. Indeed, the Department advised Congress of its decision not to review and produce such documents because doing so is "not practicable." Department of Justice, *Epstein Files Transparency Act – Production of Department Materials* at 5 (Jan. 30, 2026).[2] And Congress took no action in response (even in the proposed EFTA II does not address such documents). Yet the Court is now poised to assume the role of supervisor of the review and production of such documents.

Additionally, in determining whether immediate action is legally required, courts do not merely assess whether the Defendant is compliant with a statutory obligation. Instead, resolving a § 706(1) claim is a "nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). In the D.C. Circuit, courts evaluate six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomm.s Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").

---

[2] *Available at* https://www.justice.gov/opa/media/1426091/dl.

Here again, as a result of the unique posture of these proceedings, the Court did not apply the *TRAC* factors. And those factors cut against Plaintiff. Although the EFTA contained a 30-day deadline for disclosure, the violation of a statutory deadline is not dispositive. "Equitable relief . . .does not necessarily follow a finding of violation: respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991). That is especially true in these circumstances, where Congress's reporting requirements clearly contemplated an ongoing process that would involve give-and-take between the branches. *See American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016) (deadlines should not be treated as mandatory when Congress appeared to contemplate additional decision-making following deadlines). Human health and welfare are not at stake in the relevant sense, and expediting action here—the review and production of thousands of documents that are in different foreign languages—will detract from other Department priorities. Although the *TRAC* factors are often pertinent in the context of agency delay (rather than withholding of agency action), at a minimum, the factors should be considered before the Department is required to *immediately* (by September 24) initiate review and production—the full relief that Plaintiff seeks.

## III. <u>Any Harm To Plaintiff Is Outweighed By Harm To Defendant, And The Public Interest Favors A Stay</u>

Issuance of a stay will not substantially injure Plaintiff. For one thing, she did not move for a preliminary injunction until nearly four months after the Department announced it had fulfilled its EFTA disclosure obligations. *See Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011). For another, Defendant will ask the D.C. Circuit to expedite consideration of the appeal to minimize any delay. *See Center for National Security Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting a stay in part because "the Government has promised to

seek expedited consideration from the Court of Appeals); *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("any delay will be minimized by our expedition in hearing [the] appeal"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).

The public interest also supports granting a stay. Absent a stay, Defendant will have to release the documents before Defendant's obligations under the EFTA are meaningfully adjudicated by this Court. The public has a strong interest in appellate resolution of the novel question whether the EFTA is privately enforceable.

For similar reasons, any harm to Plaintiff (at worst, a brief delay) and any public interest in disclosure is far outweighed by harm to Defendant absent a stay. *See e.g.*, *People for the Am. Way Found.*, 518 F. Supp. 2d at 177 (recognizing harm from stay given it had been more than three years since plaintiff's FOIA request but still finding such harm was outweighed by the finding that the government would suffer irreparable harm via disclosure). Even in cases where "the public has a strong interest in the prompt release" of documents because they "concern a highly controversial" issue subject to "ongoing debate," courts have recognized the irreparable harm to the government outweighs these considerations. *See id.* at 178. That is true even when "the next several months may be the only time in which plaintiffs are able to make meaningful use of the documents." *Ctr. For Int'l Env't L.*, 240 F. Supp. 2d at 23. But here, Plaintiff will be able to make meaningful use of the documents if the D.C. Circuit rules in her favor (and Defendant will seek a ruling expeditiously).

## IV. <u>In The Alternative, The Court Should Grant A Stay Pending The D.C. Circuit's Resolution Of A Motion For Stay Pending Appeal</u>

If the Court denies Defendant's request for a stay pending appeal, the Court should at least grant a stay that gives the D.C. Circuit a chance to consider a further motion for stay pending appeal. If this Court does not grant Defendant's motion for a stay pending appeal by 5pm EST on

Monday, September 21, Defendant plans to seek a stay from the D.C. Circuit before the Court's September 24 deadline (and to ask the D.C. Circuit to consolidate the two appeals filed in this action). To allow the D.C. Circuit to hear from both parties and fully consider the issues presented, this Court should temporarily stay its order pending the D.C. Circuit's resolution of that stay motion.

**CONCLUSION**

For the reasons set forth above, this Court should stay pending appeal the September 16 Order to the extent the Order requires Defendant to initiate review and production of foreign language documents. In the alternative, this Court should enter a temporary stay that enables Defendant to seek a full stay pending appeal from the D.C. Circuit.

In light of the pending deadlines in this case, Defendant respectfully requests that the Court rule on this motion by 5pm EST on September 21, 2026.

Respectfully submitted,

Dated: September 18, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

*/s/ ANDREW J. BLOCK*
Andrew J. Block
*Senior Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

*/s/ Andrew J. Block*
Andrew J. Block