**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE,<br>in his official capacity as Attorney General of the United States,<br><br>Defendant. | Civil Action No. 26-1417 (EGS) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL STAY**

## INTRODUCTION

With less than 72 hours' notice, Defendant Attorney General Blanche asks this Court to stay his deadline to comply with obligations that Defendant has already flouted for nearly three months. On June 25, the Court granted Plaintiff Katie Phang's May preliminary injunction motion and ordered Defendant to "initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act, and provide notice to the Court and all parties that such review is underway[.]" ECF No. 15 ("PI Order") at 2. Defendant conceded by his silence that foreign language documents are not exempt from the Epstein Files Transparency Act's ("Epstein Act") disclosure mandate. *See* Opp. to Mot. to Dismiss, ECF No. 12. Defendant's original deadline to comply and give notice thereof was July 2—81 days ago. PI Order at 1.

But Defendant ignored that deadline, leaving the Court with no choice but to issue a follow-on enforcement order last week mandating compliance by September 24. ECF No. 43 at 19 ("Enforcement Order"). Defendant now seeks a stay pending appeal of the pertinent portion of that Enforcement Order. (Notably, he did not seek any stay pending appeal of the Preliminary

Injunction Order—the order that actually imposed the obligation Defendant now seeks to stay.) Although he requested that stay after close of business on Friday night, Defendant nevertheless demands a ruling from the Court before close of business on Monday.

Defendant's litigation conduct is irregular, and his request for a stay should be denied on four independent grounds. *First*, Local Rule 7(m) requires that a party make a good-faith effort to confer before filing a nondispositive motion. Yet Defendant never sought to confer here, which by itself warrants denying the motion. *Second*, Defendant seeks to stay *the Enforcement Order* pending appeal, not the underlying PI Order. But the pertinent aspect of the Enforcement Order cannot be immediately appealed under 28 U.S.C. § 1291(a)(1), and so a stay pending that improper appeal should be denied. *Third*, Defendant's request for a stay of obligations he incurred three months ago is untimely and inappropriate. And *fourth*, Defendant's arguments fail to clear the high bar required to obtain the "extraordinary remedy" of a stay pending appeal. *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).

## ARGUMENT

### I. Defendant's failure to confer with Plaintiff alone warrants denying the request for a stay.

Local Civil Rule 7(m) requires that before filing any nondispositive motion, counsel shall confer with "opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." When filing such a motion, the filing "party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." *Id.* "If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) (citing *Alexander v. FBI*, 186 F.R.D. 185, 187

(D.D.C.1999)) (denying motion that did not satisfy Rule 7(m)); *Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 55 (D.D.C. 2024) (same).

Defendant failed to confer with Plaintiff or otherwise provide any notice that a motion for stay was forthcoming. Instead, he filed this motion at 8:46 p.m. on Friday, September 18, 2026, and demanded a ruling from the Court by 5:00 p.m. on Monday, September 21, 2026. While occasional procedural missteps are inevitable in civil litigation, Defendant is the Attorney General of the United States. His disregard for local rules and professional norms was particularly inappropriate here: The Jewish holiday of Yom Kippur, which two of Plaintiff's three counsel intended to observe, is this Sunday and Monday. Under settled precedent, Defendant's violation of Local Civil Rule 7(m) by itself suffices to justify denying his motion. *See, e.g.*, *Oceans v. U.S. Dep't of Interior*, No. 24-cv-141-RCL, 2024 WL 1885543, at *3 (D.D.C. Apr. 30, 2024) (Lamberth, J.) (denying motion for failure to meet conferral requirements of Local Rule 7(m)).

## II. The Enforcement Order cannot be stayed pending appeal because that Order is not immediately appealable.

Defendant moves to stay this Court's September 16 Enforcement Order pending appeal, ECF No. 46-1 at 1, but notably does not move to stay the underlying June 25 PI Order. Defendant's motion accordingly fails, as the relevant section of the Enforcement Order is not immediately appealable.

