U.S. Department of Justice

Office of the Deputy Attorney General

The Deputy Attorney General

*Washington, D.C. 20530*

December 19, 2025

Members of Congress:

I write to notify you that today the Department of Justice is producing hundreds of thousands of pages of responsive materials in compliance with the Epstein Files Transparency Act (the Act). Under the leadership of President Donald J. Trump and Attorney General Pam Bondi, this unprecedented disclosure highlights our commitment to following the law, being transparent, and protecting victims. President Donald J. Trump signed the Act into law on November 19, 2025. In compliance with the Act, the Department of Justice—at the direction of the Attorney General—has been working to ensure that all responsive materials have been identified, collected, uploaded, reviewed, and publicly produced within 30 days as required under the Act. *See* Sec. 2(a).

This letter will summarize the Department's historic efforts and disclose specific details regarding the review and production process. Never in American history has a President or the Department of Justice been this transparent with the American people about such a sensitive law enforcement matter. Democrat administrations in the past have refused to provide full details of the Jeffrey Epstein saga. But President Trump, Attorney General Bondi, and FBI Director Patel are committed to providing full transparency consistent with the law.

As part of the collection and review process, the Department is continuing to review additional documents and other items for potential responsiveness. Just this week one of the Department's components provided additional victim information requiring updated review of materials, and in the last few weeks multiple courts have granted the Department's unsealing motions, requiring detailed review of thousands of pages of investigative and grand jury material. Several components have just provided documents this week. Because of the volume of the material and the requirement that every page of every document be reviewed for potential redactions under the Act, final stages of review of some material continue. A district court judge in the Southern District of New York separately imposed additional requirements on the United States Attorney for the Southern District of New York, adding additional layers of review to minimize the risk of inadvertent production of protected victim information. I anticipate this ongoing review being completed over the next two weeks.

<u>The Review Process</u>

Today, the Department is producing hundreds of thousands of pages of documents responsive to the Act. This disclosure highlights President Trump's, Attorney General Bondi's, and Director Patel's absolute commitment to transparency consistent with the law. Prior to the

passage of the Act, the Department conducted a thorough review, including digital searches of databases, hard drives, and network drives as well as searches of real and personal properties. As noted in the July 6 Memorandum, this review did not reveal credible evidence that Epstein blackmailed prominent individuals, nor did it uncover evidence that could predicate an investigation against uncharged third parties. Because of various protective orders, grand jury secrecy laws, and Department practice, limited additional materials have been provided prior to this production. Recently, in addition to the Act being signed by President Trump, judges in the Southern District of Florida and the Southern District of New York authorized the Department to produce materials previously prohibited from production by protective orders and grand jury secrecy laws.

After the Act became effective, the Department prepared a Review Protocol for its attorneys to use while reviewing materials to determine whether an item is responsive under the Act and, if so, whether any information contained in those materials required redactions or withholding as allowed under the Act and other applicable law. *See* Sec. 2(c)(1); *see also* 5 U.S.C. § 552a (the Privacy Act of 1974).

The Review Protocol is consistent with the Act and instructed attorneys to redact or withhold material that (1) contained personally identifiable information of victims; (2) depicted or contained child sexual abuse materials (CSAM) as defined under 18 U.S.C. § 2256 and prohibited under 18 U.S.C. §§ 2252–2252A; (3) would jeopardize an active investigation or prosecution; (4) depicted images of death, physical abuse, or injury; and/or (5) properly classified national defense or foreign policy information. *See* Sec. 2(c)(1)(A)–(E). The Review Protocol is being produced as part of the Department's response under the Act and is attached to this letter.

In addition to the bases for withholding or redacting under the Act, the Department has withheld and redacted a limited amount of information otherwise covered by various privileges, including deliberative-process privilege, work-product privilege, and attorney-client privilege. These privileges are based in common law—not statutes—and Congress is fully aware of them. *See* Fed. R. Evid. 501; *Trammel v. United States*, 445 U.S. 40, 47 (1980) ("In . . . enacting Rule 501, Congress manifested an affirmative intention not to freeze the law of privilege."). It is a long-held principle that Congress speaks clearly when it intends to abrogate a common law principle or privilege. *See Bassett v. United States*, 137 U.S. 496, 505–06 (1890) ("[B]efore any departure from the rule affirmed through the ages of the common law—a rule having its solid foundation in the best interests of society—can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit.").

