**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATIE PHANG,<br><br>*Plaintiff*,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Attorney General of the United States,<br><br>*Defendant*. | Case No. 1:26-cv-01417 (EGS) |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

PROCEDURAL HISTORY ........................................................................................................ 4

LEGAL STANDARD ................................................................................................................. 5

ARGUMENT ............................................................................................................................. 6

I. Plaintiff lacks authority to demand the relief she seeks under the EFTA. .......................... 6

*a. The EFTA does not provide Plaintiff with a private right of action.* ............................... 6

*b. Plaintiff lacks Article III standing because she has no individualized or particularized injury differentiating her from any member of the general public.* .......................................11

II. Plaintiff's claims fail as a matter of law because she does not meet the legal standard required to compel agency action under the APA. ................................................................... 19

III. Defendant has not violated the EFTA by applying redactions. ......................................... 23

IV. The EFTA does not require the production of foreign-language documents. ................... 24

V. The Department has fulfilled its reporting requirements under the EFTA. ....................... 25

VI. Plaintiff has failed to meet the high burden of an *Ultra Vires* claim. ............................... 26

VII. Plaintiff's claim under the Declaratory Judgment Act fails as a matter of law. ............... 27

CONCLUSION .......................................................................................................................... 28

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Am. Forest Res. Council v. United States*,
77 F.4th 787 (D.C. Cir. 2023) ........................................ 24

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016)........................................ 22

*Anglers Conservation Network v. Pritzker*,
809 F.3d 664 (D.C. Cir. 2016)........................................ 20

*Bassett v. United States*,
137 U.S. 496 (1890)........................................ 2, 3

*Block v. Community Nutrition Inst.*,
467 U.S. 340 (1984)........................................ 7

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)........................................ 8

*Campaign for Accountability v. U.S. Dep't of Just.*,
155 F.4th 724 (D.C. Cir. 2025) ........................................ 15

*Cause of Action Inst. v. Eggleston*,
224 F. Supp. 3d 63 (D.D.C. 2016) ........................................ 9

*Chaverra v. Immigr. & Customs Enf't*,
Civ. A. No. 18-289 (JEB), 2018 WL 4762259 (D.D.C. Oct. 2, 2018)........................................ 8, 9

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm.*,
993 F.3d 880 (D.C. Cir. 2021)........................................ 20

*Citizens for Responsibility and Ethics in Washington ("CREW") v. De*p't of Just.,
846 F.3d 1235 (D.C. Cir. 2017)........................................ 8, 10

*Covad Commc'ns Co. v. Revonet, Inc.*,
250 F.R.D. 14 (D.D.C. 2008) ........................................ 5

*Dale v. Exec. Office of the President*,
164 F. Supp. 2d 22 (D.D.C.2001) ........................................ 6

*DCH Reg'l Med. Ctr. v. Azar*,
925 F.3d 503 (D.C. Cir. 2019)........................................ 26

*Diamond v. Charles*,
476 U.S. 54 (1986)........................................ 19

*Elec. Priv. Info. Ctr. v. IRS*,
910 F.3d 1232 (D.C. Cir. 2018)........................................................................................ 8

*El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*,
396 F.3d 1265 (D.C. Cir. 2005)........................................................................................ 9

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)........................................................................................................ 24

*FedEx v. Dep't of Comm.*,
39 F.4th 756 (D.C. Cir. 2022) ......................................................................................... 26

*Flast v. Cohen*,
392 U.S. 83 (1968).......................................................................................................... 13

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009).......................................................................................... 9

*Greenpeace, Inc. v. Dep't of Homeland Sec.*,
311 F. Supp. 3d 110 (D.D.C. 2018)............................................................................... 8, 9

*Griffith v. Fed. Lab. Rels. Auth.*,
842 F.2d (D.C. Cir. 1988)................................................................................................ 27

*Harvey v. Lynch*,
123 F. Supp. 3d 3 (D.D.C. 2015) ...................................................................................... 8

*In re Barr Laboratories, Inc.*,
930 F.2d 72 (D.C. Cir. 1991)........................................................................................... 22

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771 (D.C. Cir. 2002)........................................................................................... 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................................ 12

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003)...................................................................................... 22

*Medina v. Planned Parenthood S. Atl.*,
606 U.S. 357 (2025)........................................................................................................ 16

*Morton v. Mancari*,
417 U.S. 535 (1974)........................................................................................................ 24

*National Park Serv. v. National Tr. for Hist. Preservation in the United States*,
609 U.S. ---, slip op. (2026)............................................................................... 12, 13, 17

*Norton v. S. Utah Wilderness Alliance*,
542 U.S. 55 (2004) ........ 19, 20

*Nyunt v. Chairman, Broad. Bd. of Governors*,
589 F.3d 445 (D.C. Cir. 2009) ........ 26

*Peters v. Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) ........ 6

*Prisology, Inc. v. Federal Bureau of Prisons*,
852 F.3d 1114 (D.C. Cir. 2017) ........ 15

*Ray v. Fed. Bureau of Prisons*,
811 F. Supp. 2d 245 (D.D.C. 2011) ........ 8, 27

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) ........ 13

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 13

*Swanson Grp. Mfg. LLC v. Jewell*,
790 F.3d 235 (D.C. Cir. 2015) ........ 18

*Telecommunications Research & Action Center v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........ 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 11, 14

*U.S. Dep't of Defense v. FLRA*,
510 U.S. 487 (1994) ........ 7

*United States v. Erika, Inc.*,
456 U.S. 201 (1982) ........ 7

*United States v. Fausto*,
484 U.S. 439 (1988) ........ 7, 24

*United States v. Richardson*,
418 U.S. 166 (1974) ........ *passim*

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982) ........ 17

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ........ 7

**Constitutions**

U.S. Const. art. I........................................................................................................ 13

