**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KATIE PHANG,

*Plaintiff*,

v.

TODD BLANCHE, in his official capacity as Attorney General of the United States,

*Defendant*.

Case No. 1:26-cv-01417 (EGS)

**Defendant's Reply In Support of Motion for Leave of Court to Postpone Deadline**

Despite all of the charged rhetoric throughout Plaintiff's 12-page response to a 3-page procedural motion, the motion is just that: a routine procedural motion. The government often files similar motions with—or even as a part of—its dispositive motions when those motions are based, as here, on jurisdictional arguments or claims to compel agency action. And where there are no discernable records that would compose the Administrative Record that are not already public—and opposing counsel has refused to state what records it even would want to see in an Administrative Record, *see* Exhibit A—the process of composing a record for the records' sake is an unnecessary formality. Accordingly, the Court should grant Defendant's Motion for Leave to Postpone Deadline. Dkt. 51.

## I. There is no procedural foul here.

Local Civil Rule 7(n) requires, "in cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court," that a "certified list of the contents of the administrative record" be produced within 30 days of service of the answer or "simultaneously with the filing of a dispositive motion, whichever occurs first." In this case the answer was served

on September 24, 2026. Dkt. 50. The Court, however, in the Order setting the deadline for the Answer, also moved up the date for the certified list of the contents of the administrative record from the 30 days set by rule to seven days following service of the Answer, or October 1, 2026. Dkt. 42 at 8. On October 1, 2026, Defendant filed this Motion for Leave of Court to postpone the deadline regarding the Administrative Record alongside a Rule 12(c) Motion for Judgment on the Pleadings. As stated in the motion, Defendant's view is that the Motion for Judgment can be decided on the pleadings without an Administrative Record, there is precedent in this District for doing so, and good cause exists here because anything that could potentially go in an Administrative Record is already a part of the pleadings or otherwise publicly available.

Plaintiff's responses are unpersuasive. First, Plaintiff states that the motion violates the Court's standing order. Respectfully—and without attempting to tell the Court the meaning of its own standing order—the government does not read the standing order the way Plaintiff has presented it. The government reads the standing order to apply to motions for extension with respect to briefs, hearing dates, or other similar types of dates. Here, the Motion for Leave was filed concurrently with a motion for Judgment that, as stated, dispenses with the need for an Administrative Record. The instant motion being different in nature than a motion for extension for briefing deadline, the standing rule does not apply. Plaintiff also complains (in a filing made at 10:18pm) about the time of day of the government's filing (at 9:18pm). (*See* Dkt. 55 at 7).[1] Of course, the deadline is the end of the day unless the Court orders otherwise.

Next Plaintiff asserts that this is an improper motion for reconsideration. It is not. As a practical matter, if the government had been inclined move for the Court's reconsideration regarding the cross motions to compel, Dkt. 27, and to stay *nunc pro tunc*, Dkt. 28, it would not

[1] Pin cites refer to the ECF-pagination system and not the page number of the brief.

have waited until *after* answering the complaint to do so. As a legal matter, this motion is to dispense with the requirements of Local Civil Rule 7(n) given the filing of a motion which could result in judgment for either party—a basis courts in this district routinely recognize. *See Sharifymoghaddam, et al. v. Blinken, et al.*, 1:23-cv-1472 (RCL), 2023 WL 8047007 at *3 ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if 'the administrative record is not necessary for the court's decision.' *Eljalabi v. Blinken*, No. 21-cv-1730 (RC), 2022 WL 2752613, at *3 n.3 (D.D.C. July 14, 2022) (alteration omitted) (quoting *Arab v. Blinken,* 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022)); *see also Nohria v. Renaud,* No. 20-cv-2085 (BAH), 2021 WL 950511, at *4 n.3 (D.D.C. Mar. 14, 2021) ('Following the practice of other courts in this jurisdiction, the Court grants [the agency's] motion to waive compliance with Local Civil Rule 7(n) because 'the administrative record is not necessary for [the court's] decision.' (second alteration in original) (quoting *Connecticut v. U.S. Dep't of the Interior,* 344 F. Supp. 3d 279, 294 (D.D.C. 2018))). Here, the Court does not require the administrative record to rule on the Defendants' Motion to Dismiss. Accordingly, the Court will permit Defendants to waive compliance with Rule 7(n)(1).").

## II. An Administrative Record is not necessary to resolve the Motion for Judgment

Plaintiff next argues that an Administrative Record is necessary to rule on the Motion for Judgment for a variety of unavailing reasons. First, Plaintiff attempts to create factual issues where there are none and interposes the summary judgment standard onto a motion for judgment on the pleadings. Second, Plaintiff incorrectly suggests that an Administrative Record is necessary to test redactions when the proper vehicle to do that is a *Vaughn* index prepared in the course of a FOIA suit. This is all underscored, even further, by the fact that the Court can take judicial notice of any document on the Epstein Library or the FOIA Vault that the Plaintiff might want to rely on. *See*

*Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."); *see also Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017) ("judicial notice may be taken of public records and government documents available from reliable sources.").