An order issuing a preliminary injunction is immediately appealable under 28 U.S.C. § 1291(a)(1). But subsequent orders *enforcing* a preliminary injunction are *not* immediately appealable, and the Court should not issue a stay pending a jurisdictionally deficient appeal. *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 2025 WL 621396, at *1 (D.C. Cir. 2025) (granting appellees' motion to dismiss the government's appeal of a district court order enforcing a temporary restraining order and denying the government's motion to stay the enforcement order

as moot); *see also, e.g., Am. Fed. of Gov't Emps. Local 2305 v. U.S. Dep't of Veterans Affairs*, 177 F.4th 1, 14 (1st Cir. 2026) ("In the ordinary course, even though a preliminary injunction is subject to interlocutory appeal under 28 U.S.C. § 1292(a)(1), an order *enforcing* a preliminary injunction is not." (emphasis in original)); *Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, 768 F.3d 1320, 1326 (11th Cir. 2014) ("We may review an order that modifies a previously entered injunction, but (and the caveat is critical here) an order clarifying or interpreting an existing injunction is not appealable.").

In this Circuit, a subsequent order relating to a preliminary injunction is appealable only where it "actually changes the legal relationship of the parties." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (quoting *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 844 (D.C. Cir. 2012)). In determining whether a subsequent order "actually changes the legal relationship of the parties," the critical inquiry is whether the party challenging the order "was *already* bound by the . . . injunction." *Id.* (emphasis in original).

Here, the September 16 Enforcement Order did not change the legal relationship between the parties with respect to DOJ's obligation to review and produce foreign-language documents. The operative foreign language direction in the Enforcement Order is identical to that in the original PI Order, save for a change in dates. *Compare* PI Order, ECF No. 15 at 2 *with* Enforcement Order, ECF No. 43 at 19. Accordingly, the Enforcement Order did not change the legal relationship between Plaintiff and Defendant—all it did was confirm that the Court meant what it said back in June and expected prompt compliance.

The Attorney General argues that the original PI Order was "inconclusive" because it "contemplated that Defendant could show cause as to at least four categories of relief" and did not

otherwise provide a "date certain" by which he had to provide notice that his review of the foreign-language materials was underway. Mot. at 3–4. But the PI Order did *not* invite Defendant to "show cause" with respect to the review of the foreign-language documents. To the contrary, it categorically commanded Defendant to begin such review and provide notice thereof, and, contrary to Defendant's assertions, it plainly included a date certain (July 2). That Defendant elected to disregard the Court's unambiguous command does not render that command "inconclusive."

In sum, the relevant aspect of the Enforcement Order did not change the legal relationship between the parties and is not immediately appealable. Because it is not appealable, Defendant's request for a stay pending appeal is inappropriate and should be denied.

**III. Defendant's request for a stay is egregiously late.**

Even if Defendant *could* immediately appeal the Enforcement Order (which he cannot), Defendant's stay motion, which comes nearly three months after he first incurred the obligation at issue, is gravely untimely. His delay provides an independent basis to deny the request for a stay, as courts in this District have long understood.

This Court issued its PI Order on June 25, 2026, which unambiguously imposed the obligation Defendant now seeks to stay. Defendant did not immediately appeal the PI Order, and Defendant has not sought a stay in connection with the PI Order. Instead, Defendant filed the instant motion 85 days later, and 25 days after his first notice of appeal. The Supreme Court has found that a seven-week (49 day) delay in filing a motion for a stay to be reason to deny such a motion. *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983); *see also Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) (denying motion for a stay after 20-day delay). Over a month more than that has passed here, rendering Defendant's belated motion time-barred. Moreover, Defendant previously sought to stay another part of this Court's PI Order

(the requirement to produce documents for in camera review) nearly a month ago, on August 27. ECF No. 37 at 2-3. He could have moved to stay the foreign-language document requirement at issue then, but chose not to. His deliberate delay here should not be excused.