Although the Act broadly categorizes items required to be produced, the Act does not include language expressly requiring the Department to produce privileged materials. *See* Sec. 2(a); *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("Congress expresses its intentions

through statutory text passed by both Houses and signed by the President."). A privilege log will be produced in due course as required under the Act.

Protecting victims is of the highest priority for President Trump, the Attorney General, the Federal Bureau of Investigation, and the Department of Justice. As part of the review and production, the Department solicited counsel for any victims of Jeffrey Epstein and invited counsel to provide us with names of victims, whether previously identified or not. This process resulted in over 1,200 names being identified as victims or their relatives. The Department has redacted reference to such names. In addition to redacting the names of these victims, the Department has also redacted and is not producing any materials that could result in their identification.

The materials on the Department's website include those identified as responsive under the Act. Documents with Bates numbers "EFTA" followed by 8 digits are those identified during the process described herein after the Act's enactment. If a Bates number is missing from this category of documents means that the Department recently identified that missing document as containing information that the Act requires to be withheld or redacted. An updated version of that document with the victim or other information under the Act redacted will be uploaded to the website expeditiously. In addition, the website contains materials that the Department had in its possession that were previously available publicly. This second category of documents do not contain Bates numbers.

To ensure that all potentially responsive materials were identified, collected, and reviewed, the Department instructed all components with potentially responsive materials to produce those materials to the Justice Management Division (JMD). JMD, which serves as the management arm of the Department as well as Department's Chief Information Office, then uploaded materials it received onto a discovery platform so that attorneys could review for responsiveness and mark appropriate information for redactions as required under the Act. Materials that could not be uploaded onto the discovery platform because of its size or other compatibility issues were reviewed and redacted in their native format.

Potentially responsive materials were identified and collected from Main Justice, Federal Bureau of Investigation (FBI), Bureau of Prisons (BOP), Office of the Inspector General (OIG), Executive Office for United States Attorneys (EOUSA), the United States Attorney's Office for the Southern District of New York (USAO-SDNY), and the United States Attorney's Office for the Southern District of Florida (USAO-SDFL).

To ensure the maximum compliance possible under the Act in a 30-day window, JMD had its employees working on ingesting and uploading the voluminous materials so that Department attorneys could conduct their review on the discovery platform.

In collecting and providing materials to JMD to ingest and upload for attorney review, Department components erred on the side of over-collecting materials to ensure full transparency

in compliance with the Act. As a result of these broad collections, the vast majority of the items that components provided to JMD were non-responsive under the Act.

The review team consisted of more than 200 Department attorneys working to determine whether materials were responsive under the Act and, if so, whether redactions or withholding was required. The review had multiple levels. First, 187 attorneys from the Department's National Security Division (NSD) conducted a review of all items produced to JMD for responsiveness and any redactions under the Act. Second, a quality-control team of 25 attorneys conducted a second-level review to ensure that victim personally identifying information was properly redacted and that materials that should not be redacted were not marked for redaction. The second-level review team consisted of attorneys from the Department's Office of Privacy and Civil Liberties (OPCL) and Office of Information Policy (OIP)—these attorneys are experts in privacy rights and reviewing large volumes of discovery. After the second-level review team completed its quality review, responsive materials were uploaded onto the website for public production as required under the Act. *See* Sec. 2(a). Finally, Assistant United States Attorneys from the Southern District of New York reviewed the responsive materials to confirm appropriate redactions so that the United States Attorney for the Southern District of New York could certify that victim identifying information was appropriately protected.