**Statutes**

5 U.S.C. § 552a........................................................................................................ 23

5 U.S.C. § 701(a)(1)........................................................................................................ 6

5 U.S.C. § 704........................................................................................................ 8

5 U.S.C. § 706(1)........................................................................................................ 19

Epsstein Files Transparency Act, Pub. L. No. 119-38 ........................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................................................ 5

**Other Authorities**

5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.) ........................................................................ 5

Report Under Public Law 119-38, 91 Fed. Reg. 55356 (Aug. 27, 2026) ................................ 4, 26

Epstein Files Transparency Act II, H.R. 9694 ........................................................10, 11

## INTRODUCTION

Defendant Todd Blanche, in his official capacity as Attorney General of the U.S. Department of Justice ("Department"), respectfully moves this Court for a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

On November 19, 2025, Congress passed, and President Trump signed into law, the Epstein Files Transparency Act ("EFTA"), which directed the Attorney General to release certain unclassified records in the Department's possession. The Department quickly went to great lengths to comply with its statutory obligations under the EFTA, while also applying appropriate redactions to protect victim identities and other sensitive or privileged information.

The Department further released a summary of all withheld documents and its legal basis for doing so, submitted required documentation to Congress under Sections 2 and 3 of the EFTA, and later published notification in the Federal Register to fulfill its additional obligations under Section 2.

Plaintiff Katie Phang brings this lawsuit challenging the Department's compliance the EFTA—thereby inserting herself as a private party into the middle of Congress' statutory scheme. But Congress did not provide a right of action in the EFTA, and it is not otherwise privately enforceable. Although Plaintiff purports to assert claims under the Administrative Procedure Act ("APA"), such claims are precluded by the statutory scheme (and APA review would be unavailable anyway because the Freedom of Information Act ("FOIA") provides an adequate remedy). Instead, Congress apparently determined that the issues Plaintiff raises should be resolved through the political process, as aided by the EFTA's congressional oversight and reporting provisions. For the same reasons, Plaintiff's claims of an *ultra vires* agency action and a violation of her rights under the Declaratory Judgment Act likewise fail. And Plaintiff plainly

lacks standing to seek the extraordinarily broad remedies she requests (such as the appointment of a special master to supervise the Department's general compliance with the EFTA).

Beyond those threshold issues, Plaintiff does not, and as a matter of law cannot, meet the high bar to *compel* agency action. Her declaratory judgment claim and ultra vires claim similarly fail. Accordingly, the Court should enter judgment for the Defendant.

## BACKGROUND

On November 19, 2025, Congress enacted the Epstein Files Transparency Act, Pub. L. No. 119-38, with near-unanimous support from both chambers of Congress. The EFTA directs the Attorney General to make all unclassified records, documents, communications, and investigative materials in the Department's possession publicly available subject to certain exceptions. *See id.* at § 2(a). The law gives the Attorney General the discretion to withhold or redact certain categories of information, *id*. § 2(c)(1)(A)–(E), subject to written justification, *id*. § (2)(c)(2). The EFTA also mandates certain reporting requirements. *Id*. § (3).

As the Department's efforts to rapidly fulfill its obligations under the EFTA unfolded, then-Deputy Attorney General Todd Blanche issued a letter to Congress stating that the Department was "producing hundreds of thousands of pages of responsive materials in compliance with" the EFTA. Letter from Todd Blanche, Deputy U.S. Att'y Gen., to Members of Congress at 1 (Dec. 19, 2025), ECF No. 50-2. The letter explained that "the Department is continuing to review additional documents and other items for responsiveness" and would make withholdings and redactions consistent with section 2(c) of EFTA and applicable privileges, which EFTA did not abrogate. *Id*. at 2–3 (explaining that it is a "long-held principle that Congress speaks clearly when it intends to abrogate a common law principle or privilege" (citing *Bassett v. United States*, 137 U.S. 496, 505–06 (1890)). The letter also explained that "[a] privilege log will be produced in due course as required under the Act." *Id*. at 3.

In the same letter, Deputy Attorney General Blanche made clear that "[p]rotecting victims is of the highest priority for President Trump, the Attorney General, the Federal Bureau of Investigation, and the Department of Justice." *Id*. To protect victims, "the Department solicited counsel for any victims of Jeffrey Epstein and invited counsel to provide [the Department] with names of victims, whether previously identified or not." *Id*. This resulted in "over 1,200 names being identified as victims or their relatives," which the Department redacted. *Id*.

The Department immediately made disclosures on the day the EFTA was enacted. *See* Compl., ECF No. 1, ¶ 24–25. It also made additional disclosures in December 2025, and on January 30, 2026. ECF No. 16 at 8 (citing Mot., ECF No. 9-1, at 14). Accompanying the production on January 30, 2026, the Department issued a summary identifying the records that were withheld and the legal bases for all the redactions it had applied, and it explained that various foreign language materials were not produced because it was impracticable for a first-level reviewer to determine their responsiveness. ECF No. 50-3. Then, on February 14, 2026, the Department sent a letter to the Chairmen and Ranking Members of the House and Senate Judiciary Committees providing the information required by the Act, and thereby fulfilling the Department's obligation under Section 3 of the EFTA. *See* Letter from Todd Blanche, Deputy U.S. Att'y Gen. to Chairman Chuck Grassley, Ranking Member Dick Durbin, Chairman Jim Jordan, Ranking Member Jamie Raskin (Feb. 14, 2026), Exhibit 4 to Defendant's Answer, ECF No. 50-4.