*A. Plaintiff's attempt to manufacture factual issues fails.*

First, Plaintiff attempts to characterize the legal issues presented in the Motion for Judgment as factual issues. But the question of the interplay between the Privacy Act and the EFTA, or any obligation to process and review foreign-language documents, are *legal* questions, not factual ones. Plaintiff also contends that the adequacy of redactions are factual issues of dispute. Dkt. 55 at 8. Not so.[2] The issue of fact is properly framed as the name or other identifying information under the redaction, not whether the redaction is appropriate or legally supported. The answer to the latter question (which Plaintiff suggests is factual) is—at most—a question of law for the Court to decide, but in reality is not a reviewable question by the Courts for the reasons explained in Defendant's Motion for Judgment. In other words, whether any one redaction is appropriate is not reviewable, but even if it is, whether a redaction supported by the EFTA, the Privacy Act, or some other basis, is not a matter of fact, but rather law. To be clear, though, Defendant in no way waives the argument that the Court lacks jurisdiction to engage in such a review.

[2] In any event, the underlying motion is a Motion for Judgment on the Pleadings, not summary judgment.

Next, Plaintiff cherry-picks quotes from the government's brief to manufacture a factual issue. And while the government—including hundreds upon hundreds of dedicated public servants—did go to great lengths to comply with the EFTA, that is not a material factual contention that can "be tested only against a record." Dkt. 55 at 12. Again, the issue before the Court is not the government's effort to comply with the law. And while several hundred dedicated public servants went above and beyond in order to comply with the law, the issues presented in this litigation do not turn on that fact—especially not in a motion for judgment on the pleadings.

Third, Plaintiff accuses the government of relying on a "selected record (and extra-record) documents while at the same time denying Plaintiff access to a comprehensive record." *Id.* at 13. This is also wrong. Indeed, Plaintiff has refused to identify what types of documents she believes could be included in an Administrative Record that would substantively change the issues presented in the Motion for Judgment. In a good-faith effort to narrow the scope of this dispute—or resolve it without the need for the Court's intervention—the undersigned government counsel asked counsel for Plaintiff what materials they believed would be in the Administrative Record that would substantively change the issues presented. *See* Exhibit A. Counsel asked this because, as stated in the Motion for Leave and in email correspondence, the government has already disclosed all disclosable information that could conceivably go in an Administrative Record. It has posted to the Epstein Files Library, hosted on the Department of Justice website, the Epstein Files. It has released through FOIA litigation and public disclosures, emails and processing guidelines related to the review process.[3] It has attached to its responsive pleading the memoranda and letters explaining the government's process and rationale to apply redactions to the Epstein Files.

[3] See, e.g. *Records regarding the review of the Investigative Holdings related to Jeffrey Epstein*, FBI Vault, Part 01 at 26, Part 02 at 8, available at https://vault.fbi.gov/records-regarding-the-review-of-the-investigative-holdings-related-to-jeffrey-epstein.

Seemingly uninterested in a resolution, though, counsel for Plaintiff simply stated they, "don't believe it's appropriate to litigate the scope and adequacy of the administrative record via email." Ex. A. In other words, Plaintiff asks for an Administrative Record to support its briefing, but when pressed on what might be included in that record that is not already public, Plaintiff declines to engage.

Finally, Plaintiff argues that reliance on the *ex parte, in camera* submissions must be made a part of the Administrative Record. But that mistakes both the facts and the law. If what Plaintiff actually seeks is the names of victims, she is no more entitled to that in an Administrative Record than she is through any other process. And privileged documents, such as those submitted to the Court for *ex parte in camera* review, would not go in an Administrative Record anyway. "On this issue, the law is clear: predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record." (internal quotations and citations omitted." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015). Plaintiff offers no support for the proposition that withheld documents must be identified.

Ultimately, Plaintiff's argument makes clear that her true intention is to make the government compile already-available information for the sake of going through the motions. That is not a sufficient reason. *See Akbar v. Cuccinelli*, Civ. A. No. 18-2808, 2020 WL 1287817, at *4 (D.D.C. Mar. 18, 2020) (granting Government's motion for relief from Local Civil Rule 7(n)(1) "to conserve scarce agency resources" pending a dispositive Rule 12 motion).