Defendant's delay also diffuses his (unconvincing) claim to face impending irreparable harm. "The party requesting a stay bears the burden," *Nken v. Holder*, 556 U.S. 418, 427 (2009), and "self-imposed costs are not properly the subject of inquiry on a motion for stay." *Cuomo v. NRC*, 772 F.2d 972 (D.C. Cir. 1985). To the extent that the Attorney General now faces an imminent burden to comply with the law, and lacks adequate time to appeal, he has only himself to blame. *See Open Top Sightseeing USA v. Mr. Sightseeing*, LLC, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) ("An unexcused delay in seeking extraordinary injunctive relief implies a lack of urgency and irreparable harm." (cleaned up)); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (noting that delay of two months in seeking injunctive relief "militates against a finding of irreparable harm").

## IV. Defendant is improperly attempting to expand the record on appeal.

Stepping back from the individual reasons why Defendant's motion should fail, it is important to understand what the Attorney General appears to be trying to do here. Defendant has filed two notices of appeal—one for this Court's PI Order (ECF No. 35), and now one for this Court's Enforcement Order (ECF No. 44). The record on the first appeal will be limited to the briefing leading up to the PI Order. The second appeal—if it were allowed to proceed—would be limited to the issue of whether the Court properly *enforced* the PI Order, and the record would include subsequent briefing.

The Defendant is clearly unsatisfied with his briefing leading up to the initial PI Order because he keeps filing new motions—and raising new arguments—seemingly as they occur to

him. *See, e.g.*, Response to Order to Show Cause, ECF No. 19; Reply on Response to Order to Show Cause, ECF No. 22; Notice of Compliance, ECF No. 25; Motion to Stay, ECF No. 28. Clearly, Defendant wishes he had not forfeited various arguments, but his strategy, if permitted, would prevent lawsuits from ever resolving conclusively. *See Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003) ("Litigants normally must frame the issues in a case before the trial court rules. After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey. Against this backdrop, the district court scarcely can be said to have abused its discretion in refusing to reconsider its decision based on the plaintiff's newly raised argument."). That is exactly why courts narrowly construe 28 U.S.C. § 1292(a)(1) narrowly, lest we "turn the barrier against piecemeal appeals into Swiss cheese." *Wash. Metro. Area Transit Comm'n*, 776 F.3d at 9.

The Attorney General is a sophisticated litigant. He should not be permitted to appeal an unappealable enforcement order simply to shoehorn in arguments he should have made when he had the chance.

**V. Defendant has not otherwise established he is entitled to a stay.**

*Even if* Defendant had properly conferred with Plaintiff; *even if* the Enforcement Order were immediately appealable; and *even if* the request for stay had been timely, Defendant has failed to show he is entitled to a stay. "A stay pending appeal is an extraordinary remedy." *MMV v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020). "It is 'an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right,'" *id.* (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)), and "[t]he moving party bears the burden of justifying why the court should grant this extraordinary remedy." *Id.*

In considering whether to grant a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* The Attorney General fails on all of these factors.

**a. Success on the merits**

Defendant has repeatedly failed to show that he is likely to succeed in opposing the PI Order. Nor, in his latest brief, has he shown that he is likely to succeed his opposition to the Enforcement Order, which in any rate, as explained above, is not immediately appealable.

Nearly all of the arguments Defendant now makes are ones that he made and lost in prior briefing. *See* Opp. to Preliminary Injunction Mot., ECF No. 12 (raising cause of action and standing arguments); Response to PI Order, ECF No. 19 (same). Plaintiff refers back to her prior responses on these issues. *See* Preliminary Injunction Mot., ECF No. 9; Reply on Preliminary Injunction Mot., ECF No. 13; Response to Court Order, ECF No. 20.

To the extent Defendant raises new arguments on the substance of this case, those arguments are now waived, as "arguments raised for the first time in a reply brief are forfeited." *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025). Here, we are long past the point of reply briefs: the time for non-jurisdictional arguments was at the preliminary injunction stage. Nevertheless, despite the fact that Defendant has obviously waived these arguments by bringing them months too late, it is worth addressing two points.