Consistent with the Act, the Department attorneys reviewed all materials produced by its components for responsiveness. Specifically, the Department attorneys reviewed and marked as responsive "all unclassified records, documents, communications, and investigative materials . . . that relate to: (1) Jeffrey Epstein including all investigations, prosecutions, or custodial matters; (2) Ghislaine Maxwell; (3) flight logs or travel records . . . for any aircraft, vessel, or vehicle owned, operated, or used by Jeffrey Epstein or any related entity; (4) individuals, including government officials, named or referenced in connection with Epstein's criminal activities, civil settlements, immunity or plea agreements, or investigatory proceedings; (5) entities . . . with known or alleged ties to Epstein's trafficking or financial networks; (6) any immunity deals, non-prosecution agreements, plea bargains, or sealed settlements involving Epstein or his associates; (7); internal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates; (8) all communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files; [and] (9) documentation of Epstein's detention or death, including incident reports, witness interviews, medical examiner files, autopsy reports, and written records detailing the circumstances and cause of death."

Consistent with the Act, the Department will provide an explanation for any redacted and withheld materials as part of this production. *See* Sec. 2(c)(2).

<u>Today's Production</u>

The production includes portions of the FBI New York investigative file for the 2018 Epstein criminal case for child sex trafficking and 2019 Maxwell criminal case; the FBI Miami investigative file for the 2006 Epstein criminal case for child prostitution; the FBI Miami investigative file for the 2009 Alfredo Rodriguez criminal case for obstruction of justice; the FBI New York investigative file for the 2019 Epstein death investigation; the FBI New York investigative file for a threat made against one of Epstein's victims; investigative materials underlying OIG's June 2023 report into Epstein's death; BOP materials related to Epstein's custody at Metropolitan Correctional Center New York (MCC New York), including visitor logbooks, commissary records, and count slips; grand-jury materials from the SDNY Epstein criminal case, SDNY Maxwell criminal case, and SDFL Epstein criminal case; court records from civil and criminal cases involving Epstein, Maxwell, and the Epstein estate; and materials produced by the DOJ in various cases brought under the Freedom of Information Act (FOIA). All produced materials will be available at justice.gov/epstein.

The materials produced today are in addition to those previously produced by this Department of Justice, including the following:

- On July 6, 2025, the Department released over 20 hours of video footage showing the outer cell area of the night Epstein committed suicide.
- On August 22, 2025, the Department released over 500 transcript pages and 6 hours of audio recordings of the Deputy Attorney General's interview of Ghislaine Maxwell.
- On August 22, 2025, the Department produced to Congress over 33,000 pages of documents responsive to a subpoena requesting documents related to the Epstein and Maxwell cases.

## Conclusion

This Department's commitment to transparency and compliance with the law has been historic. Even before the Act's passage, never before has there been a Department-wide effort to provide this level of transparency for a criminal case that ended less than 7 years earlier. The Attorney General is grateful to the Department attorneys, staff, and employees who worked long hours to ensure that the Department complied with the Act.

The Act requires the Department to publicly produce all responsive materials within 30 days of its enactment. *See* Sec. 2(a). The Department has worked diligently to meet the Act's deadline. But the volume of materials to be reviewed—many of which continue to be produced to JMD—means that the Department must publicly produce responsive documents on a rolling basis. The Department's need to perform rolling productions is consistent with well-settled caselaw that statutes should be interpreted to not require the impossible. *See Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 350 (1937); *see also McNeil v. Time Ins. Co.*, 205 F.3d 179, 187 (5th Cir. 2000) ("It is a flawed and unreasonable construction of any statute to read it in a manner that demands the impossible.").

Similarly, in response to court orders granting motions to unseal grand-jury materials and materials covered by protective orders, USAO-SDNY produced 3.6 million records to the Department. Many of these materials are duplicative of materials previously produced to the Department by the FBI. Department attorneys continue to review these large productions from USAO-SDNY to confirm their duplicity. Moreover, the United States Attorney for the Southern District of New York was given access to today's production to allow him to make appropriate certifications as directed by a judge in the Southern District of New York. Any non-duplicated, responsive materials will be produced forthwith.

The Department will continue to follow the Review Protocol and add to the public website materials that are responsive under the Act, and the Department will inform Congress when that review and production are complete by the end of this year. The Department's commitment to transparency, following the law, and protecting all victims under the leadership of President Trump, Attorney General Bondi, and FBI Director Patel will never waver.

Sincerely,

Todd Blanche

Deputy Attorney General