This letter included a "Summary of Redactions Made and Legal Basis" and a "List of All Government Officials and Politically Exposed Persons" named or referenced in the released materials. *Id*. at 2–6. In addition to complying with the EFTA, the Department has gone beyond the EFTA's requirements by inviting Members of Congress to view unredacted versions of the millions of pages released by the Department of Justice. And multiple members of Congress

accepted that invitation and viewed the unredacted versions of these files earlier this year. *See Members of Congress start viewing unredacted Epstein files at Justice Department*, NBC NEWS (Feb. 9, 2026), https://perma.cc/F4QF-LUNX. And on August 27, 2026, the Department fulfilled its obligation under Section 2 of the EFTA when it published a notice in the Federal Register, stating the basis on which documents were withheld and redactions were made. *See* Report Under Public Law 119-38, 91 Fed. Reg. 55356 (Aug. 27, 2026).

## PROCEDURAL HISTORY

On April 27, 2026, Plaintiff filed this action challenging the Department's compliance with the EFTA. *See* ECF No. 1. Plaintiff brought two claims under the Administrative Procedure Act, alleging that the Department had acted contrary to law and in an arbitrary and capricious manner in its productions, withholdings, and redactions of certain documents. *Id.* at 13-14. Plaintiff also alleged an *ultra vire*s agency action and a violation of her rights under the Declaratory Judgment Act on those same grounds. *Id.*

On June 25, 2026, this Court entered an order styled as granting Plaintiff's motion for a preliminary injunction. ECF No. 15. The June 25 order required Defendant to "either produce" certain documents "or show cause" why he cannot do so. *See* ECF No. 15 ¶¶ 1–3, 5. The June 25 order further required Defendant to "initiate review and production of foreign-language materials that may be subject to production under the Epstein Files Transparency Act, and provide notice to the Court and all parties that such review is underway." *Id.* ¶ 4.

On July 25, 2026, this Court entered an order requiring Defendant to produce certain documentation to support its redactions for the Court's *in camera* review. ECF No. 23. Shortly thereafter, Defendant produced such documentation along with an explanation of the basis for each redaction the Plaintiff had challenged in her Preliminary Injunction motion. ECF No. 25. After

conducting its *in camera* review of this production, the Court issued an order for a status hearing on August 13, 2026, to discuss those documents, the redacted notes from an FBI interview, and the Defendant's timeline for publishing its notice in the Federal Register. ECF No. 29.

At the August 13 status hearing, Defendant made additional *in camera* submission to demonstrate that the redactions in question were victim names and other personally identifying information. The status hearing concluded with the Court ordering Plaintiff to submit a proposed order, after which the Court allowed both parties to submit written responses. *See* ECF No. 32, 37. The Court then issued another order requiring the production of further documents for additional in camera review, discharging the previous "show cause" order with respect to the other documents, and denying Plaintiff's request for preliminary relief on two topics. ECF No. 43. It also ordered Defendant to file an answer to Plaintiff's complaint by September 24, 2026. ECF No. 42 at 8.

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may make a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are designed to "provide a means of disposing cases when the material facts are not in dispute between the parties, and a judgment on the merits can be achieved by focusing on the content the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice." § 1367 Judgment on the Pleadings—In General, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.).

The standard of review the Court applies when considering a Rule 12(c) motion for judgment on the pleadings is the "same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Covad Commc'ns Co. v. Revonet,*

*Inc*., 250 F.R.D. 14, 18 (D.D.C. 2008) (referencing *Dale v. Exec. Office of the President,* 164 F. Supp. 2d 22, 24 (D.D.C.2001)). Thus, under a Rule 12(c) motion for judgment on the pleadings the Court "must accept the nonmovant's allegations as true and should view facts in the light most favorable to the nonmoving party." *Dale v. Exec. Off. of President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001). The Court shall grant such a motion if the moving party demonstrates that "no material fact is in dispute and that it is entitled to judgment as a matter of law." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotations omitted).

## ARGUMENT

### I. Plaintiff lacks authority to demand the relief she seeks under the EFTA.

Plaintiff cannot privately enforce the EFTA. She lacks Article III standing. And she certainly lacks a cause of action. Indeed, if a private right of action's clear absence from the plain statutory text were not evidence enough, the fact that Congress is considering amending the EFTA specifically to *add* the private right of action surely provides the missing link.

*a. The EFTA does not provide Plaintiff with a private right of action.*

Congress did not provide a private right of action to enforce the EFTA—in the EFTA itself or via any other statute. And the EFTA's various accountability mechanisms—requiring congressional reporting and publication in the Federal Register—strongly suggest that Congress did not intend to enable every private citizen to supervise the Department's compliance. For these reasons, the APA does not provide private citizens with a right to enforce the EFTA themselves.

Under 5 U.S.C. § 701(a)(1), the APA does not apply when "statutes preclude judicial review." When a statutory scheme omits a right to review—and when there is good reason to think that omission "is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment"—the omission means that "Congress

deliberately intended to foreclose … review of such claims." *United States v. Fausto*, 484 U.S. 439, 448 (1988) (quoting *United States v. Erika, Inc*., 456 U.S. 201, 208 (1982)).

The EFTA's "express language, … the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved" all support the conclusion that this statutory scheme "precludes judicial review." *Block v. Community Nutrition Inst*., 467 U.S. 340, 345 (1984). As a general matter, FOIA serves as the vehicle for citizens who want to "know what their government is up to." *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994) (citation omitted). But the EFTA omits any private right of action while including other accountability and transparency measures, such as reporting to Congress and in the Federal Register. This comprehensive scheme indicates that the omission of a private right of action was intentional.