*B. An Administrative Record is not the proper vehicle to test redactions, that would be a* Vaughn *index.*

As a last resort, Plaintiff says that she needs an Administrative Record to judge the redactions applied. Dkt. 55 at 12 ("Any such ruling necessarily turns on facts only an

administrative record can supply."). By way of example, Plaintiff proffers that Administrative Record is needed to determine "whether materials referring to President Trump were withheld." *Id.* This argument ignores that many of the documents at the heart of the Court's Show Cause orders have involved documents where the President's name appears. And while Plaintiff insinuates that maybe other documents were withheld, she describes none and ignores the Attorney General's certification that no redactions were made on the basis of political embarrassment and that the President's name was on the list of "politically exposed persons" (alongside the four other people who have held the office of President of the United States since 1993).

To the extent any court can engage in a redaction-by-redaction analysis (it cannot), the appropriate vehicle to do that would be a *Vaughn* index in the context of a FOIA case. And this fact highlights the several fatal flaws to Plaintiff's case. First, she has no right to the identity of individuals under the redactions. Congress has made a policy decision that the identity of victim names may be redacted. And try as she might, Plaintiff has no standing to demand to see the unredacted files to judge for herself the Department's compliance with the law. So she attempts to frame this dispute as needing an Administrative Record to judge the redactions herself. But, as just shown, there are no records that would go into an Administrative Record that would shed any light on that question.

That is because an Administrative Record is not the process for challenging redactions. The process for challenging redactions to documents subject to public disclosure laws is a *Vaughn* index. And this goes to the Defendant's point all along which is Plaintiff's adequate remedy here—to challenge redactions—is FOIA, not the APA. And Plaintiff cites no case, and the government is aware of no case, in this district or circuit where a Court has used an Administrative Record to decide the adequacy of redactions. In a public records disclosure cases, the practice is to utilize a

*Vaughn* index. Now this is not to say that Plaintiff is entitled to a *Vaughn* index, and the government reserves the right to make all arguments on that topic in any future FOIA action where the issue is properly raised.

The point is even under a *Vaughn* index—the most any plaintiff is entitled to in a public records disclosure case—plaintiffs are entitled to far less information than an Administrative Record which Plaintiff seeks here. And, in fact, the requirement of a *Vaughn* index may be dispensed of where, as here, the Court reviews *in camera* the documents at issue. *See Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 328 (4th Cir. 2016) ("A *Vaughn* index is designed to enable the district court to rule on a privilege without having to review the document itself and thus functions as 'a surrogate for the production of documents for *in camera* review.' … Stated otherwise, the issue of whether the IRS provided a *Vaughn* index sufficient to enable the district court to evaluate the IRS' claimed exemptions became irrelevant and moot after the IRS complied with the district court's order to produce the records for *in camera* review and the court completed its own review of the records."). While the D.C. Circuit takes a slightly different approach to the relationship substitution of in camera review for a *Vaughn* index, the rationale here still holds in this case. *See Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 771 n.3 (D.C. Cir. 1988) ("Where the index itself would reveal significant aspects of the deliberative process, this court has not hesitated to limit consideration of the *Vaughn* index to *in camera* inspection.") (citing *Hayden v. National Security Agency,* 608 F.2d 1381, 1384–85 (D.C. Cir. 1979) (review of *Vaughn* index *in camera* appropriate where "the itemization and justification are themselves sensitive.")).

Ultimately, Congress has provided district courts the option to conduct *in camera* review under FOIA, but the statute does not compel the exercise of that option. *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009). "Congress intended to impose no mandates upon the trial

court, but instead leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge." *Center for Auto Safety v. E.P.A.,* 731 F.2d 16, 20 (D.C. Cir. 1984). And although district courts possess broad discretion regarding whether to conduct *in camera* review, it is typically reserved as a measure of "last resort in national security situations like this case." *Larson*, 565 F.3d at 870 (internal citations and quotations omitted). Courts are discouraged from conducting such inspection routinely on the theory that 'it can't hurt.'" *Id.*

While, again, this is not a FOIA case (and there are several arguments the government can, and would, make in such a case), here the Court has reviewed the documents *in camera*. And the Court has, rightfully, relied on that *in camera* review to evaluate the redactions applied because, like national security documents, the government here can offer no more information on the public docket without revealing victim names or other identifying information.

Ultimately, Plaintiff's argument that an Administrative Record is needed to adjudicate redactions is a red herring. The Court has reviewed documents well beyond what could go in an Administrative Record and there are no other documents—other than those already publicly available through EFTA and FOIA disclosures—that would shed any light on redactions. In any event, the proper vehicle for testing redactions is a *Vaughn* index, not an Administrative Record.

**Conclusion**

For the foregoing reasons, the Court should grant the motion for leave of court to postpone the deadline to produce the certified contents of the Administrative Record pending the outcome of the Rule 12(c) Motion for Judgment on the Pleadings.

Dated: October 13, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

*/s/ Andrew J. Block*

ANDREW J. BLOCK
*Senior Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

*/s/ Andrew J. Block*
Andrew J. Block