*First*, the Attorney General continues to misstate the causes of action in this case. Repeatedly, he argues that the Epstein Files Transparency Act confers no private right of action. Mot. at 15-18. But Plaintiff did not bring her case under the Epstein Act, but rather the Administrative Procedure Act ("APA"). The practical difference is that private rights of action typically permit plaintiffs to seek damages, while the APA permits only injunctive relief.

Instead, and rather incredibly, Defendant argues that the Freedom of Information Act ("FOIA") is the exclusive means by which Plaintiff can seek files to be produced pursuant to the Epstein Act. Mot. at 16-17. But the Attorney General is saying different things to different people. As Plaintiff noted to this Court, those who request Epstein Act files under FOIA are told that, in fact, it is the Epstein Act that is the exclusive means to getting these files. ECF No. 14. When this Court demanded an immediate explanation for this discrepancy, the Attorney General never responded. *See* Minute Order, June 25, 2026.

*Second*, Defendant now makes an argument about the standard for relief under 5 U.S.C. § 706(1), Mot. at 21, which empowers this Court to "compel agency action unlawfully withheld or unreasonably delayed." Plaintiff raised the possibility of relief under Section 706(1) in her preliminary injunction briefing, ECF No. 9-1 at 22, 28, 30-31, but Defendant failed to make any argument in his opposition or reply. *See* Opp. to Preliminary Injunction Mot., ECF No. 12; Response to PI Order, ECF No. 19. Now he belatedly raises this concern, far too late to be considered.

Instead, the Attorney General appears to blame the Court for this error, saying that "as a result of the unique posture of these proceedings, the Court did not apply the" factors he failed to raise. Mot. at 23. But the factors for considering relief under Section 706 are the same at both the preliminary injunction and merits stages. Defendant has only himself to blame for failing to make this argument earlier, and should not be allowed to do so now. *See Hall v. CIA*, 538 F. Supp. 2d 64, 67 (D.D.C. 2008) ("defendant had waived that argument by not timely raising it before the district court.").

**b. Irreparable harm**

The Attorney General will suffer no irreparable harm by following the law. In its Enforcement Order, this Court directed Defendant to "initiate [1] review and [2] production of

foreign-language materials that may be subject to production under the EFTA and [3] provide notice to the Court and all parties that such review is underway by no later than September 24, 2026." ECF No. 43, Enforcement Order at 19.

The Attorney General asserts without support that merely reviewing the documents is an irreparable harm. Mot. at 6 ("Of course, having to devote scarce resources to reviewing the documents is quintessential irreparable harm."). But requiring the government to spend resources to comply with the law is not an irreparable harm. *Center For Biological Diversity, v. U.S. Office Of Surface Mining Reclamation and Enforcement, et al.*, No. CV 23-3343 (SLS), 2026 WL 2415735, at *4 (D.D.C. Aug. 19, 2026) ("administrative burdens and staffing limitations fail to constitute irreparable harms in this manner." (internal quotations omitted)); *see also League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (there is "no public interest in the perpetuation of unlawful agency action.").

Nor does the mere prospect of producing documents pursuant to the Epstein Act constitute an irreparable harm. The Court is not directing that all foreign language documents be produced, but rather only those "subject to production under the EFTA." ECF No. 43, Enforcement Order at 19. Moreover, the Court has, for now, left it to Defendant's discretion  which documents in fact must be produced. This is different from the Freedom of Information Act cases that Defendant cites, in which the district courts directed specific documents to be produced without discretion. *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (directing the production of a specific "Vaughn" index); *Providence J. Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 889 (1st Cir. 1979) (directing the production of specific FBI documents); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 173, 177 (D.D.C. 2007) (directing the production of certain categories of Department of Education documents); *Ctr. For Nat'l Sec. Stud. v. U.S.*

*Dep't of Just.*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (directing the production of a list of the identities of all individuals detained in connection with the investigation of the September 11, 2001 terrorist attacks). Crucially, in the cases Defendant cites, the government had no discretion about what to produce. Here, the Attorney General still does, and thus suffers no irreparable harm in complying with the Court's order.