When enacting the EFTA, Congress legislated against the backdrop of the detailed system of FOIA, which provides private litigants with the ability to secure judicially compelled access to records. The EFTA, by contrast, imposed additional public disclosure duties on the Department while layering congressional and federal oversight reporting requirements, which suggests that Congress sought to expand the Department's disclosure obligations without expanding the ability of private litigants to enforce such obligations. In other words, Congress carefully considered disclosure in this context—and the intentional omission of a right of action in this specialized scheme therefore precludes judicial review of Plaintiff's claims. Allowing private judicial enforcement would be a significant policy decision that fundamentally alters the relationship between private parties, the courts, and the Executive Branch when it comes to disclosure. Congress, after all, does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

But even if the EFTA and FOIA could not be read together to affirmatively foreclose any judicial review, the APA is still not the source of Plaintiff's right of action here. Under 5 U.S.C. § 704, judicial review under the APA is available only as to "final agency action for which there is no other adequate remedy in a court." This limitation "reflects Congress' judgment that 'the general grant of review in the APA' ought not [to] 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Just.*, 846 F.3d 1235, 1245–46 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).

Here, the Freedom of Information Act provides Phang's adequate remedy (as Congress was well aware when it omitted a right of action from the EFTA). *See Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (concluding in a variety of circumstances that "FOIA offers an 'adequate remedy' within the meaning of [the APA]"). Indeed, courts have held time and time again that "FOIA is the exclusive remedy for obtaining [purportedly] improperly withheld agency records." *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)); *see also CREW*, 846 F.3d at 1245–46 (concluding that FOIA provides an adequate remedy such that review under the APA is barred); *Harvey v. Lynch*, 123 F. Supp. 3d 3, 7–8 (D.D.C. 2015) ("[C]ourts in this Circuit have uniformly concluded that they lack jurisdiction over APA claims that seek remedies available under FOIA." (cleaned up)); *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (internal citations and quotations omitted) ("There is 'little doubt that FOIA offers an adequate remedy within the meaning of section 704,' … when litigants seek[]to 'gain access to … records.'" (alterations in original)); *Greenpeace, Inc. v. Dep't of*

*Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018) (dismissing APA claim for failure to state a claim because "FOIA offers an 'adequate remedy'"); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 75 (D.D.C. 2016) ("Courts in this circuit have [ ] uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA.") (internal quotation marks and citations omitted).

At the Preliminary Injunction stage, this Court held otherwise based on its conclusion that Plaintiff "likely would not be able to obtain" the unredacted documents she seeks because "they would likely be subject to [FOIA] exemptions" on disclosure. ECF No. 16 at 30. According to the Court, the EFTA "mandates broad disclosures that would be exempted under FOIA," *id*. at 32, so FOIA is not an adequate remedy.

Respectfully, that rationale misunderstands what counts as an adequate remedy. Indeed, Chief Judge Boasberg has rejected this exact sort of reasoning. *See Chaberra*, 2018 WL 4762259, at *4. It does not matter that FOIA "exemptions might apply," because "[i]t is well settled that the alternate remedy must be only of the 'same genre'; it need not be identical." *Id*. (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the same genre")); *see also El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs*., 396 F.3d 1265, 1270 (D.C. Cir. 2005) (similar). "The relevant 'genre' here is easy to identify: the disclosure of documents[.]" *Id*. "That is what Plaintiff seeks, and that is what FOIA provides," even if Plaintiff is not entitled to disclosure under FOIA. *Chaberra*, 2018 WL 4762259, at *4. Simply put, "the possibility that a plaintiff 'might fare worse' under FOIA does not entitle her to bring a claim under the APA." *Id*. (quoting *Greenpeace*, 311 F. Supp. 3d at 126).

First, as demonstrated through the *ex parte*, *in camera* productions, Plaintiff cannot obtain the information she seeks because it is protected victim identifying information or otherwise prohibited from disclosure.

The fact that the EFTA is a disclosure law makes no difference. Because the EFTA lacks a cause of action, Plaintiff must find one somewhere. She cannot do so in the APA, because "FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired." *CREW*, 846 F.3d at 1245.

That Congressional choice is especially stark here. Congress created all sorts of accountability mechanisms in the EFTA, but did not include a private right of action. Indeed, on July 15, 2026, in response to allegations that the Department has not fulfilled its obligations under the EFTA, Representatives Massie, Khanna, and Leger Fernandez introduced a proposed bill called the "Epstein Files Transparency Act II." *See* H.R. 9694. The proposed EFTA II would amend the EFTA to authorize State and local government officials and victims to "bring an action … against the Attorney General of the United States alleging an unlawful withholding, redaction, delay, removal, concealment, failure to publish, failure to produce, or failure to justify a withholding or redaction of a record, document, communication, or investigative material described in section 2(a)" of the EFTA. *Id.* § 4(a)(1). "A victim alleging an unlawful withholding, redaction, delay, removal, concealment, failure to produce, failure to respond, or failure to justify a withholding or redaction of a record required to be provided … shall have standing to bring an action … in the United States District Court for the District of Columbia or in any United States district court

located in the State in which the victim resides." *Id.* § 4(b)(3)(A). The press release describing EFTA II indicates that the primary purpose of the proposal is to create "a private right of action."[1]

In other words, Congress is considering enacting an "EFTA II" that *would* make the EFTA privately enforceable. There would be no need for such consideration if private parties could simply enforce the EFTA through the APA. And Congress has not enacted EFTA II. That strongly suggests that the EFTA is not privately enforceable.

Ignoring that Congressional choice would have problematic consequences. If other courts took the same erroneous approach, they would soon be flooded with piecemeal litigation over an untold number of files in the library while disincentivizing Congress from acting to address any lingering concerns. As in other instances, the better approach is for members of Congress to view the unredacted materials and engage with the Department, which would respond accordingly. That productive exchange would better serve the interests of transparency and (where appropriate) privacy than a flood of litigation and scattershot judicial enforcement.

*b. Plaintiff lacks Article III standing because she has no individualized or particularized injury differentiating her from any member of the general public.*

Plaintiff has not asserted, nor can she assert, a particularized injury that differentiates her from the general public.