**c. Substantial injury to plaintiff**

In contrast to Defendant, a stay of the Enforcement Order now would cause substantial injury to Plaintiff. Katie Phang is a journalist who has covered the Epstein scandal for years, has interviewed survivors, and has published dozens of stories on the subject. Memorandum in Support of Mot. for Preliminary Injunction, ECF No. 9-1 at 20. Her posts and videos covering the Epstein saga have generated significant web traffic and revenue, and she faces harm to her profession and livelihood if she cannot get the information to which she is entitled. *Id.* at 21.

The Court accepted this argument in granting Phang's motion for preliminary injunction. ECF No. 16 at 21-28. In his latest motion, Defendant raises again the arguments that this Court rejected, namely that Phang suffered a "generalized grievance that is undifferentiated and common to all members of the public." Mot. at 9 (internal quotations omitted). Phang has explained in detail the basis for her standing, and the irreparable harm she will face as a journalist by the Attorney General's failure to follow the law. Complaint, ECF No. at ¶¶ 42-47; Memorandum in Support of Mot. for Preliminary Injunction, ECF No. 9-1 at 17-22, 31-34.

Nevertheless, it is helpful to distinguish the cases Defendant now cites. *United States v. Richardson* concerned a taxpayer who sued to uncover the expenditures of the Central Intelligence agency. 418 U.S. 166 (1974). His "personal stake" in the matter was limited to his interests as a taxpayer and voter. *Id.* at 176. *Prisology, Inc. v. Federal Bureau of Prisons* is even more stark: there the plaintiff failed to allege any injury at all. 852 F.3d 1114, 1116 (D.C. Cir. 2017)

Phang's stake in the present litigation is very different, and she is not merely an undifferentiated member of the public. Her profession and her livelihood depends in part on review and, as appropriate, release of the information at issue in the Enforcement Order. In this way, she experiences precisely the kind of harm that Congress sought to prevent by passing the Epstein Files Transparency Act. *See CREW v. OMB*, 791 F. Supp. 3d 29, 45 (D.D.C. 2025) (describing standard for standing for informational injuries). Defendant has presented no new evidence to make this Court reconsider its prior conclusions on the issue.

**d. Public interest**

As this Court previously explained, the public interest in this case weighs in favor of the government both releasing the relevant files and complying with the law. ECF No. 16 at 40 ("Here, the current high level of interest in the Epstein Files combined with the upcoming mid-term elections amounts to a circumstance that itself constitutes irreparable harm, especially where the Attorney General has not disputed that he is in violation of the Epstein Act.").

To the extent that Defendant makes any argument about the public interest—and it is not clear that he does—it is that "[i]t is improper for a preliminary injunction to work to give a party essentially the full relief [s]he seeks on the merits." Mot. at 19 (internal quotations omitted) (citing *Org. of Am. Historians v. OMB,* 834 F. Supp. 3d 105, 110 (D.D.C. 2026)). The primary case on which Defendant relies, however, *Organization of American Historians*, concerned the expedited processing of the entirety of plaintiffs' FOIA requests. Here, the Court has directed Defendant to follow the clear directive of the law, which Defendant does not dispute with respect to foreign language documents. And unlike *Organization of American Historians*, this directive concerns only small portion of Plaintiff's overall requested relief, and as such is intended "'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Id.* (quoting Sherley v.

Sebelius, 689 F.3d 776, 781–82 (D.C. Cir. 2012)). A preliminary directive to follow this small portion of the law while the litigation is pending is clearly proper.

## CONCLUSION

For the reasons above, Defendant's motion for a stay should be denied.

Dated: September 21, 2026

Respectfully submitted,

/s/ Brendan Ballou

**Public Integrity Project**
Brendan Ballou
D.C. Bar No. 241592
Emily Gilman
D.C. Bar No. 1740641
Samuel T. Ward-Packard
D.C. Bar No. 90005484
ballou@publicintegrityproject.org
emily@publicintegrityproject.org
sam@publicintegrityproject.org
(240) 473-3259

*Attorneys for Plaintiff Katie Phang*