"The law of Art[icle] III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (quotation omitted). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes" and "do not exercise general legal oversight of the Legislative and Executive Branches." *Id.* at 423–24. "And courts may not exceed the bounds of their lawful authority simply because they may think another branch

[1] Ro Khanna, Press Release, *Khanna, Massie, Leger Fernandez, Merkley, Lujan Introduce the "Epstein Files Transparency Act II"* (Aug. 5, 2026), *available at* https://perma.cc/WL6A-QD6K.

has exceeded its own." *National Park Serv. v. National Tr. for Hist. Preservation in the United States*, 609 U.S. ---, slip op. at 3 (2026). Instead, to establish standing, a plaintiff must prove (1) that it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations, footnote, citations, and quotation omitted).

Plaintiff seeks to enforce a statutory obligation to make certain information publicly available. But Congress has not provided Plaintiff with any particularized right to the information in question; instead, Congress has purported to create a general obligation to which the Executive Branch must adhere. Plaintiff's suit thus impermissibly advances a generalized grievance that the government is not complying with the law.

As the Supreme Court has explained, to satisfy Article III, a plaintiff must identify a particularized injury—as contrasted with a "generalized grievance" that is "undifferentiated and common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quotation omitted). The requirement of a particularized injury ensures that courts remain limited to carrying out their proper constitutional functions. That requirement is especially important because "[v]indicating the public interest (including the public interest in Government observance of the law) is the function of Congress and the Chief Executive," *Lujan*, 504 U.S. at 576—not the function of private litigants seeking recourse in the courts and thereby usurping the prerogative of the political branches to work out any disagreements in this area among themselves. Thus, the "generalized interest" in the government's following the law is "an abstract injury" that does not

give rise to Article III standing. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (explaining that it would violate Article III if, "in the absence of any showing of concrete injury," courts "were to entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws" (quotation omitted)). Time and again, the Supreme Court has "reject[ed] the idea that generalized citizen interest is a sufficient basis for standing." *National Park Service*, 609 U.S., slip op. at 2.

For example, in *Richardson*, the plaintiff sought to enforce a provision of the Appropriations Clause requiring that "a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." 418 U.S. at 168 (quoting U.S. Const. art. I, § 9, cl. 7). The plaintiff contended that the Central Intelligence Agency was violating this provision by failing to provide adequate public disclosures, and that a statute authorizing the agency's more limited disclosures was unconstitutional. *See id*. at 168–69.

The Supreme Court held that the plaintiff lacked standing. At the outset, the Court held that the plaintiff's asserted injuries failed to "meet the standards for taxpayer standing set forth in" *Flast v. Cohen*, 392 U.S. 83 (1968). *Richardson*, 418 U.S. at 175. Then, and more relevant here, the Court turned to the plaintiff's contention that he had a "personal stake" in the case giving rise to standing because his inability to obtain the information impaired his efforts to "follow the actions of Congress [and] the Executive" and to "properly fulfill his obligations as a member of the electorate in voting for candidates." *Id*. at 176 (quotation omitted). As to that claimed injury, the Court concluded that the plaintiff's suit reflected "the kind of a generalized grievance" that does not satisfy Article III's requirements, because "the impact on [the plaintiff] is plainly undifferentiated and common to all members of the public." *Id*. at 176-77 (quotation omitted). And

that was true, the Court concluded, even though the specific plaintiff had "a genuine interest" in the federal government's spending, *id*. at 177—indeed, had explained how he intended to use the specific information he sought, see *id*. at 176.

In addition, in concluding that the plaintiff failed to identify a particularized injury, the Court recognized that the result of its decision might be that no plaintiff could "litigate this issue." *Richardson*, 418 U.S. at 179. But, the Court explained, "the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process." *Id*. "Any other conclusion," the Court continued, would undermine the Founders' determination that the courts are not intended as general forums to "oversee the conduct of the National Government by means of lawsuits." *Id.; see also TransUnion*, 594 U.S. at 423–24 ("Federal courts do not exercise general legal oversight of the Legislative and Executive Branches…"). Instead, even though the Court has accepted "new categories of judicially cognizable injury," that acceptance "has not eliminated the basic principle that to invoke the judicial power the claimant must have a personal stake in the outcome" that constitutes "something more than [a] generalized grievance[ ]." *Richardson*, 418 U.S. at 179–80 (quotation omitted).

Thus, the Supreme Court has made clear that the asserted violation of an obligation to publicly disclose information does not, by itself, generate a particularized injury allowing any plaintiff who wishes to obtain or use that information to sue. The asserted violation of such an obligation imposed through statute can no more give rise to a particularized injury than would the violation of the constitutional obligation at issue in *Richardson*. *Cf. TransUnion*, 594 U.S. at 426 (making clear that "Article III standing requires a concrete injury even in the context of a statutory violation" (quotation omitted)).

The D.C. Circuit has thus properly applied similar principles in the statutory context when evaluating whether a particular plaintiff has standing to seek to compel an agency to disclose particular information. For example, as the D.C. Circuit has explained, some portions of FOIA reflect Congress's determination to vest members of the public who follow the statute's procedures for requesting records with an individualized right to the records requested. *See Prisology, Inc. v. Federal Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017) (explaining that FOIA "requires an agency to make nonexempt records" "available to any person upon that person's request" (quotation omitted)). That rights-creating scheme vests each individual who requests information with a particularized right to receive it, such that the requestor has Article III standing to challenge an agency's failure to provide the requested records.

By contrast, other provisions of FOIA generally direct federal agencies to make certain records "electronically available to the public." *Prisology, Inc.*, 852 F.3d at 1115. And as to those provisions, this Court has explained that the "alleged failure to publish" information that an agency is required by the statute to disclose does not—in the absence of some "particularized" "right to receive" the information—generate Article III standing. *Id.* at 1116-17; *cf. Campaign for Accountability v. U.S. Dep't of Just.*, 155 F.4th 724, 734 (D.C. Cir. 2025) (explaining that a plaintiff may have Article III standing to seek disclosure under these provisions only if "the plaintiff expressly requested (and was denied) access to the records"). Such a plaintiff does not "differentiate" herself "from the public at large"; as a result, all she may establish "is a harm common to everyone" that does "not stat[e] an Article III case or controversy." *Prisology, Inc.*, 852 F.3d at 1116–17; *see also id.* at 1116 ("[A] plaintiff alleging harm common to every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly

and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." (quotation omitted)).

In short, to satisfy the particularized injury requirement, a plaintiff seeking to compel an agency to obey an information-disclosure law must identify not merely a statute that imposes a general obligation on the agency but instead a statute that confers a particular right on the plaintiff. *Cf. Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 368 (2025) (describing the difference between statutes that "create individual rights" and those that simply "provide a benefit or protect an interest"). In the similar context of determining whether a Spending Clause statute creates enforceable individual rights, the Supreme Court has recently explained that courts should focus on whether "the law in question clearly and unambiguously uses rights-creating terms" and whether it "display[s] an unmistakable focus on individuals like the plaintiff." *Id.* (alterations and quotation omitted).

Here, Plaintiff cannot identify any particularized right to information given to her by the EFTA. Nothing in the EFTA evinces any desire by Congress to create private, enforceable rights. Indeed, the relevant section contains no rights-creating language, providing only that the Department "shall … make publicly available" covered documents—not that any party has a specific "right" to receive that information. EFTA § 2(a). Unlike other information-disclosure statutes, such as FOIA, the EFTA does not provide any mechanism for a private party to seek information that it believes ought to be made available. Nor does the EFTA provide a cause of action specifically permitting private parties to bring suit over any failure to provide such information.

Instead, to the extent the EFTA reflects a concern with any particular recipient of the information, the EFTA is concerned with Congress and the public writ large—not private parties.

The EFTA requires the Department to submit a report to Congress listing all categories of records released and withheld and a summary of redactions made and to publish a redaction log in the Federal Register. EFTA §§ 2(c)(2), 3. These accountability measures underscore that any dispute regarding compliance with Congress's directions is properly resolved among the political branches, rather than in Article III courts at the behest of private parties. *See Richardson*, 418 U.S. at 179. Thus, the EFTA is analogous to the constitutional provision at issue in *Richardson*: it reflects an obligation on the Executive Branch to make information available, but it does not provide plaintiffs with a right to that information. And without such a particularized right, Plaintiff cannot—like the plaintiff in *Richardson*—bring suit.

This conclusion is reinforced by Plaintiff's own descriptions of her interest in this suit, which confirm her attempt to enlist the judiciary to enforce the general public's interest in compliance with the law. Plaintiff has never claimed to have specifically sought the documents at issue for herself prior to bringing suit. Instead, Plaintiff has stated that she seeks "complete truth for survivors" and "the maximum possible level of transparency." ECF No. 9-1 at 13. This Court appeared to adopt Plaintiff's approach by citing "concerns with any potential judicial redress for victims" and the "high level of interest in the Epstein Files combined the upcoming midterm elections." ECF No. 16 at 39, 40. But standing "is not measured by the intensity of the litigant's interest." *National Park Service*, 609 U.S., slip op. at 5 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982)). And as all these descriptions make clear, Phang does not seek to vindicate any particularized right given to her by the EFTA; instead, she seeks to vindicate the public's generalized interest in the Department's compliance. That interest does not give rise to Article III standing.

Nor can Plaintiff remove this barrier to standing by asserting that she would use the information (to which she has no right) in particular ways or derive specific economic benefits from it. In this respect, Plaintiff is no different from the plaintiff in *Richardson*, who also detailed the ways in which he would have used the information in question. 418 U.S. at 176. Indeed, setting aside the immaterial distinction between constitutional and statutory provisions, the lack of standing here follows *a fortiori* from *Richardson*: because it was a generalized grievance where an individual challenged an agency's failure to disclose its spending, it is necessarily a generalized grievance where Plaintiff challenges the Department's purported failure to disclose foreign language documents.

Thus, Plaintiff's speculative claims of potential future economic harm fail because while not receiving something or other from the government "*may*" cause downstream economic challenges. "This is … the kind of uncertain and unspecific prediction of future harm that is inadequate to establish Article III standing." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015). And Plaintiff's claims of harm rest on this very kind of future uncertainty; she argues in her Complaint that the Department's action have hindered "her mission as a journalist" and made it "impossible for her to do her job." ECF No. 1 at 12. In support of this proposition, Plaintiff points to her YouTube channel, Substack, and other mediums in which she "has published dozens of videos, interviews, and reports about the Epstein Files," and therefore the Department's alleged lack of compliance with the EFTA has hampered her professional and economic interests as a journalist. *Id*. at 10.

But this alleged harm is entirely speculative: Plaintiff's theory appears to be that *if* the redactions and foreign language documents contain newsworthy information, she (along with any other interested journalist) will report on those documents, and in doing so she *may* enjoy more

professional success than she otherwise would. That sort of speculative benefit would exist in virtually every case in which a member of the media seeks information from the government. And most importantly here, such "speculation and hoped-for" financial gain based on what disclosed records might or might not contain "will not suffice to invoke the federal judicial power." *Diamond v. Charles*, 476 U.S. 54, 66 (1986) (citation omitted).

## II. Plaintiff's claims fail as a matter of law because she does not meet the legal standard required to compel agency action under the APA.

Plaintiff's arguments seeking to compel the Department to unredact and produce documents (such as foreign-language documents and handwritten notes), as well as those seeking to compel the Department to provide additional information in the Federal Register, attempt to force the Department *to do something* that Plaintiff believes is required by law. But even to the extent the APA contemplates actions to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), Plaintiff cannot meet the high bar to prevail on such a claim here. In fact, Plaintiff did not purport to assert a claim under § 706(1) because she cannot meet this high burden, nor would she have standing to do so. And Plaintiff cannot seek to compel agency action under the guise of a claim purporting to assert that some action is unlawful (and a correspondingly diminished standard of review).

"[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). This refers to "specific, unequivocal command[s] … about which an official ha[s] no discretion whatever." *Id*. (internal quotation marks and alterations omitted). "Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id*. at 65. One of the "principal purpose[s]" of this "limitation[]" is to "avoid judicial entanglement in abstract policy

disagreements which courts lack both expertise and information to resolve." *Id*. at 66. "If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Id*. at 66-67. Courts may compel agency action "only if a federal agency has a 'ministerial or non-discretionary' duty amounting to 'a specific, unequivocal command.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (quoting *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)). "This standard reflects the common law writ of mandamus, which the APA 'carried forward' in § 706(1)." *Anglers*, 809 F.3d at 671 (quoting *Norton*, 542 U.S. at 63). Plaintiff cannot satisfy this stringent standard, for several reasons.

*First*, Plaintiff's complaint does not even meaningfully identify what agency action she seeks to compel. She does not identify with any level of specificity what documents she believes must be produced or unredacted. Instead, she asserts broad grievances in an attempt to "compel[] compliance with broad statutory mandates." *Norton*, 542 U.S. at 66.

*Second*, even if Plaintiff's complaint were more specific, she cannot identify any *specific* statutory command that Defendant has violated, let alone clearly violated. The EFTA does not contain detailed document production rules; it plainly left some aspects of the review and production process to the Department's discretion. And "matters committed to agency discretion are not subject to judicial review." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm.*, 993 F.3d 880, 888 (D.C. Cir. 2021) (holding that the Federal Election Campaign Act did not govern the ways in which the Federal Election Commission could exercise its discretion, and

thus could not be subject to judicial review). Plaintiff disputes *how* the Department carried out its statutory functions, without pointing to any unequivocal command that has been violated.

For example, the EFTA contains no specific command with respect to the review and production of foreign language documents specifically, which would require immense Department resources. Whether Congress intended the Department to engage in that effort is essentially a policy question best left to the political branches. Indeed, the Department advised Congress of its decision not to review and produce such documents because doing so is "not practicable," and responsiveness to the EFTA's requirements cannot be readily determined for these documents. Department of Justice, *Epstein Files Transparency Act – Production of Department Materials* at 5 (Jan. 30, 2026).[2] And Congress took no action in response (even in the proposed EFTA II does not address such documents), suggesting Defendant has fulfilled his obligations in respect to these foreign language documents. Yet Plaintiff's demand would poise the Court to assume the role of supervisor of the review and production of such documents.

*Third*, to the extent Plaintiff seeks to compel compliance with the Federal Register reporting requirement, the Department has published its notice in the Federal Register and therefore complied with the Act's requirement—mooting this aspect of Plaintiff's claim.

Additionally, to the extent Plaintiff seeks to compel the Department to act on a particular timeframe—with respect to any form of the "inactions" she is alleging—her claims face additional hurdles. In determining whether immediate action is legally required, courts do not merely assess whether the Defendant is compliant with a statutory obligation. Instead, resolving a § 706(1) claim is a "nuanced task requiring consideration of the particular facts and circumstances before the

---

[2] *Available at* https://www.justice.gov/opa/media/1426091/dl.

court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). In the D.C. Circuit, courts evaluate six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").

Here, the *TRAC* factors cut against Plaintiff. Although the EFTA contained a 30-day deadline for disclosure, the violation of a statutory deadline is not dispositive. "Equitable relief … does not necessarily follow a finding of violation: respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991). That is especially true in these circumstances, where Congress's reporting requirements clearly contemplated an ongoing process that would involve give-and-take between the branches. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016) (deadlines should not be treated as mandatory when Congress appeared to contemplate additional decision-making following deadlines). Human health and welfare are not at stake in the relevant sense, and expediting action here—the review and production of thousands of documents that are in different foreign languages—will detract from other Department priorities. Although the *TRAC* factors are often pertinent in the context of agency delay (rather than withholding of agency action), at a

minimum, the factors should be considered before the Department is required to *immediately* initiate review and production—the full relief that Plaintiff seeks.

**III. Defendant has not violated the EFTA by applying redactions.**

The Department has undertaken extensive efforts to comply with the EFTA's statutory obligations in a manner that is both transparent and protective of victim privacy, and Plaintiff's demands for the disclosure of redacted information and production of foreign language documents have no basis in law.

The EFTA contemplates that the Department may withhold or redact the segregable portions of records that contain the personally identifiable information ("PII") of victims. EFTA § 2(c). Consistent with that statutory authority, the Department has sought to prevent victim PII from becoming public even in instances where the victims eventually became complicit or engaged in reprehensible activity or communications. *See, e.g.*, United States Department of Justice, *Epstein Files Transparency Act – Section 3 Report to Congress at 2* (Feb. 14, 2026) ("Section 3 Report").[3] The Government appreciates the Court's recognition that "redactions to protect victims' information" are "appropriate." Order 2.

Furthermore, the Privacy Act carries both civil remedies for people whose rights are violated under it (at a monetary cost to the government) and *criminal* penalties for those who willfully violate it. See 5 U.S.C. § 552a. Thus, in administering the EFTA, consistent with the Privacy Act, the Department has left redacted individual email addresses to avoid "clearly unwarranted invasion of personal privacy." Section 3 Report at 2; *see also EFTA First Level Review Protocol* at 8 (Jan. 4, 2026) (Under "Privacy Act Redactions," "You must also redact PII that may be present in the documents [including] … email addresses").[4] Yet while the Department

[3] *Available at* https://www.justice.gov/opa/media/1434856/dl?inline.
[4] *Available at* https://www.justice.gov/media/1426281/dl?inline.

has made a good-faith effort to comply with the requirements of these applicable statutes, Plaintiff simply demands that the government disregard the Privacy Act's requirements without any supporting citations or even argument.

Plaintiff has suggested that because EFTA was enacted later in time, it overrides the Privacy Act's protections. ECF No. 20 at 7. But that is not the law. "When confronted with two Acts allegedly touching on the same topic, this Court must strive 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 498 (2018) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

In this Circuit, there is a "strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute" should control. *Am. Forest Res. Council v. United States*, 77 F.4th 787, 799 (D.C. Cir. 2023) (quoting *United States v. Fausto*, 484 U.S. 439, 452–53 (1988)) (cleaned up). Thus, without an express Congressional command the EFTA and Privacy Act must be read in concert, not conflict, and the Court cannot presume that through enacting EFTA Congress waived the Privacy Act.

For these reasons, Plaintiff's claim fails because it would require the exposure of appropriately redacted victim information under the EFTA, as well as contravene the requirements of the Privacy Act for non-victims.

## IV. The EFTA does not require the production of foreign-language documents.

As stated above, the EFTA contains no specific commands regarding the review and production of foreign language documents, and producing these documents would require immense Department resources. Given that the very responsiveness of such documents cannot be quickly ascertained, the Department advised Congress that production of such foreign language documents is "not practicable" because it is beyond the capacity of first-level reviewers.

Department of Justice, *Epstein Files Transparency Act – Production of Department Materials* at 5 (Jan. 30, 2026).[5]

Whether Congress intended to require the Department to translate, determine responsiveness, and produce such foreign-language documents is a political question best left to the political branches. The fact that Congress has taken no additional action regarding the production of these foreign language documents suggests that it thinks the Department has fulfilled its obligations with respect to these documents. Indeed, even in the proposed "EFTA II," there is no mention of these foreign-language documents. And the EFTA itself gives the Attorney General the discretion to withhold or redact certain categories of information. EFTA § 2(c)(1)(A)–(E). As such, Defendant has complied with the EFTA's requirements regarding foreign language documents because the law is silent on the issue documents and vests the Attorney General with discretion in redacting and withholding documents. For these reasons, the Court should enter judgment for the Defendant on the relevant claims in Counts I and II.

## V. The Department has fulfilled its reporting requirements under the EFTA.

Section 3 of the EFTA requires the Attorney General to submit a report to Congress which lists "all categories of records released and withheld," a "summary of redactions made, including legal basis," and a "list of all government officials and politically exposed persons" within the files. EFTA § 3. On February 14, 2026, the Department fulfilled this obligation by sending a letter to Congress which laid out the "categories of records released and withheld," a "summary of redactions made and legal basis" for doing so, and a "list of all government officials and politically exposed persons." ECF No. 50-4.

---

[5] *Available at* https://www.justice.gov/opa/media/1426091/dl.

Section 2 of the EFTA further requires the Department to submit a report to Congress listing all categories of records released and withheld and a summary of redactions made and to publish a redaction log in the Federal Register. EFTA § 2(c)(2), (4). And on August 27, 2026, the Department likewise fulfilled these obligations by publishing in the Federal Register a report "describing all categories of records released and withheld; a summary of the redactions made, including the legal basis; and a list of all government officials and politically exposed persons named or referenced in the reviewed materials." *See* Report Under Public Law 119-38, 91 Fed. Reg. 55356 (Aug. 27, 2026). Because Defendant has fulfilled his reporting requirements under the EFTA, the Court should enter judgment for the Defendant on Counts I and II.

## VI. Plaintiff has failed to meet the high burden of an *Ultra Vires* claim.

In her Complaint, Plaintiff also recasts her APA claims as an *ultra vires* claims; but that effort similarly falters. Compl. ¶¶ 56-60. An *ultra vires* claim is "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). To sufficiently allege an *ultra vires* claim, the plaintiff must aver: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (cleaned up). The third requirement is especially demanding. "Only error that is patently a misconstruction of the" pertinent statute, "that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." *FedEx v. Dep't of Comm.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (cleaned up). In other words, an agency violates a "clear and mandatory" statutory command only when the error is "so extreme that one may view it as jurisdictional or

nearly so." *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988). Plaintiff cannot meet that demanding standard.

Here, as discussed above, there is an alternative procedure for review of the statutory claim. *See Ray*, 811 F. Supp. 2d at 249 ("As a general rule, the FOIA is the exclusive remedy for obtaining improperly withheld agency records." (internal citations omitted)). Additionally, Plaintiff acknowledges that the EFTA authorized the Attorney General to withhold or redact certain portions of records. Pl.'s Mot. at 12. Ultimately, Plaintiff's claim amounts to nothing more than a generalized grievance with the Attorney General's exercise of that authority. A disagreement with how the Attorney General exercised discretion granted by statute does not transform an otherwise lawful act into an *ultra vires* one. At a minimum, there is no clear and mandatory statutory command that Defendant has violated. Accordingly, because Plaintiff fails to come close to meeting the high bar of an *ultra vires* claim, the Court should enter judgment for the Defendant on Count IV.

## VII. Plaintiff's claim under the Declaratory Judgment Act fails as a matter of law.

Plaintiff's claim under the Declaratory Judgment Act likewise fails as a matter of law, for the reasons stated above. Therefore, Defendant's motion for judgment on the pleadings should be granted with respect to the Declaratory Judgment Act count.

## CONCLUSION

For the reasons above, Defendant's motion for judgment on the pleadings should be granted.

Dated: October 1, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

*/s/ Andrew J. Block*

ANDREW J. BLOCK
*Senior Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

*/s/ Andrew Block*
Andrew J. Block